IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BREAKIRON, | : |
| Petitioner, | : |
| | : CIVIL ACTION |
| v. | : |
| | : No. 00 - 300: |
| MARTIN HORN, Commissioner, | : |
| Pennsylvania Department of Corrections; | : Judge Standish |
| CONNOR BLAINE, Superintendent of the | : |
| State Correctional Institution at Greene, and | : **THIS IS A CAPITAL CASE**. |
| JOSEPH P. MAZURKIEWICZ, | : |
| Superintendent of the State Correctional | : |
| Institution at Rockview, | : |
| Respondents. | : |

**MOTION FOR PRODUCTION OF DOCUMENTS WITHHELD, OR IN THE
ALTERNATIVE, FOR A MORE DETAILED PRIVILEGE LOG
and
CONSOLIDATED MEMORANDUM OF LAW**

Petitioner MARK BREAKIRON requests this Court to grant his MOTION FOR PRODUCTION OF DOCUMENTS and in support thereof states:

1.  After this Court ordered discovery, the Commonwealth withheld certain categories of documents on the grounds that they are privileged pursuant to Fed.R.Civ.P 26(b)(5). However, the listed categories of withheld documents contain unprivileged documents and the descriptions are not sufficiently specific "to enable other parties to assess the applicability of the privilege or protection." Id.

2.  Therefore, Petitioner requests that the Court order the production of the materials

which have been withheld. In the alternative, Petitioner requests that the Court compel a more detailed privilege log from Respondents in order to meaningfully assess the Commonwealth's assertion that they are privileged.

### Brief Procedural History of Discovery Proceedings

3.  On November 15, 2004, Petitioner moved for Discovery requesting the following information:

    (1)  Any and all letters or contacts between James Sullivan, Ellis Price, Robert Price, Conrad Blair, and the police, district attorney's office or other representatives of the Commonwealth.

    (2)  Any notes, memoranda, letters or other writings by the Commonwealth to those inmates or their lawyers as well as any notes, memoranda or other writings concerning any conversations that occurred between trial prosecutor Mark Morrison, his staff, any member of the Fayette County District Attorney's office, or any police officer with Mr. Price, Mr. Sullivan, and/or Mr. Blair or their attorneys.

    (3)  Any letters, notes, memoranda or other writings from any other inmate of the Fayette County jail concerning any possible testimony against Mr. Breakiron.

    (4)  Any and all state police files relating to the prosecution of Robert and Ellis Price for Attempted Murder.

    (5)  The county and/or district attorney detectives files relating to the prosecution of Robert and Ellis Price for Attempted Murder.

    (6)  The Fayette County District Attorney's files relating to the prosecution of Robert and Ellis Price for Attempted Murder.

    (7)  Any and all contacts between the Fayette County District Attorney's Office or Police Department and the State of Michigan concerning Ellis Price's offer to testify against Mr. Breakiron.

    (8)  Any and all state police files relating to the prosecution of James Sullivan.

    (9)  The county and/or district attorney detective's files relating to the prosecution of James Sullivan.

 (10) The Fayette County District Attorney's files relating to the prosecution of James Sullivan.

 (11) Any and all state police files relating to the prosecution of David Lint.[1]

 (12) The county and/or district attorney detective's files relating to the prosecution of David Lint.

 (13) The Fayette County District Attorney's files relating to the prosecution of David Lint specifically including any and all letters, notes, memorandum or contacts between him and the police, district attorney's office or other representatives of the Commonwealth.

 (14) The names and identifying information of the inmates who were in the Fayette County Jail at the same time Ellis Price, James Sullivan, Conrad Blair and Mark Breakiron.

 (15) Fayette County Jail visiting logs for March 1987 until April 1988.

 (16) The names and identifying information of the police officers involved in prosecuting Ellis and Robert Price, David Lint, and James Sullivan.

 (17) Any and all original unredacted state police file(s) relating to the death of Saundra Martin.

