IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MARK BREAKIRON, | : |
| Petitioner, | : |
|  | : CIVIL ACTION |
| v. | : |
|  | : No. 00 - 300: |
| MARTIN HORN, Commissioner, Pennsylvania Department of Corrections; CONNOR BLAINE, Superintendent of the State Correctional Institution at Greene, and JOSEPH P. MAZURKIEWICZ, Superintendent of the State Correctional Institution at Rockview, | : Judge Standish |
|  | : **THIS IS A CAPITAL CASE**. |
| Respondents. | : |

**SUPPLEMENTAL BRIEF
IN SUPPORT OF SUMMARY JUDGMENT
ON CLAIMS 3 and 1**

Mr. Breakiron is entitled to summary judgment for two reasons. First, the trial court inexplicably excluded any testimony from Mr. Breakiron regarding his intent on the night in question. Since Mr. Breakiron's intent (and mens rea) was nearly the only thing contested at trial, this inexplicable error was fundamental in denying Mr. Breakiron's right to a fair trial. Secondly, trial counsel was grossly ineffective for failing to present readily available evidence in support of Mr. Breakiron's defense of diminished capacity at trial. Considered either apart or together, each require that Mr. Breakiron receive a new, fair, trial.

This Court, in its Memorandum Opinion of 10/1/04, plainly rejected the

Commonwealth's affirmative procedural defenses. The correctness of this ruling was recently (re)affirmed in Bronshtein v. Horn, 404 F.3d 700 (3rd Cir. 2005) (Alito, J.) (finding Pennsylvania PCRA statute of limitations inadequate to preclude federal review). Accordingly, Petitioner will not address the Commonwealth's procedural arguments.

Both of these claims have been fully briefed by the parties. Rather than fully rebrief the claims, Petitioner has attached, for the convenience of the Court and the parties, the relevant sections of Petitioner's Legal Memorandum, the Commonwealth's Response, and Petitioner's Reply in appendices. This Supplemental Brief updates the law with respect to the two claims.

## ARGUMENT

**Summary Judgment Is Appropriate on Claim 3 Because the Trial Court Inexplicably Prevented Mr. Breakiron from Testifying in His Own Defense about the Critical Issue at Trial – His Mens Rea.[1]**

As to the merits, there is little new law to discuss on this claim Both the Commonwealth and the Petitioner agree that the right to testify in your own defense is a critical constitutional right. See Commonwealth's Answer at 83 (right to present evidence and testify on one's own behalf is "fundamental constitutional right"). That right was violated when the trial court's ruling prevented Mr. Breakiron from testifying about his intent throughout the evening in question. As trial counsel complained at trial:

> I started to ask questions about his intentions and I was told that I could not ask those questions. So, therefore, I could not develop anything in regard to his intentions that night or what happened at the bar. I was precluded by this Court

---

[1] Petitioner is entitled to de novo review on this claim because the Pennsylvania Supreme Court did not rule on its merits. Jacobs v. Horn, 395 F.3d 92, 118 n. 21 (3d Cir. 2005) (where state supreme court does not address claim on merits because of inadequate state procedural bar, de novo review is required); Everett v. Beard, 290 F.3d 500, 508 (3d Cir. 2002) (same); Jermyn v. Horn, 266 F.3d 257, 299-300 (3d Cir. 2001) (same).

from doing so.

NT 4/13/88 at 1299. Since this was the most important contested element at trial, and the heart of Mr. Breakiron's defense, the trial court's ruling cannot be considered harmless error. Given counsel's ineffective failure to prepare or present any mental health testimony, Mr. Breakiron's own testimony about his lack of specific intent to kill was virtually his only chance to support his voluntary intoxication/diminished capacity defense. The trial court's inexplicable, *sui generis* ruling deprived him of that chance.

**Summary Judgment Is Appropriate on Claim 1 Because Counsel Was Ineffective and the Case Is Controlled by Jacobs V. Horn, 395 F.3d 92 (3d. Cir. 2005).**

In Claim 1, Mr. Breakiron explained that he is entitled to a new trial because counsel was constitutionally ineffective in failing to investigate and present mental health evidence that would have supported the diminished capacity/intoxication defense that was presented to the jury.[2] As set forth in detail in the Habeas Petition and Memorandum of Law, Petitioner's defense was handled, or, more appropriately, mishandled, by a series of appointed lawyers, none of whom ever took responsibility for fully investigating and preparing the trial defense. Counsel knew that Petitioner had a long and documented history of psychiatric problems and alcoholism – that

