**CLAIM 3:** **PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO TESTIFY IN HIS OWN BEHALF, TO PRESENT A DEFENSE AND TO DUE PROCESS WHERE THE TRIAL COURT PRECLUDED PETITIONER FROM TESTIFYING ABOUT HIS INTENT AT THE TIME OF THE KILLING; ALL PRIOR COUNSEL WERE INEFFECTIVE FOR FAILING TO RAISE AND LITIGATE THIS CLAIM.[58]**

During Petitioner's testimony in his own defense at trial, the trial court precluded Mr. Breakiron from testifying about his intent at the time of the crime. Despite the fact that Petitioner's intent was the critical issue before the jury, and that the defense had no other means to prove his intent, the trial court held that Petitioner would not be permitted to testify about his intent to the jury. The trial court's actions constituted gross constitutional error of the greatest magnitude.

Mr. Breakiron testified at trial in his own behalf. During that examination, counsel asked, "when you went out that night, what intentions, if any, did you have to hurt anybody?" The prosecutor's objection to that question was sustained. Counsel also asked Petitioner about his intention to take any money that night. Again, the prosecutor's objection was sustained. Counsel asked to go to side bar, where the following colloquy took place:

> Mr. Bower (Defense counsel):   Your Honor, I don't understand the ruling in regard to why I cannot ask the questions about what his intentions were.

---

[58]This claim was exhausted in <u>Breakiron-3</u>. The Pennsylvania Supreme Court did not address the merits of this claim, finding that it was not timely raised. For the reasons discussed in Section V, <u>supra</u>, the Pennsylvania time bar does not constitute an adequate state court rule as applied to this case, and thus the claim is not defaulted. Moreover, as a record based claim, this claim was exhausted by the Pennsylvania Supreme Court's statutorily mandated review in capital cases. <u>See</u> Section IV, <u>supra</u>. Because the state court did not address the merits of the claim, this Court's review is de novo. <u>Hameen</u>, <u>Appell</u>, <u>Pursell</u>. <u>See</u> Section VI, <u>supra</u>.

    The Court:    Well, we are interested in what he did.

    Mr. Morrison (Prosecutor):    That's right.

    The Court:    And not what he may have intended to do.

    Mr. Bower:    Well, that also goes . . .

    The Court:    I have made my ruling and that's it. I'm not going to argue with you.

    Mr. Bower:    I'm just trying to understand it.

    The Court:    We are not interested in what he intended to do. It's what he did.

NT at 1261-62.[59]

The Court grossly erred. The question of whether Petitioner's possessed the specific intent to kill was the fundamental question at trial. Petitioner had an fundamental constitutional right to testify about his lack of intent. Petitioner was denied his Sixth Amendment and Fourteenth Amendment right to testify in his own defense and to present a defense.

### A.    The Merits of The Claim

The right to testify:

> on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that are essential to due process of law in a fair adversary process. . . . The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony . . . A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense--a right to his day in court--are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

---

[59]During a discussion concerning the court's charge, counsel reiterated that, "I started to ask questions about his intentions, but I was told that I could not ask those questions. So, therefore, I could not develop anything in regard to his intentions that night or what happened at the bar. I was precluded by this Court from doing so." NT 4/13/88 at 1299.

Rock v. Arkansas, 483 U.S. 44, 51 (1987). The right to testify in one's own behalf is also grounded in the Sixth Amendment right to compulsory process. The right to present evidence that is "material and favorable to the defense." necessarily include's the right to testify as "as the most important witness for the defense, in many criminal case, is the defendant himself.' Id. at 52. [60] Accord United States v. Leggett, 162 F.3d 237, 245 (3d Cir. 1998); United States v. Pennycooke, 65 F.3d 9, 10-11 (3d Cir. 1995).

An accused has a fundamental right to present his own version of the facts and rebut the claims of the Commonwealth. Washington v. Texas, 388 U.S. 14, 19 (1967) (the right to present witnesses "is, in plain terms, the right to present a defense" and "is a fundamental tenet of due process"); see also Chambers v. Mississippi, 410 U.S. 284 (1973). Few rights are more fundamental. State evidentiary rules must bend when their application prevents the defense from putting its case before the jury. Chambers, 410 U.S. at 302. The right to present a defense includes both the right to present affirmative evidence of innocence as well as the right to present evidence that disproves a government contention. Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987).

