In addition, the trial court took precautions to make sure that the jury was not exposed to any media coverage. As each juror was selected, the court instructed the juror to not discuss the case or read any news accounts. (N.T. 48, 94, 119-20, 213, 226, 239, 264, 289, 521, 601, 616, 687, 727, 765) The trial court continued to instruct the jury throughout the trial to refrain from discussing the case with anyone and from reading, listening or watching any news accounts regarding the case. (N.T. 789, 879, 974, 1035, 1079, 1127, 1222, 1289, 1342, 1417)

The Pennsylvania Supreme Court's decision that there was no actual jury prejudice[26] and its refusal to presume prejudice not contrary to nor an unreasonable application of United States Supreme Court precedent. Breakiron is not entitled to federal habeas relief.

Claim 3 : Breakiron's Claim That He Was Precluded From Presenting a Defense and Testifying About His Intent at the Time of the Murder and That All Prior Counsel Were Ineffective For Failing to Raise This Issue is Procedurally Defaulted.

Breakiron argues that he was denied his Sixth and Fourteenth Amendment right to testify in his own defense and to present a defense when the trial court precluded him from testifying about his intent at the time of the murder. He contends that all prior counsel were ineffective for failing to raise this issue. Because Breakiron never presented this claim to the state courts — except in a clearly time-barred second PCRA petition — it is procedurally defaulted.[27] The Pennsylvania Supreme Court refused to address this claim because the second PCRA petition was procedurally time-barred.

---

[26] In fact, the jury in Breakiron's case was selected without Breakiron exercising all of his peremptory challenges. In a capital case in Pennsylvania the parties are afforded twenty peremptory challenges when selecting a jury. PA.R.CRIM.P. 634(A)(3). Breakiron only used 14 of his 20 peremptory challenges. (NT 75, 202, 253, 276, 327, 380, 387, 398, 414, 423, 479, 622, 698, 708)

[27] Breakiron never raised this issue during post-trial motions or on direct appeal. Contrary to Breakiron's argument, this claim was not exhausted when the state court conducted its mandatory statutory review on direct appeal. For a further discussion, see *Section A(I)(A)(2), supra*.

*Breakiron III*, 781 A.2d at 101.[28] Moreover, Breakiron has made no attempt to overcome this default by demonstrating cause for and prejudice from the default or that a miscarriage of justice would result by denying federal review. Thus, the claim is defaulted precluding federal habeas review.

In the alternative, this claim is without merit. The trial court's ruling precluding Breakiron from testifying as to what he intended to do when he went out the night of the murder was proper.

    a.    **The Merits**

The right to present a defense and testify on one's own behalf is a fundamental constitutional right based in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Rock v. Arkansas*, 483 U.S. 44, 50-53 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *Harris v. New York*, 401 U.S. 222, 230 (1971); *Washington v. Texas*, 388 U.S. 14, 17-19 (1967); *United States v. Leggett*, 162 F.3d 237, 245 (3d Cir. 1998); *United States v. Pennycooke*, 65 F.3d 9, 10 (3d Cir. 1995). However, this right is not absolute. *Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("defendant's right to present relevant evidence is not unlimited but rather is subject to reasonable restrictions"); *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996) (defendant's right to present a defense is not an absolute entitlement to introduce all crucial, relevant evidence).

Here, Breakiron was not precluded from presenting a defense and testifying on his own behalf. In fact, Breakiron's testimony encompasses 51 pages. (NT 1232-1283) Although not permitted to testify about what his intentions were when he went out that night, Breakiron provided detailed

---

[28]For a further discussion regarding the PCRA time limit and it serving as an independent and adequate state law ground precluding federal review, see *Section A(I)(B)(1)(a), supra*.

testimony of his actions and version of events on the night of the murder. He was permitted, as is required, to testify about his version of events and the facts and circumstances as he perceived them.

After Breakiron detailed to the jury his version of the events of the day leading up to the murder and to what had happened at Shenanigan's, counsel asked Breakiron if when he went out that night, Breakiron had any intentions of hurting anyone. The Commonwealth objected and the trial court sustained the objection. (NT at 1261) Counsel further asked:

Q. When you went into Shenanigans', what were your intentions?

A. Just to have a good time.

Q. What do you mean by a good time?

A. Have a few beers, talk with some people, watch a little t.v.

Q. What intentions, if any, did you have to take any money that night?

A. I had no intentions of taking no money.

MR. MORRISON: Your Honor, I object to that question too and ask that the answer be stricken and the jury directed to disregard it.

THE COURT: Objection sustained. The jury will disregard the question and answer.

MR. BOWER: Your Honor, may we approach the Bench?

SIDEBAR DISCUSSION HELD ON THE RECORD

MR. BOWER: Your Honor, I don't understand the ruling in regard to why I cannot ask the question about what his intentions were.

THE COURT: Well, we are interested in what he did.

MR. MORRISON: That's right.

THE COURT: And not what he may have intended to do.

MR. BOWER: Well, that also goes —

84

THE COURT: I have made my ruling and that's it. I'm not going to argue with you.

MR. BOWER: I'm just trying to understand it.

THE COURT: We are not interested in what he intended to do. It's what he did.

