**CLAIM 3:** **PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO TESTIFY IN HIS OWN BEHALF, TO PRESENT A DEFENSE AND TO DUE PROCESS WHERE THE TRIAL COURT PRECLUDED PETITIONER FROM TESTIFYING ABOUT HIS INTENT AT THE TIME OF THE KILLING; ALL PRIOR COUNSEL WERE INEFFECTIVE FOR FAILING TO RAISE AND LITIGATE THIS CLAIM.**

The Commonwealth asserts that this claim has been procedurally defaulted because it was first raised in the petition which was found to be time barred in Breakiron-3. For the reasons previously discussed in this *Reply* and in Petitioner's *Memorandum*, Respondents are wrong because: (1) this claim was exhausted by virtue of the Pennsylvania Supreme Court's mandatory review, and (2) the time bar rule appl[ied in Breakiron-3 was not adequate and independent as a matter of federal law and, therefore, does not preclude merits review.

During Petitioner's testimony in his own defense at trial, the trial court precluded Mr. Breakiron from testifying about his intent at the time of the crime. Despite the fact that Petitioner's intent was the critical issue before the jury, the trial court held that Petitioner would not be permitted to testify about his intent to the jury.

The Commonwealth agrees with Petitioner that a defendant's right to testify on his own

behalf is a "fundamental constitutional right."[52]  Similarly, the Commonwealth concedes that a defendant "is required [to be permitted] to testify about his version of events and the facts and circumstances as he perceived them."  *Answer* at 84.[53]  Nor does the Commonwealth contest the proposition that it is constitutional error for a trial court to exclude evidence relevant to one of the elements of an offense absent strong justification.[54]

---

[52]Compare *Answer* at 83 with *Memorandum* at 94-96.

[53]As long ago as Crawford v. United States, 212 U.S. 183 (1909) (Peckham, J.) the United States Supreme Court found error where the trial court prevented a defendant from testifying about his intent at trial:

> We are of opinion, also that the court erred in its refusal to allow defendant to testify in regard to his intention in taking the letters from the files.  His counsel asked him the question when he was on the stand, after he had admitted their taking, whether he took them with the intent to suppress or destroy them or with intent that they might be preserved and presented to the jury when his trial should come on.  Counsel offered to show the fact by the witness and let the witness say which it was.  This was objected to by counsel for the government and the objection sustained.
>
>     The witness was further asked whether, when he took the evidence, he had the intention to destroy it.  This upon, objection was ruled out...
>
> \*\*\*
>
> It was error to reject the evidence, for it was material and proper to go to the jury.  The court of appeals so held and said: "The intent of the defendant in obtaining possession of the letters was material, and, being material, the defendant should have been permitted to testify as to his intent and motive.

Id. at 202-03.

[54]The Commonwealth cites three cases for the proposition that the right to present a defense is not without certain reasonable limits.  The Petitioner does not disagree with that proposition, though the Commonwealth's citations to these cases is somewhat misleading.  In each of those cases, the limit was reasonable and the state had a clear policy justification in doing so.  In Taylor v. Illinois, 484 U.S. 400, 410-11, the Supreme Court upheld an Illinois court rule that required the defense to provide to the Commonwealth a list of witnesses that it planned to call before trial, on pain of exclusion of these witnesses.  In United States v. Scheffer, 523 U.S. 303 (1998) the Court, in a fractured opinion, held that the traditional evidentiary rule excluding

Where the Petitioner and the Commonwealth part ways is about what happened at trial. The Commonwealth apparently argues that the trial court precluded Mr. Breakiron's testimony about his intent early in the evening, but did nothing to preclude testimony about his intent at the time of the victim's death. *Answer* at 85 ("Breakiron's intentions several hours before the murder occurred, when he went out for the evening, were irrelevant to the issue at trial").

