ineffectiveness claim *de novo*; rather, such claims can succeed only if the state court's decision was not simply wrong, but objectively unreasonable. *Berryman v. Morton*, 100 F.3d 1089, 1103 (3d Cir. 1996).

## *SECTION B*

Claim 1: THE PENNSYLVANIA SUPREME COURT'S DECISION THAT COUNSEL PROVIDED EFFECTIVE REPRESENTATION REGARDING THE INVESTIGATION AND PREPARATION OF MENTAL HEALTH INFORMATION FOR USE AS SUPPORT OF THE DEFENSE OF DIMINISHED CAPACITY DUE TO VOLUNTARY INTOXICATION AND FOR USE AS MITIGATING EVIDENCE AT THE PENALTY PHASE WAS NEITHER CONTRARY TO NOR AN UNREASONABLE APPLICATION OF *STRICKLAND V. WASHINGTON*.

In his first PCRA petition, Breakiron raised several issues regarding trial counsel's investigation and preparation of Breakiron's history of alcohol abuse and the mental health issues in his case as they related to the guilt and penalty phases. While some of the issues Breakiron is presenting here in his federal habeas were not fairly presented to the state courts, for those issues that were properly presented, the Pennsylvania Supreme Court's determination that counsel provided effective representation was neither contrary to nor an unreasonable application of *Strickland*. *Breakiron II*, *supra*.

a. **Alcohol History**

Breakiron alleges that counsel was ineffective for failing to adequately investigate and present the history of his alcohol abuse. To the extent that Breakiron is repackaging arguments he presented in his first PCRA petition by presenting new factual allegations and legal theories that have never been presented to the state court, the issue is procedurally barred. He did not fairly present these claims as he is now presenting them and it would be futile for him to return to state court. Therefore, while

the claim is technically exhausted, it is procedurally defaulted. Breakiron has made no attempt to overcome that default by demonstrating cause for and prejudice from the default or that a miscarriage of justice occurred. Therefore, federal review is prohibited.

The **only** claim Breakiron raised in the state courts regarding his history of alcohol abuse was presented in his first PCRA petition. The issue was *limited* to whether counsel provided ineffective assistance by not consulting and presenting an expert to testify about the effect of consuming a large quantity of alcohol would have had after a long period of abstinence.[14] *Brief for Appellant (1st PCRA)* at 28-29.[15] The Pennsylvania Supreme Court rejected this argument concluding that the claim lacked merit and that Breakiron was not prejudiced. *Breakiron II*, 729 A.2d at 1097.[16] The state court employed the appropriate United States Supreme Court precedent — *Strickland* — and its decision was a reasonable application of that precedent.[17] In rejecting this claim, the supreme court stated

---

[14]Breakiron had been released from prison a few weeks before the murder after being incarcerated for approximately 11½ months.

[15]Breakiron's argument developing this issue in the state court consisted of a mere one and one-half pages.

[16]None of the new facts and legal theories presented in his federal habeas regarding counsel's investigation and presentation of the defense of voluntary intoxication were submitted to the state court for its consideration and review of this issue. Therefore, this Court cannot rely upon them in determining whether the state court's findings were an unreasonable application of *Strickland*.

[17]The Pennsylvania Supreme Court did not apply a rule of law that contradicted *Strickland*. The Pennsylvania standard for judging ineffective assistance of counsel claims is the same as *Strickland*. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2001); *Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (Pa. 1987). This is the standard that the supreme court employed in evaluating Breakiron's claim. Therefore, its decision is not contrary to United States Supreme Court precedent.

> Trial counsel presented evidence at trial that Breakiron drank a large quantity of beer and was intoxicated on the night of the murder. Counsel argued that this intoxication was such that Breakiron could not form the specific intent to kill. The jury also heard testimony that Breakiron drove, drank, and could function, even though he had consumed excessive amounts of alcohol. After hearing this evidence, the jury rejected Breakiron's defense of diminished capacity and sentenced him to death. There is not a reasonable likelihood that the evidence that Breakiron had refrained from alcohol for nearly a year before the incident would have changed the jury's verdict in this matter, and the PCRA court appropriately denied relief.

