**CLAIM 1:** **PETITIONER'S CONSTITUTIONAL RIGHTS WERE VIOLATED BECAUSE COUNSEL WAS INEFFECTIVE AT THE GUILT AND PENALTY PHASES FOR FAILING TO SECURE AN ADEQUATE MENTAL HEALTH EVALUATION AND FOR FAILING TO DISCOVER AND PRESENT THE EVIDENCE OF MR. BREAKIRON'S IMPAIRMENTS TO THE JURY IN SUPPORT OF HIS INTOXICATION/DIMINISHED CAPACITY DEFENSE IN THE GUILT PHASE AND IN THE PENALTY PHASE.**

As explained in the *Memorandum*, the jury could and should have learned that Mark Breakiron has long suffered from serious mental problems which include Alcohol Dependence, Drug Dependence, Intermittent Explosive Disorder. His alcohol dependence and abuse dates back to his childhood trauma and includes a history of blackouts. These impairments were highly relevant: (1) in the guilt phase to support the intoxication/diminished capacity defense that was offered at trial and; (2) in the penalty phase to prove mitigating circumstances and to rebut the aggravating circumstance of torture. The Pennsylvania Supreme Court found that trial counsel was ineffective under the relevant constitutional standards for failing to have Mr. Breakiron properly evaluated. However, that Court found that Mr. Breakiron failed to show prejudice from counsel's failures. In so deciding, the Pennsylvania Supreme Court applied the wrong legal standard under Strickland.

In its *Answer*, the Commonwealth argues that: (1) the claim is not exhausted; (2) the Pennsylvania Supreme Court correctly applied the Strickland standard (3) counsel was effective. None of these contentions are correct.

**A.    The Claim is Exhausted.**

The Commonwealth half-heartedly argues that counsel failed to exhaust this claim because the claim is "repackaged." Commonwealth's *Answer* at 65. The Commonwealth alleges

generally that he is presenting "new factual allegations and legal theories." This is incorrect. Petitioner presented the legal claim and the factual allegations to the state courts. The only new material that Breakiron has presented are affidavits that do not "fundamentally change" the nature of the claim. Vasquez v. Hillery 474 U.S. 254, 622 (1986).

The Commonwealth and the Petitioner agree that in order to exhaust a claim, a claim must be "fairly presented" in state court. Picard v. Connor, 404 U.S. 270, 275 (1975). This means that the substance of the claim raised in the habeas petition must be presented or reached in the state court. This does not mean that the wording or organization of the claim raised in federal court must be identical with the way it is raised in state court.[39]

As explained in the leading treatise on Federal Habeas Corpus:

> The exhaustion doctrine does not require that a federal habeas corpus petitioner frame a claim in precisely the same manner in which it was set forth in the state court pleadings... One goal of the exhaustion requirement and the appellate chain of proceedings the requirement forces is to permit state adjudicative processes to develop and clarify federal claims. Those processes may transform the claim substantially, therefore, depending, for example, on (1) how the facts unfolded at a state court hearing, (2) how the parties portrayed those facts and structured their legal arguments in post-pleading briefs in the state courts, and (3) how the state

---

[39] Picard v. Connor, 404 U.S. 270, 277 (1971) ("Obviously there are instances in which 'the ultimate question for disposition' ... will be the same despite variations in legal theory or factual allegations urged in its support"; Carter v. Bell, 218 F.3d 581, 606-07 (6th Cir. 2000) ("We do not require word-for-word replication of the state claim in the habeas corpus petition in order to address the merits therein"); Odem v. Hopkins, 192 F.3d 772, 775-76 (8th Cir. 1999)("[a]n exact duplicate of Odem's state court argument is not required for exhaustion"); Chacon v. Wood, 36 F.3d 1459, 1468-69 (9th Cir. 1994) (same); Schneider v. Delo, 85 F.3d 335, 339 (8th Cir. 1996) ("The requirement that federal habeas claims must have been presented in state court is not meant to trap a petitioner who has poor drafting skills. The stakes in habeas cases are too high for a game of legal 'gotcha.'") Williams. v. Holbrook, 691 F.2d 3, 6 (1st Cir. 1982) (petitioner "not precluded from some reformulation of the claims ...made in the state courts, since exhaustion requires only that the substance of a federal habeas corpus claim must first be presented to the state courts") (quoting Picard v. Connor supra at 278) (emphasis in Williams); Scarpa v. Dubois, 38 F.3d 1, 6-7 (1st Cir. 1994) (same).

>courts reported and analyzed the facts and law in their decision. The claim(s) pleaded in the federal courts accordingly should reflect the facts and law as they came to be clarified and understood during the course of the state proceedings and not necessarily as the parties initially presented the facts and law in their state court pleadings.

