**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARK BREAKIRON, : | |
| Petitioner : | |
| : | Civil Action No. 00-300 |
| v. : | |
| : | Judge William L. Standish |
| MARTIN HORN, et al., : | |
| Respondents : | THIS IS A CAPITAL CASE |

**RESPONSE TO
MOTION TO AMEND PETITIONER'S
REQUEST FOR PRODUCTION OF DOCUMENTS**

*Introduction*

This matter is before the Court on Petitioner's Motion to amend petitioner's request for production of documents. As set forth below, this motion should be denied.

*Factual Background*

During the early morning hours of March 23-24, 1987, the petitioner Mark Breakiron murdered Saundra Martin, an employee at Shenanigan's Lounge, by inflicting multiple stab wounds and beating her with a blunt instrument. He removed Martin's body along with her purse and cash from the bar. After carrying Martin's body outside and placing it in the bed of his pickup truck, he drove to his grandparents' vacant house, where he took the body inside. Shortly thereafter, he attempted to hide the body in a nearby woods.

On March 24, 1987, state police were notified by the owners of Shenanigan's that Martin was missing. An investigation revealed that the lounge was covered with bloodstains and that money bags containing business receipts were missing. Further investigation disclosed that Breakiron was seen alone in the bar with Martin late the previous evening after other customers left. Later that day, when

1

police interviewed Breakiron, he voluntarily relinquished samples of what appeared to be blood from his truck and his clothing, although he did not confess to the murder. The blood samples obtained from Breakiron's truck and clothing matched the blood type of the victim, and Breakiron was arrested.

On March 25, 1987, state police discovered Martin's body in a woods not far from the vacant house where Breakiron had taken her body prior to disposing of it. At the time the body was discovered, it was nude except for a sock on her foot. The pathology reports indicated that Martin had been stabbed twenty times and her neck was slashed. She had defensive wounds on her hands and signs of blunt force trauma to her head. During the trial, the Commonwealth called Ellis Price, who was incarcerated with Breakiron prior to the trial. Price testified that Breakiron confessed to him that he killed Martin.

At trial, Breakiron's sole defense to the crime was "diminished capacity." Breakiron testified that because of his alcohol intoxication on the evening of the murder, he did not remember the incident, but that he recalled portions, "like a TV screen inside [his] head and [he] saw someone laying there getting stabbed." The jury rejected this testimony, and Breakiron was convicted and sentenced to death. *Commonwealth v. Breakiron*, 781 A.2d 94 (Pa. 2001).

*History of Federal Discovery*

On March 18, 2005, the petitioner Mark Breakiron served a request for production of documents upon the respondents seeking the production of nineteen (19) categories of documents. Breakiron's request was served pursuant to this Court's Order granting him the right to conduct discovery under Rule 6 of the Rules Governing Section 2254 Cases on the limited issue of whether "cause" and "prejudice" existed to excuse his procedural default of amended claim four. Amended

claim four alleges that Commonwealth witness Ellis Price lied when he testified that Breakiron confessed to him in Fayette County Jail, and is accompanied by statements from fellow inmates Robert Price, James Sullivan, and Conrad Blair never presented to the Pennsylvania courts.

In response to Breakiron's request for the production of documents, the respondents have produced sixteen (16) volumes of documents encompassing thousands of pages.[1] The first volume was produced on May 26, 2005, and consisted of documents in the possession and control of the Office of Attorney General (OAG). *See* Exhibit "A." The next fifteen (15) volumes were produced on October 26, 2005, and consisted of documents in the possession and control of the Fayette County District Attorney's Office. *See* Exhibit "B." In addition, respondents voluntarily produced a copy of the OAG's investigation into amended claim four. *Id.* Finally, Breakiron was permitted to issue subpoenas *duces tecum* to the Pennsylvania State Police, the Fayette County Jail, and law enforcement authorities in Michigan, which produced yet more documents.

In the instant motion, the petitioner seeks even more discovery. The petitioner's request is predicated on a Pennsylvania State Police investigative report -- produced by the Pennsylvania State Police in response to a subpoena *duces tecum* -- into the robbery and aggravated assault of Vincent Keith Sterbutzel on January 8, 1985. *See Appendix to Petitioner's Motion*. According to the report, three or four men beat up the victim, and one of the men put a gun to his head and threatened to kill him. In the report, the victim identified Mark Dimatteo as one of the men who beat him up, and also identified Dimatteo as the man who threatened to kill him. When interviewed, Dimatteo contradicted the victim and denied all involvement in the fight, instead blaming other individuals including Ellis

---

[1]The respondents withheld certain documents on the grounds of privilege. This matter is currently the subject of the petitioner's motion for production of documents withheld, or, in the alternative, for a more detailed privilege log.

Price. According to the investigation, Dimatteo's statement was the only evidence implicating Ellis Price. On March 10, 1989, the Fayette County District Attorney's Office declined to extradite Ellis Price from Michigan because he was "currently serving a long sentence in the State of Michigan [and] it would serve no useful purpose to charge and try him in this state." *Id.* at 17. The District Attorney's Office successfully obtained convictions against Robert Price and Keith Price (who did not need to be extradited) for their role in the incident. Breakiron now seeks to use this information as justification for obtaining court authorization to conduct further discovery.

