IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK BREAKIRON,  :
    Petitioner  :
        :  Civil Action No. 00-300
v.  :
        :  Judge William L. Standish
MARTIN HORN, et al.,  :
    Respondents  :  THIS IS A CAPITAL CASE

**RESPONSE TO**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

Respondents, through their attorneys, submit the following response to petitioner Mark Breakiron's motion for summary judgment on claims one and three contained in his petition for writ of *habeas corpus*. For the reasons set forth below, Breakiron's motion should be denied.[1]

***Summary Judgment and the AEDPA***

In order to be entitled to summary judgment, the moving party must show, based on "pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any . . . that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must view all the evidence in the light most favorable to the non-movant, accept the non-movant's version of the facts as true, and resolve any conflicts in its favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

In deciding the motion for summary judgment, the Court must take into account the heightened standard of proof imposed by the Antiterrorism and Effective Death Penalty Act of 1996

---

[1] In addition to the arguments contained in this response, respondents also incorporate by reference the arguments contained in their answer to the petition for writ of *habeas corpus*. Respondents also intend to file an amended answer to on the merits of claim three to conform with this response.

(AEDPA). *See Justofin v. Metropolitan Life Insurance Company*, 372 F.3d 517, 521-522 (3d. Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). As reshaped by the AEDPA, the federal habeas statute permits issuance of the writ only if a state court's decision adjudicating the merits of a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law"). In a series of decisions since the AEDPA's enactment, the Supreme Court has reiterated that, even if a federal court disagrees with a state court's ruling, it is not authorized to disturb that ruling unless it is contrary to the Court's controlling precedent or involves an unreasonable application of the same. *See Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Price v. Vincent*, 538 U.S. 634, 638-639 (2003); *Bell, supra*, 535 U.S. at 693-694; *Williams v. Taylor*, 529 U.S. 362, 399-413 (2000). State court determinations of fact are to be presumed to be correct unless shown by clear and convincing evidence to be otherwise. § 2254(e)(1).

The threshold step in determining whether habeas relief should be granted under § 2254(d)(1), is identifying what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Andrade, supra*, 538 U.S. at 71. "Section 2254(d)(1)'s 'clearly established phrase' phrase 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.' " *Id*. (quoting *Williams*, 529 U.S. at 412). The next step is determining whether the state court unreasonably applied clearly established federal law, as determined by the U.S. Supreme Court. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . .

a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, *supra*, 529 U.S. at 411. Instead, the state court's application must be objectively unreasonable. *Id.* at 409. *Andrade*, 538 U.S. at 75-76 (citing *Bell*, 535 U.S. at 699; *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002)). This can occur if a state court decision correctly identifies the proper controlling precedent but unreasonably applies it to the facts of a particular case. *Williams*, 529 U.S. at 407. It is the reasonableness of the state court's judgment that matters, not the rationale it used. *See*, *e.g.*, *Weeks v. Angelone*, 528 U.S. 225 (2000).

***The Motion For Summary Judgment On Claim One Should Be Denied.***

Breakiron is not entitled to summary judgment on claim one because the respondents' evidence -- when viewed in the light most favorable to the respondents and accepted as true -- does not establish that the Pennsylvania courts unreasonably applied clearly established federal law in rejecting his claim. In claim one, Breakiron argues that he received ineffective assistance of counsel because his trial counsel did not adequately investigate and present his diminished capacity/voluntary intoxication defense. In order to establish that his trial counsel was constitutionally ineffective, Breakiron must prove that: (1) his counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced the defense, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). Dr. Thomas Adamski -- a board certified forensic psychiatrist who evaluated Breakiron shortly after the murder and again prior to his trial -- testified in state court in proceedings under the Post Conviction Relief Act (PCRA) that Breakiron was not impaired, nor was he laboring under a mental illness or defect, at the time of the murder. *Resp. App.*

3

*29 at 54-55.* Dr. Adamski also testified that Breakiron's behaviors on the night of the murder did not flow from psychiatric illness. *Id.* This testimony was credited by the Pennsylvania courts. *Commonwealth v. Breakiron*, 729 A.2d 1088, 1099-1100 (Pa. 1999). Accepting Dr. Adamski's testimony as true for purposes of Breakiron's motion, Breakiron is not entitled to summary judgment because he did not have any mental impairments at the time of the murder, and therefore suffered no prejudice by his counsel's handling of his diminished capacity/voluntary intoxication defense.