 (18) The county and/or district attorney's detectives files relating to the death of Saundra Martin.

 (19) The Fayette County District Attorney's files relating to the death of Saundra Martin.

4. On February 18, 2005, this Court issued an Order granting Petitioner's Motion for Discovery. However, it quickly became clear that the parties were in disagreement as to the scope of the Order. Thus, the Respondents motioned the Court for clarification.

5. On March 9, 2005, the Court issued a Memorandum Order explaining that by granting Petitioner's Motion for Discovery, "the Court [had] authorized Petitioner, pursuant to its

---

[1] David Lint is another inmate who may have been involved in the invention of the confession and offer to testify against Mr. Breakiron.

authority under Rule 6 of the Rules Governing Habeas Corpus Cases under Section 2254, to conduct discovery of the documents and things outlined in [Petitioner's] Motion for Discovery." Finally, the Court noted "that by granting Petitioner's Motion for Discovery, [it had] determined that the document requests outlined in the motion were appropriately narrowed to the limited issue upon which discovery was permitted: whether Petitioner can establish 'cause and prejudice' to overcome the procedural default of Amended Claim 4."

6. On March 21, 2005, Petitioner served Respondents with a Request for Production of Documents.[2]

7. Respondents answered Petitioner's request for documents on April 20, 2005. In their response, Respondent's objected to producing documents pertaining to the following categories: Four (4), Eight (8), Eleven (11), Fourteen (14), Fifteen (15) and Seventeen (17) on the grounds that Petitioner's request called for documents that were not in the possession and control of Respondents. Accordingly, Petitioner directly subpoenaed the Pennsylvania State Police and the Fayette County Jail for the above listed six categories of documents.

8. As to categories: One (1), Two (2), Three (3), Seven (7) and Sixteen (16), Respondents agreed to provide the documents, but only to the extent that the documents existed and were contained within the files of the Fayette County District Attorney's Office or the Office of the Attorney General. Respondents objected to the request only to the extent that it called for production of documents contained in the files of other entities. As to the remaining categories of documents requested by Petitioner: Five (5), Six (6), Nine (9), Ten (10), Twelve (12), Thirteen

---

[2]The list of documents requested were the same documents that were listed in Petitioner's original Motion for Discovery.

(13), Eighteen (18) and Nineteen (19), Respondents agreed to provide the documents, but stated that it would be withholding any documents that "contain mental impressions, conclusions, opinions, or legal theories of an attorney or representative of the Commonwealth concerning the litigation or are otherwise privileged." The Commonwealth also indicated that it would be providing a privilege log as to any documents they withheld.

      9.      On May 26, 2005, two months after the Court initially granted discovery, Respondents sent the first set of responsive documents to Petitioner.[3] An attached letter explained that these documents originated from the Attorney General's Office files and that the Commonwealth had withheld eleven categories of documents pursuant to Fed.R.Civ.P. 26(b)(5). The listed categories were as follows:

    1)    Proposed questions for the witnesses, and notes of the main purpose of each witness;
    2)    Proposed questions for use during jury selection;
    3)    Outline of points the prosecutor wanted to make during his opening statement, closing argument, and for argument on motions;
    4)    Notes regarding proposed points for charge;
    5)    To do lists;
    6)    Notes describing the law and the prosecutor's opinions about the law;
    7)    Exhibits to be admitted, the sponsoring witness for each exhibit, and the main purpose for each exhibit;
    8)    Lists of prospective trial jurors annotated with notes by the prosecutor;
    9)    Various witness lists, some of which contain personal information such as the home address and telephone number of the witnesses;
    10)    Speedy trial calculations; and
    11)    Brief legal evaluation of statutory mitigating circumstances and whether they were applicable during the penalty phase.