---

[2]Claim 1 also alleges that counsel was ineffective for failing to properly investigate and present mitigation evidence for the penalty phase. See Petitioner's Memorandum at 66-82. Under recent Supreme Court case law, Petitioner would be entitled to summary judgement on this portion of the claim as well. See Wiggins v. Smith, 539 U.S. 510 (2003) (counsel's investigation deficient although they obtained a psychological evaluation and reviewed petitioner's post- sentencing investigation report and department of social services records); Rompilla v. Beard, 125 S.Ct. 2456 (2005) (counsel ineffective although counsel interviewed Rompilla himself, spoke to five members of his family in a "detailed manner," and obtained three mental health evaluations). Wiggins, and Rompilla are instructive because the defense counsel in this case did far less than the attorneys in those cases- and yet their investigation was found to be inadequate, and counsel was deemed ineffective. This Court, however, need not address this aspect of Claim I if it grants habeas relief in the form of a new trial.

started in childhood and included a history of blackouts – yet never investigated that background or obtained the institutional records documenting that history. Counsel also knew that an evaluation by a mental health expert was appropriate, yet, as the Pennsylvania Supreme Court recognized, counsel thoroughly bungled the effort to obtain an appropriate evaluation.

In the end, without any investigation, and without any supporting mental health evidence – evidence which would have been available had counsel performed properly – counsel presented a diminished capacity/intoxication defense that relied almost entirely on Petitioner's own testimony about the events that day – and even that testimony was unconstitutionally limited by the trial court's rulings precluding his testimony about his intent that evening. See Claim 3, supra. Counsel was dreadfully unprepared for trial and constitutionally ineffective.

In Jacobs v. Horn, 395 F.3d 92 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit recently recognized that counsel seeking to raise a diminished capacity defense has a duty to investigate the defendant's mental health history and background, and to provide that information to a mental health expert. In Jacobs, trial counsel pursued a diminished capacity/heat of passion defense, and, in preparation for trial, had his client examined by a mental health expert with reference to his state of mind at the time of the killing. Counsel failed, however, to conduct any investigation into defendant's background, and, thus, failed to discover evidence of Jacobs' impairments. As a result, the mental health expert relied solely on his oral evaluation of Jacobs, and was unable to support the diminished capacity defense:

> Trial counsel was thus unable to support Jacobs' diminished capacity defense with psychiatric evidence establishing that he suffered from any mental disorders which prevented him from formulating the specific intent to kill. Apparently the only evidence of heat of passion or diminished capacity presented at the guilt phase was Jacobs' own testimony that he "lost it"...

4

Id. at 102-03.

Mr. Breakiron's counsel did even less than Jacobs' lawyer. At least Jacobs' lawyer retained a defense expert and had his client evaluated in an effort to support the diminished capacity defense. Mr. Breakiron's lawyer neither sought out, nor secured, such an evaluation in the preparation of his defense and instead relied solely upon the unsupported (and unexplained) testimony of Mr. Breakiron.

Jacobs also recognized that counsel "knew or should have known from Jacobs' behavior and from his interactions with Jacobs that he should initiate some [mental health] investigation." Id. Mr. Breakiron's lawyer had similar knowledge. Counsel knew that even prior to Petitioner's arrest on the murder charges, he had been arrested shortly after the killing for public drunkenness and, because of his threats to commit suicide, was sent to the Fayette County Mental Health Center for an evaluation. The report of that evaluation revealed that Mr. Breakiron had a history of psychiatric treatment, drug and alcohol abuse, and blackouts.[3]

Counsel knew that Mr. Breakiron had mental problems and knew that the defendant's mental condition was likely to be a critical issue at trial. Instead of investigating his background or obtaining a defense mental health expert defense counsel acquiesced in the appointment of a neutral court expert who only evaluated Mr. Breakiron for his competency to stand trial and whether or not he was insane. Defense counsel did not ask the expert to evaluate Mr. Breakiron for either diminished capacity or mitigation.

As in Jacobs, counsel's failure to adequately investigate or seek the assistance of a mental

---

[3] Fayette County Mental Health Center Readmission Intake, 3/27/87. A subsequent report by Dr. Adamski contained similar information. See Petitioner's Memorandum at 37-38.

health expert rendered him ineffective. In Jacobs, the Third Circuit concluded that counsel was constitutionally deficient:

> At the time counsel decided not to investigate further, he knew or should have known from Jacobs' behavior and from his interactions with Jacobs that he should initiate some investigation "of a psychological or psychiatric nature." (PCRA Hearing Tr. 5/29/97 at 29:24).... In light of all that was known or made available to counsel, we conclude that Jacobs has satisfied the first prong of the Strickland test. He has demonstrated that counsel did not exercise reasonable professional judgment in failing to investigate further and discover evidence of Jacobs' mental retardation, brain damage, and other impairments that could have prevented him from forming the specific intent to kill Tammy Mock.