In this case, the existence of a specific intent to kill, as well as the existence of an intent to steal (a necessary element of robbery), were the critical elements of the case. Indeed, these mens rea are elements of the offenses of first degree murder and robbery. The due process clause requires that the prosecution prove these elements beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). Petitioner has an absolute right to challenge that burden and deny the existence of those elements. In United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987), the Court held:

---

[60]Rock also found that the right to testify was embodied in the Fifth Amendment proscription against self-incrimination. Id. at 52-53.

> The defendant's rights to present a defense to one of those elements [of the offense], generally includes the right to the admission of competent, reliable exculpatory evidence . . . Evidentiary rules that would bar the testimony of the defendant himself, as would a rule barring all evidence of mental abnormality on the issue of mens rea, needs particular justification . . . <u>a rule barring evidence on the issue of mens rea may be unconstitutional so long as we determine criminal liability in part through subjective states of mind</u>

<u>Id.</u> at 900-01   In this case, the trial court's ruling precluding Petitioner from testifying about his mens rea violated these constitutional standards.

The United States Supreme Court has recognized that a State may not ordinarily exclude competent reliable evidence where that evidence is important to the defendant's claim, except where there is valid justification which outweighs the need for such evidence. "In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives the defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing." <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986). <u>See</u> also <u>Rock</u>, 483 U.S. at 55-56 (although right to testify is not unlimited, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve").  In <u>Crane</u>, the Court held that the defendant's due process rights were violated by the exclusion of evidence concerning the circumstances of his confession to the police because those circumstances bear on important jury questions concerning the voluntariness of the statements and the credibility of the defense. 476 U.S. at 687-88. In <u>Rock</u>, the Court found that there was not sufficient justification for the State's per se rule prohibiting all hypnotically refreshed testimony and that application of that rule "infringe[d] impermissibly on the right of a defendant to testify on his own behalf. 483 U.S. at 62.

Here, of course, the State has not, and indeed cannot, offer any valid justification for precluding a defendant from testifying about his intent at the time of the crime, where that intent is

an element of the crime and where a challenge to that intent is the crux of the defense.[61] The trial court's preclusion of any testimony concerning Mr. Breakiron's lack of intent to kill or to rob violated <u>Rock</u> and <u>Crane</u>.[62]

Nor was the right to testify satisfied simply because Petitioner was allowed to testify about matters other than his intent. "[A state] may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." <u>Rock</u>, 483 U.S. at 55.

Petitioner presented an intoxication/diminished capacity defense which effectively conceded his guilt of third degree murder; the <u>only real question at trial was whether Petitioner had the intent necessary to convict him of first degree murder and robbery</u>.[63] Petitioner had an absolute right to testify about his lack of intent. The trial court's preclusion of Petitioner's testimony violated his constitutional rights.

### B.     The Error Was Not Harmless

The error cannot be held harmless. The harmless error test announced in <u>Brecht v.</u>

---

[61] No state rule supports or justifies the court's holding. Indeed, it is not unusual for defendants in Pennsylvania to testify that they lacked the specific intent to kill. E.g. <u>Commonwealth v. Legg</u>, 711 A.2d 430, 432 (Pa. 19980 (defendant testified at trial that her only intent was to scare the deceased); <u>Commonwealth v. Harris</u>, 665 A.2d 1172, 1173 (Pa. 1995) (defendant took the stand and denied that the shooting was intentional).

[62] <u>Cf.</u> <u>United States v. Gonzalez-Chavez</u>, 122 F.3d 15, 18 (8th Cir. 1997) (no error in precluding defendant from testifying about his good faith belief in the lawfulness of his actions because specific intent was not an element of the offense and, therefore, defendant's good faith was not relevant).

[63] The fact that Petitioner introduced some evidence supporting the affirmative defense of intoxication or diminished capacity does not prevent him from presenting evidence negating the element of intent. <u>Pohlot</u>, 877 F.2d at 901 ("the mere fact that defendant has the right to introduce psychiatric evidence in support of the affirmative defense of insanity does not justify barring the evidence from negating the government's case in chief").

Abrahamson, 507 U.S. 619 (1993) frames analysis. Under Brecht, an error must have a "substantial and injurious effect or influence in determining the jury's verdict" before it can be considered harmful and require relief. 507 U.S. at 632 n. 7.

It is not appropriate to ask whether there was untainted evidence is sufficient to support the result. The correct inquiry is whether the error had a substantial influence on the verdict despite the existence of other, sufficient, evidence. Smith v. Horn, 120 F.3d 400, 417 (3d Cir. 1997) quoting Yohn v. Love, 76 F.3d 508, 523 (3d Cir. 1996).