(NT at 1261-62)

The questions presented by defense counsel were irrelevant. Breakiron's intentions several hours before the murder occurred, when he went out for the evening, were irrelevant to the issue at trial. Whatever self-serving statements Breakiron might have made regarding what he intended to do hours before the crime occurred was overshadowed by what he actually did at Shenanigans.

Breakiron presented a defense of intoxication. The trial court placed no limitations on Breakiron's testimony as to how much alcohol he had consumed that day. Breakiron was also permitted to explain his recollection of how the killing took place and what occurred afterwards. Breakiron testified that he remembered the victim getting stabbed, pulling the knife out of the victim, putting the victim's body in the bed of his pick-up truck, and returning to Shenanigan's to pick up and take with him a few items including a couple big chunks of glass and two money bags. (NT at 1259-60) The victim had been stabbed twenty times to vital areas of her body and her neck had been slashed. She had defensive wounds on her hands and signs of blunt force trauma to her head. *Breakiron II*, 729 A.2d at 1090-91. The jury had before it for its consideration Breakiron's version of events and was able to make a determination of whether Breakiron had the intent to do harm to the victim and to commit the robbery at the time the crime was committed.

Breakiron was permitted to present a defense and testify on his own behalf. He did just that. The trial court did not improperly infringe upon Breakiron's constitutional rights. Breakiron is not entitled to federal relief.

b. Ineffective Assistance of Counsel

Breakiron also contends that trial counsel and appellate counsel were ineffective for failing to raise, preserve, and litigate this issue. Under the *Strickland* standard, Breakiron is not entitled to relief. Since the underlying claim, as discussed above, is without merit, counsel cannot be found ineffective for failing to raise and litigate the issue. *See Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000).

Breakiron is not entitled to federal habeas relief. This issue is procedurally defaulted and Breakiron has made no attempt to demonstrate cause for and prejudice from the default. Likewise, Breakiron has made no attempt to demonstrate a miscarriage of justice. In the alternative, the issue is without merit. This Court should deny the petition.

Claim 4: BREAKIRON'S CLAIMS THAT THE COMMONWEALTH FAILED TO DISCLOSE RELEVANT IMPEACHMENT EVIDENCE REGARDING A KEY WITNESS' PRIOR RECORD, THAT THE COMMONWEALTH FAILED TO CORRECT THAT WITNESS' TESTIMONY REGARDING HIS PRIOR RECORD, THAT THE COMMONWEALTH FAILED TO TURN OVER EXCULPATORY EVIDENCE REGARDING THAT WITNESS' STATEMENT TO POLICE, THAT THE TRIAL COURT IMPROPERLY PRECLUDED QUESTIONING OF THAT WITNESS REGARDING HIS BIAS AND MOTIVE FOR TESTIFYING, AND THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND PROPERLY IMPEACH THAT WITNESS ARE DEFAULTED.

Breakiron asserts that his constitutional rights were violated because the Commonwealth failed to disclose exculpatory evidence regarding and failed to correct the testimony of Commonwealth witness, Ellis Price, who testified about a jailhouse confession given by Breakiron admitting the murder.[29] Because Breakiron never presented these claims to the state courts -- except

---

[29]Breakiron filed an amendment to his habeas petition which supplemented the facts, by way of affidavits, in support of his allegations that the Commonwealth knew that Price was providing false testimony, that the Commonwealth failed to correct Price's false testimony, and that Price received

b. Ineffective Assistance of Counsel

Breakiron also contends that trial counsel and appellate counsel were ineffective for failing to raise, preserve, and litigate this issue. Under the *Strickland* standard, Breakiron is not entitled to relief. Since the underlying claim, as discussed above, is without merit, counsel cannot be found ineffective for failing to raise and litigate the issue. *See Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000).

Breakiron is not entitled to federal habeas relief. This issue is procedurally defaulted and Breakiron has made no attempt to demonstrate cause for and prejudice from the default. Likewise, Breakiron has made no attempt to demonstrate a miscarriage of justice. In the alternative, the issue is without merit. This Court should deny the petition.

Claim 4: BREAKIRON'S CLAIMS THAT THE COMMONWEALTH FAILED TO DISCLOSE RELEVANT IMPEACHMENT EVIDENCE REGARDING A KEY WITNESS' PRIOR RECORD, THAT THE COMMONWEALTH FAILED TO CORRECT THAT WITNESS' TESTIMONY REGARDING HIS PRIOR RECORD, THAT THE COMMONWEALTH FAILED TO TURN OVER EXCULPATORY EVIDENCE REGARDING THAT WITNESS' STATEMENT TO POLICE, THAT THE TRIAL COURT IMPROPERLY PRECLUDED QUESTIONING OF THAT WITNESS REGARDING HIS BIAS AND MOTIVE FOR TESTIFYING, AND THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND PROPERLY IMPEACH THAT WITNESS ARE DEFAULTED.

Breakiron asserts that his constitutional rights were violated because the Commonwealth failed to disclose exculpatory evidence regarding and failed to correct the testimony of Commonwealth witness, Ellis Price, who testified about a jailhouse confession given by Breakiron admitting the murder.[29] Because Breakiron never presented these claims to the state courts -- except

---

[29]Breakiron filed an amendment to his habeas petition which supplemented the facts, by way of affidavits, in support of his allegations that the Commonwealth knew that Price was providing false testimony, that the Commonwealth failed to correct Price's false testimony, and that Price received