This is simply not what occurred at trial. The trial court did <u>not</u> sustain the objection on the grounds of temporal irrelevancy as the Commonwealth now suggests. The basis of the trial court's ruling could scarcely be more clear. He sustained the objection based on the fact that the defense wanted to elicit evidence about Mr. Breakiron's intent:

> Mr. Bower (Defense counsel): Your Honor, <u>I don't understand the ruling in regard to why I cannot ask the questions about what his intentions were.</u>

---

polygraph evidence did not violate due process. The portion of the opinion to which the Commonwealth cites did <u>not</u> command five votes and is thus not binding precedent. Moreover, the opinion noted that the "[evidentiary] rule [precluding polygraph evidence] did not preclude [the defendant] from introducing any factual evidence. Rather [the defendant] was barred merely from introducing expert opinion testimony to bolster his own credibility." <u>Id.</u> at 317. Here, of course, the defendant was not trying to bolster his own credibility but testify as to one of the elements of the offense. Finally, and most importantly, there exists no equivalent traditional state interest in limiting Mr. Breakiron's testimony.

The Commonwealth also cites to a non-binding portion of Montana v. Engelhoff 518 U.S. 37 (1996), which was another fractured opinion, with Justice Ginsburg's concurrence in the judgment being the fifth vote for the judgment. Justice Ginsburg based her opinion on the premise that the Montana legislature had redefined the elements of the offense and not that Montana had excluded otherwise relevant testimony as to alcohol consumption.

In all three cases, the trial court excluded evidence based on rules of published rules of evidence that had substantial policy justifications. Here, there is no rule of evidence in Pennsylvania precluding testimony about the defendant's intent. (Indeed, there is a long tradition of <u>allowing</u> such evidence. See e.g. Commonwealth v. Legg, 711 A.2d 430, 432 (1998) (defendant testified at trial that her only intent was to scare the deceased) . Nor does the Commonwealth offer any policy reasons comparable to those that support disallowing polygraph evidence or the rule requiring advance notice to the Commonwealth of witnesses.

> The Court: Well, we are interested in what he did.
>
> Mr. Morrison (Prosecutor): That's right.
>
> The Court: <u>And not what he may have intended to do</u>.
>
> Mr. Bower: Well, that also goes . . .
>
> The Court: I have made my ruling and that's it. I'm not going to argue with you.
>
> Mr. Bower: I'm just trying to understand it.
>
> The Court: We are not interested in what he intended to do. It's what he did.

NT at 1261-62.[55] The trial court twice sustained prosecutor's objections to general questions about Breakiron's intent. At sidebar, the trial court twice repeated that what testimony as to what Breakiron "intended to do" was not allowed. <u>Contra</u> the Commonwealth's interpretation of what occurred, there was no suggestion that the questions were objectionable because they called for answers that were temporally irrelevant. The Commonwealth did not object on that basis and the trial court did not make any mention of time in its ruling.

Moreover, the specific question to which the prosecutor objected was "What intentions, if any, did you have to take any money <u>that night</u>?" This question was not temporally limited to earlier that evening as the Commonwealth suggests, but inquired about his intentions throughout the course of the evening. For all these reasons, the Commonwealth's suggestion that Mr. Breakiron was not precluded from testifying about his intent is unsupportable.

---

[55]During a discussion concerning the court's charge, counsel reiterated that, "I started to ask questions about his intentions, but I was told that I could not ask those questions. So, therefore, I could not develop anything in regard to his intentions that night or what happened at the bar. I was precluded by this Court from doing so." NT 4/13/88 at 1299. Neither the prosecutor nor the Court disputed this account of the Court's ruling.

In its *Answer*, the Commonwealth also notes that Mr. Breakiron was permitted to testify about the alcohol he consumed and his other recollections of the evening. All of this is true, but irrelevant to the legally relevant question. "[A state] may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." Rock, 483 U.S. at 55.

Unlike most other murder trials, Mr. Breakiron never contested his presence at the scene or his involvement. His defense was that he lacked the specific intent to kill that differentiates first degree murder in Pennsylvania from third-degree murder. Consequently, the trial court's preclusion of his testimony on his lack of intent went to the core of his defense. "[The] opportunity [to be heard] would be an empty one if the State were permitted to exclude competent, reliable evidence ... when such evidence is central to the defendant's claim of innocence." Crane v. Kentucky, 476 U.S. 683 (1986) (unanimous opinion) (reversing state conviction where defendant was precluded from testifying about circumstances of his confession on grounds that voluntariness of his confession was already established). The fact that he was allowed to testify to other matters does not undo the constitutional error. And, as explained in the *Memorandum* at 97-100, this error cannot be considered harmless.