*Breakiron II*, 729 A.2d at 1097-98. Breakiron presented absolutely no evidence to the state court as to what an expert would have testified about regarding the effects of excessive drinking after a long period of abstinence. Without knowing if such evidence would have been helpful, it is hard to conclude that there is a reasonable probability that the outcome of Breakiron's case would have been different but for counsel's failure to consult and present such an expert. Breakiron failed to meet his burden.

The Pennsylvania Supreme Court's decision on the merits of this claim that Breakiron failed to demonstrate that the underlying claim had arguable merit and that he suffered no prejudice from counsel's alleged unreasonable actions is neither contrary to nor an unreasonable application of *Strickland*. Breakiron is not entitled to federal relief on this claim.

### b.   Counsel's Trial Preparation

In his first PCRA petition, Breakiron alleged that counsel was ineffective for failing to interview and consult with him adequately. Breakiron claimed that he and counsel met only two or three times prior to trial. Again, to the extent that Breakiron is repackaging arguments he presented in his first PCRA petition by presenting new factual allegations and legal theories that have never been presented to the state court, the issue is procedurally barred. He did not fairly present these claims as he is now presenting them and it would be futile for him to return to state court. Therefore, while

the claim is technically exhausted, it is procedurally defaulted. Breakiron has made no attempt to overcome that default by demonstrating cause for and prejudice from the default or that a miscarriage of justice occurred. Therefore, Breakiron is not entitled to federal review.

For the issue that was fairly presented to and decided by the Pennsylvania Supreme Court, that decision denying relief was reasonable. Applying *Strickland*, the Pennsylvania Supreme Court rejected Breakiron's claim of ineffectiveness finding that the underlying claim had no arguable merit. *Breakiron II*, 729 A.2d at 1093. The court recognized that Breakiron claimed that he only met with counsel two or three times. However, the court stated "Attorney Bower testified at the PCRA hearing that he had numerous telephone calls with Breakiron and met with him on a number of occasions before trial. The PCRA court found counsel's statements credible and denied the claim." *Id.* There is evidence in the record to support this conclusion.[18]

The length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation. *Commonwealth v. Bundy*, 421 A.2d 1050, 1051 (Pa. 1980). Contrary to Breakiron's claims, Mr. Kristobak, Mr. Heneks, and Mr. Bower testified at the evidentiary hearing regarding numerous conversations they had with Breakiron in preparation of his case. (N.T. 7/17/97 AM at 64; N.T. 7/18/97 PM at 16, 20; N.T. 7/17/97 PM at 18) Further, Mr. Bower explained that he had several meetings with Breakiron. (N.T. 7/17/97 PM at 18) Mr. Bower indicated that he and Breakiron discussed numerous issues during these meetings: Breakiron's problems with alcohol and his history of violent episodes when he was drinking (N.T. 7/17/97 PM at 18, 26); the possible

---

[18]None of the new facts and legal theories presented in his federal habeas regarding counsel's failure to adequately consult with Breakiron were submitted to the state court for its consideration and review of this issue. Therefore, this Court cannot rely upon them in determining whether the state court's findings were an unreasonable application of *Strickland*.

aggravating and mitigating circumstances (N.T. 7/17/97 PM at 49; N.T. 7/18/97 AM at 29); the strategy of the defense during trial, during jury selection, and throughout all of the proceedings. (N.T. 7/18/97 AM at 6); the consequences of the mental evaluation (N.T. 7/17/97 PM at 31; N.T. 7/18/97 AM at 7-8); and the facts of the crime. (N.T. 7/18/97 AM at 13-14)

Moreover, Breakiron's argument in the state court focused solely on the amount of times that counsel met with Breakiron. There was absolutely no discussion or argument as to how the alleged inadequate interview and consultation prejudiced him. *See Brief for Appellant (1st PCRA)* at 30-31.[19] Breakiron failed to meet his burden.