Federal Habeas Corpus Practice & Procedure, Randy Hertz & James S. Liebman (4th ed.) § 23.3c at 983-84.

In this case Petitioner's claim is that counsel was ineffective for failing to develop mental health evidence to support defenses at the guilt phase and mitigating evidence in the penalty phase. The substance of this claim was presented to the Pennsylvania Supreme Court in Breakiron-2.[40]   To the extent the Commonwealth is criticizing Mr. Breakiron for reorganizing the claims as plead in the state court, current counsel for Mr. Breakiron is simply following the Pennsylvania Supreme Court's lead in reorganizing his mental health related claims of ineffectiveness into one section.[41]

Nor is Mr. Breakiron's claim factually unexhausted   The Commonwealth concedes (as it

---

[40]Appellant's Brief at 13 ("Defendant's Attorneys were ineffective for failing to properly ... employ [the mental health procedures act] in preparation for the defendant's trial;"); Id. at 14 ("Considering that [defendant maintained that he blacked out] a complete psychiatric evaluation of Defendant was critical to the proper preparation of his defense."); Id. at 17( "Had Defendant been given a complete evaluation at the time of the incident in question, he may well have provided information which would have convinced counsel to pursue a different strategy during trial or he may have provided more complete information for use during the penalty phase of his trial.") Id. at 22 ("Counsel failed to request any further evaluation in order to put before the jury the panoply of mental health issues attendant to Defendant at the time of the offense. Counsel clearly had a substantial amount of information regarding the Defendant's mental status which should properly have been pursued.").

[41]Breakiron-2 at 1098 ("8. Mental Health Issues. The bulk of Breakiron's claim that counsel was ineffective focus on counsel's handling of Breakiron's mental health issues."); Id at 1099 ("These errors, Breakiron asserts, prejudiced him because the effect was to deprive him of the opportunity to have a private psychiatrist testify as to his mental health and psychiatric history during both the guilt and sentencing phase of the trial.")

33

must) that Petitioner is permitted some measure of evidentiary development between a claim as it is presented in state court and how it is presented in federal court. *Answer* at 33 (citing Vasquez v. Hillery, 474 U.S. 254 (1986)).  Vasquez explains that where "supplemental evidence presented by [habeas petitioner] did not fundamentally alter the legal claim already considered by the state courts," exhaustion is satisfied. Id. at 622.   Accord Stevens v. Delaware Corrections Center, No. 01-3315, 2002 WL 1426533 (3d Cir. July 2, 2002) (submission of additional affidavits in support of claim does not render claim unexhausted where substance of claims were presented to state court).

Petitioner's supplemental affidavits satisfy the Vasquez standard of not "fundamentally alter[ing] the legal claim already considered by the state courts." Vasquez at 622.   Petitioner now offers the additional affidavits of Drs. Julie Kessel and Robert Fox in support of this claim. At the PCRA hearing, Dr. Martone testified at some length as to the mental impairments that Mr. Breakiron suffers from.  The affidavits of Drs. Kessel and Fox are consistent with Dr. Martone's diagnoses and testimony and merely explain the significance of Dr. Martone's diagnoses.[42] Accordingly they do not "fundamentally alter the legal claim."  Id.

Similarly, Petitioner has submitted the affidavits of Holly Duda, Melanie Breakiron, Mindy Yunk, Bruce Breakiron, and Gloria Breakiron.   These are accounts of Mr. Breakiron's family that provide additional background and help explain the genesis of the mental health

---

[42] Compare NT PCRA 9/17/97 at 33 (testimony of Dr. Martone that Breakiron suffers from Alcohol and Multiple Drug Abuse and Dependence and Intoxication and Intermittent Explosive Disorder) with Affidavit of Dr. Julie Kessel, Appendix Tab 1 (explanation of conclusion that Mr. Breakiron suffers from inter alia, Alcohol Dependence, Intermittent Explosive Disorder) and Affidavit of Dr. Robert Fox, Appendix Tab 2 (explanation of diagnoses that Mr. Breakiron suffers from Alcohol Dependence and Intermittent Explosive Disorder).

problems from which Mr. Breakiron suffers. Their inclusion does not "fundamentally alter the legal claim..." Nevertheless, even if all of the additional affidavits are ignored, Petitioner is still entitled to habeas relief on this claim based upon the testimony and evidence presented to the state courts.

**B.     The Pennsylvania Supreme Court Misapplied <u>Strickland</u>.**

Petitioner argued (here, and in state court) that counsel was prejudiced in the guilt and penalty phase by trial counsel's failure to procure an appropriate mental health examination.[43] As the Commonwealth repeatedly notes, the Pennsylvania Supreme Court generally applies federal law (<u>Strickland v. Washington</u>) in adjudicating claims of ineffective assistance of counsel. *Answer* at 66, 68, 69 (state court employed <u>Strickland</u> in adjudicating Breakiron's claims).