*Argument*

Discovery in habeas corpus proceedings is governed by Rule 6 of the Rules Governing Section 2254 Cases, which, in relevant part, provides that: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *Id.*

This Court granted Breakiron leave to file a formal motion for discovery on his claim that he can establish "cause" and "prejudice" to excuse his procedural default of amended claim 4. To establish "cause" the petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective factors include "interference by officials that makes compliance with the state's procedural rule impractical, and a showing that the factual or legal basis for the claim was not reasonably available." *Id.* *See also McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Further, presuming "cause" may be established, petitioner must also show that there was prejudice from the inability to raise the issue. *Murray*, 477 U.S. at 494. Prejudice generally is not just the possibility of

prejudice from the trial errors. A petitioner must show that errors worked to the petitioner's substantial disadvantage, infecting the entire trial. *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

Breakiron has failed to establish "good cause" to conduct further discovery. According to the police report, Ellis Price was not prosecuted for the beating of Vincent Keith Sterbutzel because Price was already serving a lengthy sentence in Michigan. Breakiron has produced no evidence to the contrary. Indeed, Price was already serving a sentence of 8 to 60 years imposed in the State of Michigan. *Appendix 9 at 1117*. Even if Price had been prosecuted and received a sentence comparable to his brother Robert Price -- which was 5-10 years imposed on September 22, 1989 to run concurrently with another sentence Robert Price was serving -- he would likely not have served any additional time in Pennsylvania because he was not paroled in Michigan until "around 1995." *Pet. Mot. at 3 n.3*. Therefore, the police report into the beating of Vincent Keith Sterbutzel does not supply "good cause" to continue to allow Breakiron to conduct discovery in this matter.

Moreover, the scope of Breakiron's *Brady* claim as it relates to the evidence he did not present to the Pennsylvania courts is narrow and would not entitle him to relief even if it were proven. Breakiron does not specifically allege that the Commonwealth knew of the alleged plan by James Sullivan, Ellis Price, and Conrad Blair to fabricate Breakiron's confession. Breakiron's general assertions to the contrary are contradicted by more specific information in amended claim four that Sullivan "first revealed" the alleged plan on March 6, 2002 -- nearly fourteen years after Breakiron's trial. Moreover, Breakiron does not allege that the Commonwealth prevented Breakiron's trial counsel from speaking with Sullivan, Blair, and Robert Price. Indeed, Breakiron's current attorneys spoke with all of these individuals without any interference from the Commonwealth. Therefore,

there was nothing that the Commonwealth allegedly suppressed that prevented Breakiron's attorneys from discovering this evidence and presenting it in the state courts.

Breakiron does specifically allege that the Commonwealth failed to disclose a letter allegedly signed by Sullivan and Ellis Price and sent to the district attorney offering to testify against Breakiron in exchange for deals on their cases. However, this letter -- whose contents are described by Sullivan and Blair in amended claim four -- is not alleged to contain any information alerting the Commonwealth that Breakiron's confession was allegedly fabricated. *Equally important, nothing in this alleged letter contradicts Ellis Price's testimony at trial.* At trial, Price denied having made any deals for his testimony. Price was not asked -- and therefore did not testify -- whether he *proposed* any deals in exchange for his testimony. Appendix 9 at 1110-1126. Therefore, even if there was a letter, and even if the Commonwealth suppressed the letter from the defense, the letter would not have contradicted Price's testimony.

WHEREFORE, Respondents respectfully request that this Court deny petitioner's motion to amend his request for production of documents.

                              **Respectfully submitted,**

                              **THOMAS W. CORBETT, JR.**
                              **Attorney General**

                 **BY:**    *[s] Christopher D. Carusone*
                              **CHRISTOPHER D. CARUSONE**
                              **Senior Deputy Attorney General**
                              **Attorney ID# 71160**

**OFFICE OF ATTORNEY GENERAL**
**Criminal Law Division, Capital Litigation Unit**
**16th Floor, Strawberry Square**
**Harrisburg, PA  17120**
**(717) 783-6273**

**Date:   November 23, 2005**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK BREAKIRON,** | : | |
| Petitioner | : | |
| | : | **Civil Action No. 00-300** |
| v. | : | |
| | : | **Judge William L. Standish** |
| **MARTIN HORN, et al.,** | : | |
| Respondents | : | **THIS IS A CAPITAL CASE** |

**CERTIFICATE OF SERVICE**

AND NOW, this 23rd day of November, 2005, I, Christopher D. Carusone, Senior Deputy Attorney General, counsel for respondents in the above-captioned matter, hereby certify that I this day served the foregoing **Response to Motion to Amend Petitioner's Request for Production of Documents** by serving a copy *via* email addressed as follows:

**James Anderson, Esquire**
**James Anderson [James_Anderson@fd.org]**
**Assistant Federal Public Defender**
**Capital Habeas Corpus Unit**
**1450 Liberty Center**
**1001 Liberty Avenue**
**Pittsburgh, PA 15222-3714**
**(Counsel for Petitioner)**

          *[s] Christopher D. Carusone*
          CHRISTOPHER D. CARUSONE
          Senior Deputy Attorney General