In support of claim one, Breakiron will argue that his current experts -- Dr. Julie Kessel and Dr. Robert A. Fox -- who first evaluated him approximately thirteen years after the murder, have a different view than Dr. Adamski of Breakiron's mental state at the time of the murder. *Pet. App. at 1-2.* However, these affidavits fundamentally alter the ineffectiveness claim he presented to the Pennsylvania courts, *see Vasquez v. Hillery*, 474 U.S. 254, 260 (1986), and therefore his claim is procedurally barred. Even if the Court could consider his claim and Breakiron's new evidence, this conflicting expert testimony creates a genuine issue of material fact, precluding summary judgment.

Summary judgment on claim one in not compelled by the Court of Appeals' recent decision in *Jacobs v. Horn*, 395 F.3d 92 (3d. Cir. 2005). The *Strickland* standard necessarily lends itself to a particularized judgment of counsel's effectiveness on a case-by-case basis. Constitutional effectiveness of counsel cannot be summarily determined merely because counsel in Case A did less or more than counsel in Case B. Moreover, the present case differs from *Jacobs* in several important respects. Most critically, in *Jacobs* the Pennsylvania Supreme Court rejected Jacobs' ineffectiveness argument on the performance prong of *Strickland*, and never reached the prejudice prong. As a result, the Court of Appeals' analysis of the prejudice prong in *Jacobs* was not circumscribed by the highly deferential standard of review contained in the AEDPA. *See Wiggins v. Smith*, 539 U.S. 510,

534 (2003). By contrast, in the present case, the Pennsylvania courts concluded that Breakiron did not suffer prejudice as a result of his counsel's conduct, a determination that may only be overturned if it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accepting Dr. Adamski's testimony as true for purposes of Breakiron's motion, the Pennsylvania courts' application of the prejudice prong of *Strickland* to the facts of the present case was not unreasonable because Breakiron did not have any mental impairments at the time of the murder. As a result, summary judgment is not warranted.

Breakiron also argues that *Jacobs* controls the outcome of the present case because like in *Jacobs*, the Pennsylvania Supreme Court applied a legal standard in a manner contrary to *Strickland*. This argument is without merit. In *Jacobs*, the Court of Appeals held that the Pennsylvania Supreme Court's reliance on a single factor in determining that counsel's performance was adequate was an unreasonable application of *Strickland*, because *Strickland* requires consideration of all of the circumstances in assessing counsel's performance. *Jacobs*, 395 F.3d at 106. By contrast, in the present case the Pennsylvania Supreme Court relied on the prejudice prong of *Strickland*, not the performance prong. In so doing, the Pennsylvania Supreme Court did not base its determination on a single fact, but rather on a series of factors, including the overwhelming evidence of guilt, Breakiron's failure to articulate how he was prejudiced, and Dr. Adamski's testimony. *Commonwealth v. Breakiron*, 729 A.2d 1088, 1099-1100 (Pa. 1999). Finally, the Pennsylvania Supreme Court's statement of the prejudice prong was not contrary to *Strickland*. It is well settled that Pennsylvania's test for ineffective assistance of counsel is not contrary to *Strickland*. *Jacobs*, 395 F.3d at 107 n.9. Therefore, Breakiron's motion for summary judgment should be denied.

*The Motion For Summary Judgment On Claim Three Should Be Denied.*

In the present case, Breakiron is not entitled to summary judgment on his claim that he was precluded from introducing evidence of his intent at the time of the killing because his claim contradicts the evidence in the trial court record. Although a criminal defendant's right to testify at trial is a constitutional right, it is not without limitation. *Rock v. Arkansas*, 483 U.S. 44, 51-55 (1987). "The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Id.* (citing *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). On direct examination, Breakiron testified:

> Q. When you went into Shenanigans', what were your intentions?
>
> A. Just to have a good time.
>
> Q. What do you mean by a good time?
>
> A. Have a few beers, talk with some people, watch a little t.v.

*Resp. App. 10 at 1261.* Viewed in the light most favorable to the respondents, Breakiron's use of the word "just" suggests that when he went to Shenanigans' Lounge, his only intention was to "have a good time," meaning "[h]ave a few beers, talk with some people, [and] watch a little t.v." Therefore, summary judgment for Breakiron is unwarranted because the factual premise of his claim is contradicted by the trial court record of Breakiron's testimony.

Moreover, Breakiron is not entitled to summary judgment because when the Commonwealth's evidence presented at trial is taken as true and viewed in the light most favorable to the respondents, any trial court error in refusing to allow Breakiron to testify further about his intent was harmless beyond a reasonable doubt. "Under the test set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to determine whether a constitutional error is harmless, a

reviewing court must decide whether the record shows 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. McLaughlin*, 386 F.3d 547 (3d. Cir. 2004) (quoting *Chapman*, 386 U.S. at 24). "In other words, an 'otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)).