The letter stated that categories 1-3, 5 and 9 contained references to Ellis Price, and that the

---

[3] Petitioner received two sets of documents from the Pennsylvania State Police on June 9 and June 21, 2005. Petitioner learned in early June, 2005, that the Fayette County Jail did not have any responsive documents as they had been destroyed.

Commonwealth was especially concerned with category 9 "to the extent that it contains personal information about the witnesses."[4]

      10.      On August 4, 2005, Petitioner, after reviewing the discovery materials, sent Respondents a letter in response to the withheld documents. The letter requested that Respondents produce so much of each withheld document as does not contain any allegedly privileged or otherwise protected information. Petitioner also sought a privilege log, specifically asking for a written statement as to each withheld document:

    (1)    Identifying the type of document (such as letter, memo, or notes)
    (2)    Identifying the author(s) of the document.
    (3)    Identifying the sender(s) of the document.
    (4)    Identifying each and every recipient of the document.
    (5)    The date(s) on which the document was prepared.
    (6)    A brief description of the nature and subject matter of the document(s)
    (7)    The circumstances upon which the claim of work product protection is based.

Lastly, Petitioner assured Respondents that they were sympathetic to their concerns regarding the personal information about witnesses contained in Category 9, and that Petitioner did not require any such information.

      11.      Respondents informed Petitioner by letter dated August 9, 2005, that they would not be supplying any more information regarding the withheld documents as they believed they were not "required to provide any further information under Fed.R.Civ.P 26."[5]

      12.      In its July, 2005, status letter, the Commonwealth advised the Court that the

---

[4] Petitioner informed the Court in its July 11, 2005, status letter that Respondents had withheld the above listed categories of documents.

[5] Petitioner detailed this exchange with Respondents regarding the withheld documents in its August 12, 2005 letter to the Court.

documents in possession of the Fayette County District Attorney's Office would soon be delivered to the Attorney General's office for review and production to Petitioner. In its next status letter dated August 12, 2005, the Commonwealth again reported to the Court that it anticipated receiving the documents by August 17, 2005 and would "promptly review them and disclose those documents that are appropriate to the petitioner." For reasons that are unclear, the Commonwealth was unable to provide these documents until just last week.[6]

13. Accompanying the final set of responsive documents was a letter informing Petitioner that the Commonwealth had again withheld certain documents pursuant to Fed.R.Civ.P 26(b)(5). The eight categories of withheld documents were listed as follows:

> 1) Proposed questions for the witnesses, and notes of the main purpose of each witness;
> 2) Outline of points the prosecutor wanted to make during his opening statement, closing argument, and for argument on motions;
> 3) To do lists;
> 4) Notes describing the law and the prosecutor's opinions about the law;
> 5) Lists of prospective trial jurors annotated with notes by the prosecutor;
> 6) Various witness lists, some of which contain personal information such as the home address and telephone number of the witnesses;
> 7) Speedy trial calculations, and
> 8) Notes describing possible plea offers.

14. Missing from this entire set of responsive documents were _any_ files at all relating to Ellis Price. When questioned about this absence, counsel for the Commonwealth promised to contact the Fayette County District Attorney's Office and look into it. Mr. Carusone indicated at the status conference to counsel (before the court was in session) that the Fayette County District Attorney's office had gotten back to him and told him that they had no files whatsoever on Ellis

---

[6] As the Court is aware, Petitioner had to ask the Court to reschedule the October 3, 2005, status conference because it had still not received the documents from the Commonwealth.

Price.

I. **PETITIONER IS ENTITLED TO ALL DOCUMENTS THAT ARE CONTAINED IN THE ATTORNEY GENERAL'S FILES AND THE FILES OF THE FAYETTE COUNTY DISTRICT ATTORNEY THAT ARE RESPONSIVE TO ITS REQUEST FOR PRODUCTION OF DOCUMENTS.**

15. Petitioner has alleged that the Commonwealth's chief witness at trial, Ellis Price, perjured himself when he testified that Mark Breakiron confessed to him while they were both incarcerated and lied when he testified that he neither sought nor received any benefit in exchange for his testimony and/or had no incentive to curry favor with the Commonwealth. Undersigned counsel has submitted affidavits that show that Ellis Price and James "Silky" Sullivan invented Mr. Breakiron's confession using discovery materials they found in Breakiron's cell and then wrote a letter to the then District Attorney Gerald Solomon offering to testify in exchange for benefits in their cases.