Id. at 103; see also id. at 104, n.7 ("[t]he unreasonableness of counsel's decision is compounded by the fact that he pursued a diminished capacity defense without any expert evidence to support it"). The same analysis is directly applicable here and is in accord with the conclusion of the Pennsylvania Supreme Court that counsel was ineffective.[4]

Jacobs also mandates the conclusion that Mr. Breakiron was prejudiced by his counsel's error. First, the Court properly explains that the prejudice "standard is not 'a stringent one.'" Id. at 105 *(quoting* Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir.2001)). In Jacobs, the Court relied upon mental health experts to find that the petitioner was prejudiced by counsel's deficient investigation and performance. In Breakiron, state post-conviction counsel retained the respected forensic psychiatrist Dr. Christine Martone to evaluate Mr. Breakiron.[5] In post-conviction proceedings she offered the readily available expert support for Mr. Breakiron's defense that

---

[4] Commonwealth v. Breakiron, 729 A.2d 1088, 1099 (Pa. 1999) (counsel was ineffective "and our determination in this matter hinges upon whether these errors were prejudicial to the defendant at either the guilt or the sentencing phase of the trial.")

[5] Both Dr. Julie Kessel and Dr. Fox reach conclusions consistent with Dr. Martone. See Affidavits of Drs. Julie Kessel and Robert Fox. Dr. Julie Kessel is the same doctor relied upon by the Court of Appeals in Jacobs.

defense counsel never presented.  See Legal Memorandum at 59-60 (discussing defense mental health expert's testimony).   In particular, Dr. Martone explained that Mr. Breakiron suffered a blackout at the time of the crime, and that he was acting "almost in a state of automation" in the blackout.  NT PCRA 9/17/97 at 35-37.  Mental health testimony and Mr. Breakiron's documented history of blackouts would also have provided an important context for Mr. Breakiron's otherwise unsupported testimony about remembering only parts of the evening and seeing parts of the crime as if watching television.  Finally, this evidence could have rebutted the Commonwealth's medically incorrect argument that Mr. Breakiron could not have had a blackout because he had some memory of the evening.  See Legal Memorandum at 61-62.  As in Jacobs, Mr. Breakiron was prejudiced by the absence of this kind of testimony at trial to support his intoxication/diminished capacity defense.

### *Jacobs and the Pennsylvania Supreme Court Opinion*

Jacobs also shows that the Pennsylvania Supreme Court's opinion in Breakiron was both an "unreasonable application of" and "contrary to" clearly established federal law.[6]  In Jacobs the state court had rejected Jacobs' claim that counsel's performance was deficient because, based on the results of his expert's evaluation (which found no major mental illness), counsel had pursued a diminished capacity claim "to the best of his ability."  Id. at 106.  The Court of Appeals found that such a limited view of Strickland was unreasonable.  Id. at 106-07 ("In our view, the Pennsylvania Supreme Court's decision, based on a single factor to the exclusion of other relevant factors, involved an unreasonable application of Strickland.)

In Breakiron, the Pennsylvania Supreme Court' applied similar reasoning to its conclusion

---

[6] 18 U.S.C. § 2254.

that Mr. Breakiron had not been prejudiced by counsel's error.  Breakiron-2, 729 A.2d at 1099 (absence of prejudice grounded on the fact that "the only defense available to trial counsel was of diminished capacity, which was presented and rejected by the jury at trial").  Thus the state Court's prejudice analysis is based on a single fact, rather than the totality of circumstances required under Strickland.  As in Jacobs, such myopic reasoning is an unreasonable application of Strickland.

Finally, Jacobs makes clear that the Pennsylvania Supreme Court's reasoning was "contrary to" Strickland.  As explained in Petitioner's Memorandum at 63-66, the Pennsylvania Supreme Court required Mr. Breakiron to prove that counsel's errors "would have led to a different result."  Breakiron-2 at 1099.  Jacobs notes that the United States Supreme Court has expressly rejected such as standard.[7]

In sum, Petitioner's case is distinguishable from Jacobs only by the fact that his lawyers were even more obviously ineffective than those of Mr. Jacobs.  Petitioner's request for summary judgment should be granted.

---

[7] Id. at 105 ("Jacobs need not show that counsel's deficient performance "more likely than not altered the outcome in the case"--rather, he must show only "a probability sufficient to undermine confidence in the outcome" (quoting Strickland)); id. at n.8 ("We emphasize that Jacobs need not establish his diminished capacity defense conclusively for the purpose of demonstrating a Sixth Amendment violation. Rather, as we have explained, he is required to show only a reasonable probability that the outcome of the proceedings would have been different if trial counsel had presented evidence of Jacobs' mental retardation, organic brain damage, and other mental deficiencies").

**Conclusion**

Respectfully, Petitioner believes that is entitlement to relief on these two claims is clear, and that it would be in the interests of efficiency for both the Court and the parties for this Court to grant Mr. Breakiron a new, fair, trial.

Respectfully submitted,

S/(James Anderson)
_____
James Anderson, Esq.
Assistant Federal Public Defender
Capital Habeas Corpus Unit
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222-3714
(412) 644-6565

Stuart Lev, Esq.
Capital Habeas Corpus Unit
Federal Court Division
Defender Association of Philadelphia
Suite 545W -- The Curtis Center
Independence Sq. West
Philadelphia, PA 19106
(215) 928-0520

Dated:   November 15, 2005