The Brecht standard is thus not particularly onerous. A habeas petitioner does not have the burden of proving the error prejudicial. Rather, a court's doubt concerning the harmlessness of any such error must be resolved in favor of the petitioner. Brecht, 507 U.S. at 640-41 (Stevens, J. concurring)[64] (the harmless error standard "places the burden on prosecutors to explain why those errors were harmless"); O'Neal v. McAnnich, 513 U.S. 432, 437 (1995). The Brecht standard falls somewhere between Chapman harmless error and Strickland prejudice. See Kyles v. Whitley, 514 U.S. 419, 434 (1995). In light of the fact that Strickland prejudice requires a showing by less than a preponderance of the evidence, and that Brecht is even more petitioner-favorable, the Commonwealth's has a significant and difficult burden of demonstrating that an error is harmless under Brecht. Indeed, as Justice Stevens explained, the differences between the Brecht and Chapman standards are not so significant and are "far less important than the quality of the judgement [to] which it is applied." Brecht, 507 U.S. at 643.

In this case, the Commonwealth cannot demonstrate that the trial court's instructional error was harmless. The Commonwealth's evidence of Mr. Breakiron's intent was largely circumstantial

---

[64]Justice Stevens provided the critical fifth vote in Brecht.

96

and hardly overwhelming. The circumstances of the crime, while sufficient to support the jury's verdict, are not necessarily consistent with a premeditated and deliberate intent to kill. The nature of the wounds, and of Petitioner's actions following the assault, are at least equally consistent with a killing committed during an intoxicated rage and/or alcohol blackout, as it is with an intent to kill. The only direct evidence suggesting an intent to kill came from jailhouse snitch Ellis Price. Price claimed that Petitioner admitted his guilt to him and described a planned and premeditated act, contradicting Petitioner's defense theory that he was intoxicated and lacked the specific intent to kill.[65] As discussed infra in this memorandum, Mr. Price had a history of criminal convictions, some involving *crimen falsi*, and substantial motivations to testify favorably for the Commonwealth. Moreover, Price's testimony was inconsistent with Commonwealth witness Ed Mihalsky. Mr. Mihalsky testified that he was a patron at the bar on the night of the killing and that, at the time he left, Petitioner and the deceased were alone in the bar and theirs were the only two cars in the parking lot. NT 4/8/88 at 837-43. Mihalsky's testimony was inconsistent with Price's claim that Petitioner admitted hiding in the bathroom until after all of the other patrons had left. Thus, the Commonwealth's evidence of intent was ambiguous at best.[66]

---

[65] NT 1113-15 (describing Mr. Breakiron hiding in bathroom).

[66] Compare Whitney v. Horn, -- F.3d –, 2002 WL 181342 (3d Cir. 2002), where the Court found an instructional error relating to the defense of intoxication harmless in light of the overwhelming evidence of the defendant's intent to kill. There, the prosecution evidence showed that defendant broke into one apartment and threatened to kill the occupant, announced he was in the wrong apartment and left, then broke into another apartment where he stabbed one victim while repeatedly exclaiming his intent to kill him, and announced his intent to rape and kill a second victim) Id. at 1. Moreover Whitney told the police that he was not drunk and had only a little to drink. Id. at *2. The Third Circuit placed heavy reliance on Whitney's proclamations of his intent during the crimes, rather than on the circumstantial evidence of the nature and severity of the wounds. Id. at *15. Moreover, the Court also relied on Whitney's specific actions during the crime, which indicated "presence of mind and cognition totally inconsistent with" an

97

Moreover, Mr. Breakiron's sole defense focused on his lack of intent, as he did not deny his involvement in the killing. Mr. Breakiron testified that, on the day of the killing, he had approximately eight beers prior to dinner. NT at 1233-38, 1245. After dinner he went back out and had more beer and a shot of whiskey. Id. at 1249. After arriving at the bar, he had approximately six more beers and, possibly, another shot of whiskey. Id. at 1251. Mr. Breakiron did not remember the details of what happened next, though he thought he was struck on the head and knocked unconscious. He remembered waking up to find the deceased's body on the floor beside him, with his knife in her back. Id. at 1251-55.