The Pennsylvania Supreme Court's outcome that the claim lacked arguable merit is an outcome than can be reasonably justified under *Strickland*. Its decision was neither contrary to nor an unreasonable application of established United States Supreme Court precedent. Breakiron is not entitled to federal habeas relief.

b.   **Mental Health Issues**

In his first PCRA petition Breakiron contended that counsel was ineffective for failing to follow the Pennsylvania Mental Heath Procedures Act (MHPA), 50 P.S. § 7101 *et seq.*, and that counsel was ineffective for failing to properly present his psychiatric history to the jury as a mitigating factor. After applying *Strickland*, the Pennsylvania Supreme Court rejected both of these arguments. The state court's resolution of these claims was a reasonable application of *Strickland*.

As a preliminary matter, to the extent that Breakiron is repackaging arguments he presented in his first PCRA petition by presenting new factual allegations and legal theories that have never been

---

[19]Breakiron's entire argument developing this issue in the state court consisted of a mere one and one-half pages.

69

presented to the state court, the issues are procedurally barred. He did not fairly present these claims as he is now presenting them and it would be futile for him to return to state court. Therefore, while the claim is technically exhausted, it is procedurally defaulted. Breakiron has made no attempt to overcome that default by demonstrating cause for and prejudice from the default or that a miscarriage of justice occurred. Therefore, federal review based on those new facts and legal theories is prohibited.[20]

### 1.    MHPA claim

In his first PCRA petition, Breakiron claimed that counsel was ineffective for failing to properly consult and advise Breakiron of the provisions of MHPA and for failing to employ the provisions of MHPA during the preparation of trial. *Brief for Appellant (1st PCRA)* at 13-17. Although the Pennsylvania Supreme Court determined that trial counsel mishandled the competency evaluation in a number of respects and counsel was unable to articulate a reasonable basis for failing to comply with MHPA, the state court denied relief because Breakiron did not establish that these errors were prejudicial to the defendant at either the guilt or penalty phases. *Breakiron II*, 729 A.2d at 1099.[21]

---

[20] Breakiron has attached several affidavits that have never been presented to the state courts -- affidavits of Dr. Julie Kessel, Dr. Robert Fox, Holly Dada, Melanie Breakiron, and Mind Yank. Since these factual allegations were never "fairly presented" to the state courts, they cannot be reviewed under federal habeas. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (in order to exhaust a claim for federal habeas review, the petitioner must present the same factual and legal theories to the state courts); *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992) (same); *Livingston v. Johnson*, 107 F.3d 1297, 1306 (5th Cir. 1997) (improper for habeas petitioner to rely upon affidavit state court did not have an opportunity to review). For a further discussion of the "fair presentation" requirement, see *Section A(I)(A)(1), supra*.

[21] A claim of ineffective assistance of counsel will be denied if petitioner fails to meet any of the necessary requirements. *Strickland v. Washington, supra*.

This determination was neither contrary to nor an unreasonable application of *Strickland*. The state court opined:

> In reviewing the record in this matter, it appears that trial counsel did mishandle the competency evaluation in a number of respects. No counsel was present and following objection to Dr. Adamski's "Miranda" warnings, trial counsel did not request a private defense expert to be present at a second court ordered examination. Further, in reviewing the PCRA testimony of this matter, trial counsel was not able to articulate a reasonable basis for failing to comply with the MHPA. Thus, our determination hinges upon whether these errors were prejudicial to the defendant at either the guilt or sentencing phase of the trial. We hold that they were not.
>
> Although Breakiron presents a persuasive argument that trial counsel had a basic misunderstanding of the MHPA, he is unable to articulate how he was prejudiced. Breakiron postulates that had an evaluation been performed in accordance with Section 7402, counsel may have chosen a different trial strategy. He surmises that trial counsel's failure to follow the MHPA left the attorney without any psychiatric evidence to assist in Breakiron's defense or to present mitigating evidence at trial. We find that Breakiron has not met his burden of establishing that counsel's errors prejudiced him because he cannot establish that had an examination been done according to the MHPA, the defense strategy, or the outcome of either the guilty verdict or sentence of death, would have changed. Instead, the PCRA proceedings show that Breakiron was competent at the time of trial, and there was no evidence that trial counsel could have presented an insanity defense. Therefore, the *only* defense available to trial counsel was of diminished capacity, which was presented and rejected by the jury at trial. Thus, the alleged errors, had they been corrected, would not have led to a different result, and we cannot find that Breakiron was prejudiced in the guilt phase of the trial.
>
> Likewise, while trial counsel in this matter might have mishandled Breakiron's mental health examination by not attending and by not requesting a private expert following the objections to Dr. Adamski, the outcome of the sentencing was not likely to have changed. The fact remains that the evaluation was ordered to assess Breakiron's competency to stand trial, and there is not real dispute that Breakiron was competent. Indeed, at the PCRA hearing, both Dr. Adamski and Breakiron's private psychiatrist testified, and neither opined that Breakiron was incompetent at the time of trial. We fail to see how trial counsel's alleged errors, where Breakiron was clearly competent to stand trial, had any bearing on the penalty phase of the trial.