Indeed, the Pennsylvania Supreme Court properly held that counsel was ineffective under <u>Strickland</u> for failing to utilize state law in order to have Mr. Breakiron properly evaluated.[44] However, the Pennsylvania Supreme Court then misapplied the prejudice prong of <u>Strickland</u> and rejected Mr. Breakiron's claim on the grounds that petitioner failed to show that the outcome of the guilt or penalty phase "<u>would have changed</u>," <u>Breakiron-2</u> at 1099. The correct standard

---

[43] *Memorandum* at 31; Appellant's Brief at 16-17 ("Had defendant been given a complete evaluation at the time of the incident in question, he may well have provided information which would have convinced counsel to pursue a different strategy during trial or he may have provided more complete information for use during the penalty phase of his trial. By failing to employ the appropriate statutory procedures under the [MHPA], however, Attorney Bower was left without <u>any</u> psychiatric evidence whatsoever to assist in his defense of Breakiron. As Dr. Martone testified, the actions of Adamski in conducting his interview precluded the extraction of valuable information relevant to Defendant's state of mind during the time of the offense.")

[44] "Trial counsel was not able to articulate a reasonable basis for failing to comply with the MHPA. Thus our determination hinges upon whether these errors were prejudicial to the defendant at either the guilt or sentencing phase of the trial."

under Strickland is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland at 694. The Pennsylvania Supreme Court's misapplication of Strickland is "contrary to established federal law." Williams v. Taylor, 529 U.S. at 405 (noting that improper application of Strickland is paradigmatic example of "contrary to law". See *Memorandum* at 64-67.

The Commonwealth improbably asserts that the Pennsylvania Supreme Court "did not... engage in an incorrect prejudice analysis." *Answer* at 71. However, the Commonwealth makes no effort to distinguish Williams or to square the language of the Pennsylvania Supreme Court's analysis with Strickland. Instead, the Commonwealth repeats its exhaustion argument.[45]

The Commonwealth's only defense of the Pennsylvania Supreme Court's reasoning is apparently that since the Pennsylvania Supreme Court applied Strickland correctly in other cases, it sub silentio applied it correctly here:

> The Pennsylvania Supreme Court did not apply a rule of law that contradicted Strickland. The Pennsylvania standard for judging ineffective assistance of counsel claims is the same as Strickland. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2001; Commonwealth v. Pierce, 527 A.2d 973, 976-77 ( Pa. 1987). This is the standard that the supreme court employed in evaluating Breakiron's claim. Therefore, its decision is not contrary to the United States Supreme Court

---

[45] The Commonwealth argues that "Breakiron's only contention that counsel's improper actions prejudiced him was a bald assertion that 'counsel's advice severely prejudiced him during trial.'" *Answer* at 72. This is simply false. Indeed the Pennsylvania Supreme Court explained the prejudice argument counsel presented as follows: "These errors, Breakiron asserts, prejudiced him because the effect was to deprive him of the opportunity to have a private psychiatrist testify as to his mental health and psychiatric history during both the guilt and sentencing phase of the trial...[Breakiron] surmises that trial counsel's failure to follow the MHPA left the attorney without any psychiatric evidence to assist in Breakiron's [diminished capacity] defense or to present mitigating evidence at trial." Breakiron-2 at 1099. Moreover, Appellant's Brief specifically referenced Dr. Martone's testimony on Mr. Breakiron's mental state at the time of the incident. Appellant's Brief at 17. Mr. Breakiron fairly presented this claim to the state court, by the state court's own reckoning.

36

precedent.

*Answer* at 66 n.17.   Under the Commonwealth's argument, applying Strickland correctly in someone else's case is good enough to create an unrebuttable presumption that the court applies it correctly ad infinitem.  This is absurd on its face.  It is also inconsistent with Williams, which makes it clear that the reviewing federal habeas court must look at the particular state court decision that is being challenged:

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a reasonable probability that ... the result of the proceeding would have been different."

Williams at 694.  Indeed in the very case that the Commonwealth cites to show that the Pennsylvania Supreme Court applies Strickland, Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2001), the court notes, "Our determination of whether the state appellate courts erred in denying Werts' ineffective assistance of counsel claim requires us to review the state courts' application of Supreme Court precedent to a particular set of facts."

Regardless of whatever the Pennsylvania Supreme Court has said in other cases, in this case, the Court applied the wrong legal standard in assessing the prejudice that accrued from counsel's failure to have Mr. Breakiron properly evaluated. The Court of Appeals conclusion in Werts that the Pennsylvania Supreme Court generally evaluates ineffectiveness claims under Strickland does not change the fact that the Court misapplied the Strickland test here.  The Commonwealth's argument that because the Pennsylvania Supreme Court applied the proper standard in other cases, it applied the proper standard in this case flies in the face of common

37

sense and precedent.