First, any trial court error in refusing to allow Breakiron to provide further testimony about his intent was harmless beyond a reasonable doubt because such testimony would have been cumulative. As noted above, Breakiron was permitted to answer questions about his intent when he went to Shenanigans' Lounge, which was where the murder took place. *Resp. App. 10 at 1261*. Permitting Breakiron to further testify about his intent would have been cumulative. *See Ortega v. O'Leary*, 843 F.2d 258 (7th Cir. 1988) (holding state trial court's refusal to allow accused to testify was improper, but constitutional error was harmless); *United States v. Edwards*, 458 F.2d 875 (5th Cir. 1972) (holding that although the district court erred in excluding the defendant's testimony about his intent, error was harmless in light of other testimony provided by the defendant).

Second, any trial court error in refusing to allow Breakiron to provide further testimony about his intent was harmless beyond a reasonable doubt because of the dubious nature of such testimony, and the overwhelming evidence of specific intent to kill demonstrated by Breakiron's actions. Breakiron claimed to be severely intoxicated at the time of the murder, so any testimony from him about what he recalled his intent to be at the time of the murder is immediately suspect for that reason. Moreover, other testimony provided by Breakiron clearly undermined his defense of diminished capacity/voluntary intoxication. Under Pennsylvania law, voluntary intoxication is a

limited defense to first-degree murder if the defendant is overwhelmed by the voluntary consumption of alcohol "to the point of losing his faculties and sensibilities." *Commonwealth v. Breakiron*, 571 A.2d 1035, 1041 (Pa. 1990). Moreover, diminished capacity "is an extremely limited defense, which requires extensive psychiatric testimony establishing a defendant suffered from one or more mental disorders which prevented him from formulating the specific intent to kill." *Jacobs*, 395 F.3d at 105. "Evidence of specific intent to kill may disprove the defense of diminished capacity." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 295-296 (3d Cir. 1991). Commenting on Breakiron's testimony, the Pennsylvania Supreme Court noted:

> In this case, although Breakiron testified that he drank a number of sixteen ounce beers and one or more shots of whiskey during the evening of March 23-24, 1987, and that he "had a 'buzz' on," he also testified that he had no trouble driving, that he drove away from the bar, then returned to pick up the body of the victim, that he picked up the money bags and the victim's purse while he was there, that he hauled the victim's body in the bed of his truck to an empty house, took it inside, put it on a tarp, then took the body to a woods where he attempted to conceal it. Because there was evidence of intoxication in the case, the trial court instructed the jury on voluntary intoxication, but it is apparent the jury did not believe that Breakiron's faculties and sensibilities were so overwhelmed with alcohol that he could not form the specific intent to kill. It is equally obvious that such a determination was for the jury to make, that the jury based its determination at least in part on evidence introduced by Breakiron himself, and that, for these reasons, there was no error in sustaining the first degree murder conviction.

*Id.* at 1041-1042. In light of the above, any trial court error in refusing to allow Breakiron to testify further about his intent was harmless beyond a reasonable doubt, especially when the Commonwealth's evidence is taken as true and viewed in the light most favorable to respondents. As a result, Breakiron is not entitled to summary judgment on this claim.

WHEREFORE, the respondents respectfully request that the petitioner's motion for summary judgment should be denied.

                                     **THOMAS W. CORBETT, JR.**
                                     **Attorney General**

                                     *[s] Christopher D. Carusone*
                  **BY:**   **CHRISTOPHER D. CARUSONE**
                                **Senior Deputy Attorney General**
                                **Attorney ID# 71160**

**OFFICE OF ATTORNEY GENERAL**
**Criminal Law Division, Capital Litigation Unit**
**Strawberry Square**
**Harrisburg, PA  17120**
**(717) 783-6273**

**Date:   December 15, 2005**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK BREAKIRON,** | : | |
|     **Petitioner** | : | |
| | : | **Civil Action No. 00-300** |
| v. | : | |
| | : | **Judge William L. Standish** |
| **MARTIN HORN, et al.,** | : | |
|     **Respondents** | : | **THIS IS A CAPITAL CASE** |

**CERTIFICATE OF SERVICE**

AND NOW, this 15th day of December 2005, I, Christopher D. Carusone, Senior Deputy Attorney General, counsel for respondents in the above-captioned matter, hereby certify that I this day served the foregoing **Response To Petitioner's Motion for Summary Judgment** by causing a copy of the same to be transmitted *via* email, addressed as follows:

**James Anderson, Esquire**
**Assistant Federal Public Defender**
**Capital Habeas Corpus Unit**
**1450 Liberty Center**
**1001 Liberty Avenue**
**Pittsburgh, PA 15222-3714**
**James Anderson [James_Anderson@fd.org]**
**(Counsel for Petitioner)**

                                                    *[s] Christopher D. Carusone*
                                                    CHRISTOPHER D. CARUSONE
                                                    Senior Deputy Attorney General