16. The Court granted Petitioner discovery and determined that its document requests "were appropriately narrowed to the limited issue upon which discovery was permitted: whether Petitioner can establish 'cause and prejudice' to overcome the procedural default of Amended Claim 4."

17. A party resisting discovery based on the work-product privilege has the burden of establishing that the privilege applies. Peat, Marwick, Mitchell & Co. V. West, 748 F.2d 540, 542 (10th Cir. 1984) ("A party seeking to assert the privilege must make a clear showing that it applies"); Colorado v. Schmidt-Tiago Construction Co,, 108 F.R.D. 731, 734 (D. Colo. 1985) ("The burden of proving attorney-client privilege or work product privileges rests on the person raising the privilege.")

18. From the materials possessed by the Attorney-General's office, the Commonwealth has withheld, without any adequately specific explanation, at least eleven classes of documents, four of which relate to Ellis Price by the Commonwealth's own admission.[7] From the materials originally possessed by the Fayette County District Attorney's Office, the Commonwealth has withheld eight classes of documents, including possible plea offers, a matter directly relevant to Petitioner's allegations.

19. Moreover, the Attorney General has failed to provide any portion of the Fayette County District Attorney's files stemming from the prosecution of Ellis Price, despite the fact that after becoming a witness against Mark Breakiron, Ellis Price received substantial benefits in his cases. Because these documents may well bear on Petitioner's specific claims, Petitioner has a right to all responsive documents.

20. Additionally, any Brady information in these documents must be disclosed notwithstanding any claim of work product. The work-product privilege has never applied when the attorney's own subjective impressions or observations themselves are evidence of the constitutional violation,[8] and where the misapplication of the privilege would effectively insulate

---

[7] See paragraph 7, listing the categories of documents withheld by the Commonwealth, supra.

[8] See, for example, the routine disclosure of prosecutors' notes in the context of claims that prosecutors improperly exercised peremptory challenges on the basis of race or gender. See Riley v. Taylor, 277 F.3d 261, 276-80 (3d Cir. 2001) (en banc) (prosecutor's notes show stated reasons for striking minority jurors were pretextual); Love v. Jones, 923 F.2d 816, 819-20 (11th Cir. 1991) (prima facie case supported by evidence that prosecutor kept notes of jurors' races); Holloway v. Horn, 161 F. Supp. 2d 452, 510 (E.D. Pa. 2001) (prosecutor's jury selection notes, ordered turned over in habeas discovery, included a list of the selected jurors, including information on race and gender, and "notes regarding 86 of the 87 venirepersons questioned"; "[f]or each potential juror, the notes include [*inter alia*] juror number; race and gender; . . . *and occasionally, what may be construed as mental impressions of the ADA*"); Diggs v. Vaughn,

prosecutorial misconduct from constitutional review. See e.g. Strickler v. Greene, 527 U.S. 263 (1999); Banks v. Dretke, 540 U.S. 668 (2004) (materials in prosecutor's files subject to disclosure under Brady.)

## II. THE COMMONWEALTH'S DESCRIPTIONS OF WITHHELD CATEGORIES OF DOCUMENTS ARE INSUFFICIENT FOR PETITIONER TO DETERMINE WHETHER THEY ARE RELEVANT OR PRIVILEGED, THUS A MORE DETAILED PRIVILEGE LOG IS NECESSARY.