Given the highly disputed facts relating to intent, and the lack of uncontradicted direct evidence of that intent, the error in precluding Mr. Breakiron from testifying about his lack of intent to kill and rob had a substantial and injurious effect on the jury's verdict and was not harmless under Brecht. See Smith v. Horn, 120 F.3d at 418-19 (court explained that, in evaluating the harm of an erroneous jury instruction, the court must not usurp the role of the jury in making credibility determinations and weighing evidence; given that the jury's deliberations were tainted by the erroneous instruction, the Court "cannot assume that the jury, having found Smith guilty, 'believed all properly admitted evidence against him and disbelieved all evidence in his favor.'" (quoting Roger J. Traynor, THE RIDDLE OF HARMLESS ERROR 28 (1970)). Here, as in Smith, the error cannot be deemed harmless

### C.   Counsel Was Ineffective.

---

intoxication defense. Id. None of this type of evidence is present in this case; unlike Whitney, the evidence of Breakiron's mental state was not "overwhelming" and could not "conclusively establish intent." Id. at 16. Thus, here, the refusal to allow him to testify about his lack of intent was not harmless under any standard of review.

To the extent, if any, that trial counsel failed to adequately raise, preserve and litigate this issue. Appellate counsel was likewise ineffective for failing to raise these issue on direct appeal.

Ineffective assistance of appellate counsel claims are judged by the Strickland standard. Mason v. Hanks, 97 F.3d 887, 892 (7th Cir. 1996); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). A defendant establishes that he was prejudiced by appellate counsel's ineffectiveness where he shows that there was a reasonable possibility that, but for counsel's error, there was a reasonable probability that the outcome of the appeal would have been different. Mason, 97 F.3d at 893; Mayo, 13 F.3d at 534; Matire, 811 F.2d at 1439. There simply can be no reasonable strategy for failing to raise a meritorious issue on appeal in a capital case.[67] Greer v. Mitchell 2001 WL 1001080 (6th Cir. 9/4/01) ("in a capital case ... appellate attorneys must err on the side of inclusion particularly where, as here, there appear to exist a significant number of facts to support the claim). Thus, where appellate counsel fails to raise a substantial, meritorious claim on appeal, counsel is constitutionally ineffective. Mason (appellate counsel was ineffective for failing raise claim relating to the erroneous admission of hearsay evidence); Mayo (appellate counsel ineffective for failing to raise issue relating to state discovery

---

[67] In Commonwealth v. Townsell, 474 Pa. 563, 379 A.2d 98 (1977), the Pennsylvania Supreme Court found that appellate counsel was constitutionally ineffective for failing to raise a meritorious challenge to the impropriety of the district attorney's closing argument on appeal. Counsel explained that he did not raise the claim because he was afraid the error would be rejected as harmless and would take the focus off the good issue. The Court concluded that counsel's strategy was unreasonable. "[A] substantial matter of arguable merit is not to be abandoned on the ground that it might de-emphasize another issue . . . at the least, appellate counsel should brief each significant arguable issue. . . complete disregard of an important issue cannot be ignored as a matter of strategy." Id., 379 A.2d 101. Accord Commonwealth v. Yocham, 483 Pa. 478, 397 A.2d 766, 768 (1979) (appellate counsel failure to raise an important and meritorious issue, based on his personal view of the facts, was unreasonable and deprived defendant of ineffective assistance of appellate counsel)

rule); Matire (appellate counsel ineffective for failing to raise claim relating to comment on defendant's post arrest silence).

The preclusion of Petitioner's testimony concerning his intent was an issue of obvious merit. It went to the heart of the defense. Appellate counsel could have no reasonable basis for failing to raise this issue.

Moreover, the error was prejudicial. As discussed above, under the facts of this case, the error was not harmless and petitioner was prejudiced by appellate counsel's failure to raise it. Indeed, like its federal counterparts, Pennsylvania Court's have both recognized and respected the right to testify in one's own behalf.[68] Thus there is a reasonable probability that Petitioner would have been successful had he raised this claim on direct appeal.

---

[68] The Pennsylvania Supreme Court has held that, "[t]he right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." Commonwealth v. Nieves, 560 Pa. 529, 534-35, 746 A.2d 1102, 1105 (2000). Where the actions of the trial court, or defense counsel, interfere with that right and prevent a defendant from presenting his testimony in support of his defense, reversal is required. Nieves (erroneous advice by counsel caused defendant to waive his rights and denied him his right to testify); Commonwealth v. Aguado, 760 A.2d 1181 (Pa. Super. 2000) (en banc) (trial court's refusal to rule on admissibility of defendant's prior conviction until after defendant testified erroneously caused defendant to give up his right to testify); Commonwealth v. Neal, 618 A.2d 438 (Pa. Super. 1992) (new trial required where counsel failed to discuss right to testify with defendant). Here, the trial court did more than merely cause Petitioner to decide not to testify, the court ruled that he could not testify about the facts central to his defense.