*Breakiron II*, 729 A.2d at 1099-1100 (footnotes omitted). The state court did not, as Breakiron contends, engage in an incorrect prejudice analysis.

In the state court, Breakiron's only contention that counsel's improper actions prejudiced him was a bald assertion that "counsel's advice severely prejudiced him during trial." None of the new facts and legal theories Breakiron presents in his federal habeas to demonstrate that there was a reasonable probability that but for counsel's actions the outcome of the guilt or penalty phase would have been different were submitted to the state court for its consideration and review of this issue. Therefore, since they were not "fairly presented" for review by the state court, this Court cannot rely upon them in determining whether the state court's findings were an unreasonable application of *Strickland*. Breakiron made absolutely no attempt to demonstrate in the state court that but for counsel's unreasonable actions the result of the guilt or penalty phase would have been different. As the PCRA trial court stated:

> We fail to see the prejudice. Defendant was permitted to be examined for evaluation by a second doctor. It was defendant's decision not to cooperate, even after trial counsel properly informed defendant that statements he made to the doctor would become admissible only if an insanity defense were pursued.
>
> Furthermore, Dr. Christine A. Martone, the psychiatrist appointed for PCRA purposes, does not disagree with Dr. Adamski's ultimate conclusions. Although Dr. Martone believes Dr. Adamski had limited data from which he formed his opinions, she nonetheless concurs that defendant's competency was never compromised.

*1st PCRA Ct. Opinion of 1/28/98* at 5-6.

The state courts resolution of the issue is an outcome that can be reasonably justified under *Strickland*. It was neither contrary to nor an unreasonable application of established United States Supreme Court precedent.

### 2. Psychiatric History as a Mitigating Factor

In his first PCRA petition Breakiron argued that trial counsel was ineffective for failing to interview him, his family members and his friends, to obtain mental health records, and to request psychological testing. According to Breakiron, counsel was ineffective for failing to present at the penalty phase evidence of his past psychiatric problems during the penalty phase of his trial, including his history of blackouts, drug abuse, and psychiatric history. The Pennsylvania Supreme Court rejected this argument and determined that counsel had a reasonable basis for omitting testimony regarding his psychiatric history. *Breakiron II*, 729 A.2d at 1101. This determination was not contrary to nor an unreasonable application of *Strickland*.

In rejecting Breakiron's claim of ineffectiveness, the state supreme court stated as follows:

> We reject Breakiron's claim because it appears that trial counsel had a reasonable trial tactic in failing to admit evidence of Breakiron's psychiatric history into the trial.
>
> At the sentencing hearing, trial counsel presented mitigating evidence concerning Breakiron's alcohol abuse, via the testimony of Breakiron's mother, and through Reverend Collins. Trial counsel testified that his decision to present only these witnesses and to omit any of Breakiron's past psychiatric admissions was a reasonable trial tactic because such history would show his past violence and aggressiveness, which would have an adverse impact on the jury. The PCRA court, citing *Commonwealth v. Lark*, 548 Pa. 441, 698 A.2d 43, 51 (1997), found that counsel's tactics were reasonable given the potential negative impact on the jury. We should scrupulously follow the presumption that attorneys act in the interests of their clients, and insist that defendants meet their burden of proving that their attorneys had no reasonable basis for their action. Here, Breakiron has not done this and we affirm the order of the PCRA court denying relief.