**C.   Counsel was Ineffective.**

In the *Memorandum*, Petitioner developed numerous substantive arguments as to why counsel was ineffective. In its *Answer*, the Commonwealth largely ignores Petitioner's arguments. For example, the Commonwealth makes no real effort to rebut Breakiron's contentions that:

- "Counsel has an obligation to conduct a thorough investigation of defendant's background" in capital cases.[46]

- trial counsel's misunderstanding of his client's entitlement to a proper mental health was unreasonable;[47]

- trial counsel's failure to obtain records was unreasonable;[48]

- trial counsel's reliance on Dr. Adamski's adversarial competency determination for the purposes of mitigation and diminished capacity was unreasonable;[49]

- trial counsel's failure to investigate Mr. Breakiron's background (e.g. his ignorance that Mr. Breakiron suffered a history of blackouts) was unreasonable;[50]

- trial counsel's fear of the introduction of Mr. Breakiron's prior bad acts was unreasonable when they would have been inadmissible;[51]

---

[46]*Memorandum* at 33-35 (quoting Williams v. Taylor, 529 U.S. , 396)

[47]*Memorandum* at 42-55; accord Breakiron-2 at 1099.

[48]*Memorandum* at 49.

[49]*Memorandum* at 45-49.

[50]*Memorandum* at 49-57.

[51]*Memorandum* at 54-57; accord Carter v. Bell 218 F.3d 581 (6th Cir. 2000) (counsel unreasonable where "strategy" based on fear of prior bad acts by defendant that were inadmissible under state law).

- the mitigating evidence presented at trial in the guilt and penalty phase was a feeble shadow of the available evidence of Mark Breakiron's psychiatric illnesses.

Indeed, the Commonwealth simply does not (and presumably cannot) dispute the bulk of Petitioner's argument.

Instead of trying to refute Petitioner's arguments, the Commonwealth repeats its account of the PCRA hearing. While not grossly inaccurate, the Commonwealth's account is either incomplete or of limited relevance. For example, the Commonwealth correctly notes that trial counsel testified that he met with Breakiron "numerous" times. *Answer* at 74. This is true, as far as it goes. But counsel also admitted by "numerous" he meant "three." NT 7/17/97 P.M. at 18. Nor is the number of times that counsel meets with a client dispositive of the claim. What is important is the fact that counsel remained ignorant of critical facts of Mr. Breakiron's background, e.g. his history of blackouts, despite the fact that it was noted in the competency report prepared by Dr. Adamski. The Commonwealth cannot and does not even try to justify trial counsel's performance in this regard.

Similarly, the Commonwealth notes that Gloria Breakiron and Mark Breakiron testified in the penalty phase regarding his problems with alcohol. *Answer* at 75. This is technically true. But what the Commonwealth does not disclose is that the total extent of Gloria Breakiron's testimony about Mark Breakiron's mental health problems is as follows:

> Q: When Mark was growing up, what kinds of problems did he have, if any, with regard to alcohol?
> A. He had a great deal of problems with alcohol.
>
> Q: Did he drink a lot?
> A: Yes.

> Q: What kind of problems did he have in regard to drugs, if any when he was growing up?
> A: He was a user of drugs.
>
> Q: Now in March – on March 23, 1987, could you characterize Mark as an alcoholic?
> A: Yes. He was an alcoholic.
>
> Q: And did – he would drink a lot?
> A: Yes.

NT at 1410. That was it. Similarly, as the Commonwealth notes, it is technically true that Mark testified as to his alcohol problems. *Answer* at 75. But, obviously unprepared by counsel for his testimony, he testified to little more than the fact that: "I like to drink a lot." NT at 1413.

Of course, whether Mark or Gloria Breakiron or Rev. Collins briefly discussed Mr. Breakiron's alcohol problems during the penalty phase is not dispositive of the legally relevant question. The relevant question, as explained in the *Memorandum*, is whether or not counsel was ineffective at both guilt and penalty phase for failing to develop the much more powerful of Mr. Breakiron's impairments that was readily available. The Commonwealth's *Answer* essentially ignores this question. It offers no legal authority or argument to support its assertion that counsel was effective.

**D.   Conclusion**

In the *Memorandum*, Petitioner laid out the legal standards that govern this claim, explained why counsel's misunderstanding of the relevant law and failure to develop evidence of Mr. Breakiron's impairments prejudiced Mr. Breakiron in both the guilt and penalty phase and how the Pennsylvania Supreme Court misapplied <u>Strickland</u>. In its *Answer*, the Commonwealth scarcely contests the substantive allegations of trial counsel's ineffectiveness, citing no case law

and providing essentially no argument as to why the Pennsylvania Supreme Court's misapplication of <u>Strickland's</u> prejudice standard was not "contrary to law."