21.  Respondent's letters, (May 26, 2005 and October 26, 2005) which accompanied the two sets of responsive discovery documents, advised Petitioner that "[i]n compliance with Fed.R.Civ.P. 26(b)(5), respondents are withholding the following categories of documents prepared by the prosecutor(s) that are protected from disclosure pursuant to Fed.R.Civ.P 26(b)(3) (relating to trial preparation materials)."

22.  Federal Rule of Civil Procedure 26(b)(5) requires that if a party claims privilege it shall "make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Id.

23.  To properly demonstrate that a privilege exists, the privilege log should contain a

---

1991 WL 46319, *1-2 (E.D. Pa. Mar. 27, 1991) ("The record demonstrates conclusively that, at each trial, the prosecutor kept careful records of the race of each prospective juror, and a running tally of how many persons of each race remained on the venire for possible selection."); see also Lockett v. Puckett, 980 F. Supp. 201, 220-21 (S.D. Miss. 1997) (prosecutor's notes revealed evidence supporting Batson claim); Commonwealth v. Spotz, No. 269 - 1995 (Schuylkill C.P.), PCRA N.T. 10/5/2000, at 693 (Baldwin, P.J.) ("I think in view of current case law which has been in existence for sometime that the reasons for exercising peremptory challenges may be challenged. The District Attorney should be on notice that their notes about the jury selection . . . may be admitted into evidence.").

brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document. See Fed.R.Civ.P. 26(b)(5) Advisory Committee's Notes, 1993 Amendments.

24. Here, Respondents have not complied with the requirements of Fed.R.Civ.P 26(b)(5). Petitioner specifically requested more specific information regarding the withheld documents in a letter dated August 4, 2005. However, Respondents refused to offer any further details.

25. Since Amended Claim 4 of the Petition concerns benefits received by Commonwealth witness Ellis Price, Petitioner is most concerned with the following categories of withheld documents:

> Categories of withheld documents that contain references to Ellis Price as listed in Respondent's May 26, 2005 letter.
>
> 1) Proposed questions for the witnesses, and notes of the main purpose of each witness;
> 3) Outline of points the prosecutor wanted to make during his opening statement, closing argument, and for argument on motions;
> 4) Witness lists (personal information about those witnesses unrelated to the prosecution may be redacted.)
> 5) To do lists;
>
> Categories of withheld documents as listed in Respondent's October 26, 2005 letter.
>
> 1) Proposed questions for the witnesses, and notes of the main purpose of each witness;
> 2) Outline of points the prosecutor wanted to make during his opening statement, closing argument, and for argument on motions;

    3)     To do lists;
    8)     Notes describing possible plea offers.

The other categories listed in each letter are of less concern to Petitioner.

    26.    Petitioner is also concerned with the failure to provide <u>any</u> files from the Fayette County District Attorney files concerning the prosecution of Ellis Price. To date, there has been no explanation for this failure.

    27.    It is apparent from the description of the categories of withheld documents listed above, that some of the materials may contain information relevant to Petitioner's claims. However, Respondent's description of the categories of documents he has withheld is too vague and inadequate for Petitioner to adequately assess either their relevance or whether or not they are privileged. Thus, Petitioner requests the Court to compel Respondents to provide a privilege log for each document they have withheld with enough description that it can determine both the document's relevance and also whether to move to Court to compel its production.

28. For all the foregoing reasons, Petitioner's Motion should be granted.

>Respectfully submitted,
>
>/s/James Anderson
>James Anderson, Esq.
>Assistant Federal Public Defender
>Capital Habeas Corpus Unit
>1450 Liberty Center
>1001 Liberty Avenue
>Pittsburgh, PA 15222-3714
>(412) 644-6565
>
>Stuart Lev, Esq.
>Capital Habeas Corpus Unit
>Federal Court Division
>Defender Association of Philadelphia
>Suite 545W -- The Curtis Center
>Independence Sq. West
>Philadelphia, PA 19106
>(215) 928-0520

Dated: November 4, 2005