*Breakiron II*, 729 A.2d at 1100-01.[22]

---

[22]Inexplicably, Breakiron offers no assessment of how the state court's holding with respect to this issue is contrary to or an unreasonable application of *Strickland*. Instead, he cites to the court's assessment of the MHPA claim. The court's resolution of the MHPA claim did not resolve the claim which Breakiron is presenting here.

Trial counsel did not fail to interview Breakiron or Breakiron's family and friends in anticipation of presenting mitigating evidence at the penalty phase. To the contrary, Mr. Bower met with and interviewed Breakiron on numerous occasions regarding Breakiron's drinking problems, the strategy of the defense, possible mitigating and aggravating factors, as well as other topics. (N.T. 7/17/97 PM at 11, 18). Mr. Bower also interviewed Gloria Breakiron, Breakiron's mother. She told him about Breakiron's past alcohol problems and treatment that he had received for those problems. (N.T. 7/17/97 PM at 21-22). In addition, Mr. Bower spoke with Reverend Collins who also related about Breakiron's past problems with alcohol and the treatment he received. (N.T. 7/17/97 PM at 21-22). Although Breakiron, his mother, and Reverend Collins described Breakiron's past problems with alcohol, none of them described any other mental health problems or anything else for which he received treatment. (N.T. 7/18/97 AM at 25). Clearly, Mr. Bower did not fail to interview these people. He gathered information from them which helped to prepare the defense strategy of the case in both the guilt and penalty phases.

Mr. Bower and Breakiron discussed the possible mitigation that could be used during the penalty phase:

> What type of life he had lived; what type of family life that he had; his drinking problem; his work history, his age.
>
> Q. Did you discuss the possible use of someone like Dr. Adamsky (sic) to provide psychiatric evidence about his problem?
>
> A. I think we discussed the types of places he had been in, and bringing in certain people from here. But then we decided that based on the reasons that he had been there, concerning his violence, the aggressiveness on occasion, that would not be used because of, as I testified before, the adverse impact that it would possibly have on a jury.

(N.T. 7/18/97 AM at 29). Based on these discussions, they decided to present three witnesses at the penalty phase: Breakiron, Gloria Breakiron, and Reverend Collins. (N.T. 7/17/97 PM at 62, 67). Mr. Bower and Breakiron

> talked about what would happen if [they] went to the penalty phase, and who to call, and he indicated that he wanted to call Darwin Collins, his mother, and I can't recall if I talked to anyone else. I am not certain if I did or not. I don't recall if he told me that there were other people to talk to, but he wanted Darwin and his mother. I think that was after my talking to them that he and I talked, and that is what basically we both decided.

(N.T. 7/17/97 PM at 67-68). Mr. Bower was aware of Breakiron's past alcohol problems and the treatment he received for those problems and he attempted to use this information as mitigating evidence.

Breakiron, Gloria Breakiron, and Reverend Collins testified at the penalty phase regarding Breakiron's problems with alcohol and the treatment he received. (N.T. 7/17/97 PM at 63; N.T. 7/18/97 AM at 24). Reverend Collins testified how he had contacted the Fayette County Drug and Alcohol Commission for Breakiron, as well as how he entered Breakiron in the Gateway Rehabilitation Center. (N.T. 7/18/97 AM at 18).

Mr. Bower could not recall at the evidentiary hearing whether he had Breakiron sign any releases for medical treatment records. Nevertheless, Mr. Bower was aware of Breakiron's prior contact with AA and Mayview, as well as Breakiron's treatment by the Fayette County Drug and Alcohol Commission, the Gateway Rehabilitation Center, and a rehabilitation center in Youngstown. (N.T. 7/18/97 AM at 17-18, 27). Evidence was presented that Breakiron had received treatment for his alcohol problems. Dr. Martone, Breakiron's psychiatric expert, testified that mitigation evidence can be related to the jury by means other than by a forensic psychiatrist. (N.T. 9/17/97 at 74).

The PCRA trial court concluded that counsel's actions were reasonable. It stated as follows:

> Contrary to defendant's assertions, trial counsel consulted at length with defendant, and other potential witnesses in preparation for the penalty phase. After long discussions with defendant, Gloria Breakiron, his mother and with Reverend Darwin Collins, trial counsel was well aware of defendant's prior history of ingesting illicit drugs and alcohol, and also of his history of mental health problems. As mitigating evidence against the death penalty, defendant, his mother, and Reverend Collins testified as to the defendant's drug and alcohol problems, and his prior mental problems.
>
> ***
>
> The record of the trial is clear that the jury was presented with testimony from three (3) lay witnesses who outlined defendant's life, including his mental health problems, drug and alcohol use, family history problems, and the amount of alcohol consumed the day of the incident. According to defendant's own expert, such evidence of mitigation does not necessarily need to be presented by an expert. Counsel may choose other means through which to present the evidence. This is precisely what trial counsel did. Defendant, his mother, and Reverend Collins did so testify.
>
> Furthermore, trial counsel stated at the PCRA hearing that he had discussed with defendant the presentation of mitigating evidence. The decision was made jointly between counsel and defendant not to emphasize defendant's prior mental health history because so much of that history concerned defendant's alcohol induced violent and aggressive behavior.[23] In counsel's opinion, an over emphasis of such behavior could have an adverse impact on the jury. We believe counsel's actions were reasonable and, therefore, find defendant has failed to meet his burden of proving counsel's ineffectiveness in this regard.

*Opinion of 1/27/98* at 7-8.

The Pennsylvania Supreme Court's determination that trial counsel had a reasonable basis for not presenting information about Breakiron's past psychiatric admissions is an outcome that can be

---

[23] At the PCRA hearing, trial counsel testified that he and Breakiron had "discussed how is drinking problems had caused an incident with his mother and sister, and the violent nature of that. We didn't want to bring out a lot of the stuff that was related to his drinking problems because it was violent oriented." (N.T. 7/18/97 AM at 26) While Breakiron was drinking, he assaulted his mother and sister. As a result of this assault, Breakiron was charged with terroristic threats, reckless endangerment, and felonious restraints. (N.T. 7/18/97 PM at 44)

reasonably justified under *Strickland*. The state court's decision was neither contrary to nor an unreasonable application of *Strickland*. Breakiron is not entitled to federal habeas relief.

**Claim 2:** THE PENNSYLVANIA SUPREME COURT'S DECISION THAT THERE WAS AN ADEQUATE COOLING OFF PERIOD TO ENABLE AN IMPARTIAL JURY TO BE EMPANELED WAS REASONABLE.

Breakiron contends that the pre-trial publicity was so sustained and pervasive that it created inherent prejudice demanding a change of venue. On direct appeal, the Pennsylvania Supreme Court rejected this claim, and that decision was reasonable. *Breakiron I*, 571 A.2d at 1037-38.

The United States Supreme Court has clearly established that the due process clause of the Fourteenth Amendment safeguards a defendant's right to be tried by a "panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see Sheppard v. Maxwell*, 384 U.S. 333, 355-57 (1966); *Patton v. Yount*, 467 U.S. 1025 (1984); *Murphy v. Florida*, 421 U.S. 794, 799 (1975). To establish juror partiality, the defendant must demonstrate that the publicity either actually prejudiced an individual juror, *Murphy v. Florida*, 421 U.S. at 800-03, or so pervaded the proceeding that it a raised a presumption of inherent prejudice. *Sheppard v. Maxwell*, 384 U.S. at 355-57. "'Pretrial publicity exposure will not automatically taint a juror.'" *Martin v. Warden*, 653 F.2d 799, 804 (3d Cir. 1981) (quoting *United States v. Provenzano*, 620 F.2d 985, 995 (3d Cir. 1980)).

In determining whether actual prejudice exists, the court should examine the totality of the circumstances, including the voir dire of the jury. *Murphy v. Florida*, 421 U.S. at 799-800. It is well established that "[q]ualified jurors need not . . . be totally ignorant of the facts and issues involved." *Id.*; *see also Irvin v. Dowd*, 366 U.S. at 722 ("[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved"). The court must determine whether jurors can lay aside their impressions and opinions, if they have any, and render a verdict based solely on the evidence