IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BREAKIRON, | : |
| Petitioner, | : |
| | : CIVIL ACTION |
| v. | : |
| | : No. 00 - 300: |
| MARTIN HORN, Commissioner, | : |
| Pennsylvania Department of Corrections; | : Judge Standish |
| CONNOR BLAINE, Superintendent of the | : |
| State Correctional Institution at Greene, and | : **THIS IS A CAPITAL CASE**. |
| JOSEPH P. MAZURKIEWICZ, | : |
| Superintendent of the State Correctional | : |
| Institution at Rockview, | : |
| Respondents. | : |

**PETITIONER'S REPLY TO COMMONWEALTH'S RESPONSE TO
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS 3 and 1**

Petitioner, MARK DAVID BREAKIRON, requests that this Court grant his MOTION FOR SUMMARY JUDGMENT on Claims 3 and 1 and, in support thereof, replies to the Commonwealth's *Response*:

**Standard of Review**

Petitioner's Motion for Summary Judgement ("Motion") raises questions of pure law – whether he is entitled to habeas relief in the basis of the current record. The Motion asks this Court to review the claims of error set forth in Claim III and Claim I of his habeas petition, in

light of the appropriate standard of review,[1] and determine whether Petitioner is entitled to a new trial.  Petitioner's Motion does not seek the development of any additional facts.[2]

The Commonwealth seeks to impose a higher standard on Petitioner by misleadingly citing the standard for summary judgment that applies pre-trial which require that any disputed fact or inference be viewed in the light most favorable to the non-movant.[3]  While these standards make sense in the conventional pre-trial context, before there has been any evidentiary development, they have no applicability here where the facts have already been developed. Petitioner's motion for summary judgment are based on the state court record, not on allegations

---

[1] Different standards of review are applicable to Claim III and Claim I.  Because the Pennsylvania Supreme Court decided Claim I on the merits, the standards set forth in 28 U.S.C. §2254(d) are applicable.  See Petitioner's Memorandum of Law ("PM") at 24-30 (describing standard of review).  However, because the Pennsylvania Supreme Court did not decide Claim III on the merits (but relied on a procedural bar which this Court has previously held to be not adequate and independent, and thus, no bar to federal review), this Court's review is *de novo*. Jacobs v. Horn, 395 F.3d 92, 118 n. 21 (3d Cir. 2005) (where state supreme court does not address claim on merits because of inadequate state procedural bar, de novo review is required). See Chadwick v. Janecka, 312 F.3d 597 (3d Cir. 2002) (explaining that Third Circuit precedents – including Everett v. Beard, 290 F.3d 500, 507-08 (3d Cir. 2002); Appel v. Horn, 250 F.3d 203, 209-12 (3d Cir. 2001); and Hameen v. Delaware, 212 F.3d 226, 248 (3d Cir. 2000) – make clear that if the state courts fail to adjudicate the petitioner's actual federal claim, the federal claim has not been "adjudicated on the merits" and the § 2254(d) standard does not apply).

[2] In Claim I, Petitioner supplemented the record with affidavits/reports from two mental health experts, Dr. Jule Kessel and Dr. Robert Fox, that were not presented in state court.  Those affidavits explain the evidence presented in state court, but do not change the nature of the claim. See Vasquez v. Hillery, 474 U.S. 254, 260 (1986).

[3] Commonwealth's Response (hereinafter "CR") at 1-2.  Undersigned counsel does not think that counsel for the Commonwealth was deliberately misleading in this respect.  The conceptual difference between the legal standard applicable to a motion for summary judgment pre-trial (before evidentiary development) and in the habeas context (after evidentiary development) is confusing (albeit important).  In that regard, perhaps the fault lies with undersigned counsel who could have better entitled the document *Motion for Legal Judgment on the Pleadings* or something similar instead of *Motion for Summary Judgment*.

of facts to be disputed in future evidentiary fora. Thus, it is the AEDPA standards, not trial summary judgement presumptions, which must be applied. See Liles v. Saffle, 945 F.2d 333 (10th Cir. 1991) (summary judgement in favor of habeas petitioner was appropriate where he was entitled to judgement as a matter of law).

### Summary Judgment is Appropriate on Claim III

Claim III concerns the unconstitutional restrictions on Petitioner's right to testify and the preclusion of testimony concerning his intent on the night in question. The Commonwealth contends that the trial court's ruling was not erroneous and that, if it was, any error was harmless beyond a reasonable doubt. The Commonwealth is wrong on all counts.

The Commonwealth correctly notes that a defendant's right to testify is not unlimited and may be curtailed to accommodate other legitimate interests. CR at 6. But the Commonwealth makes no effort here to identify any interest that could justify the trial court's inexplicable rulings. Petitioner's intent was an element of the offense; the Commonwealth had the burden to prove an intent to kill beyond a reasonable doubt, and Petitioner had an absolute right to testify to his intent. Crawford v. United States, 212 U.S. 183, 202-04 (1909) ("the court erred in its refusal to allow defendant to testify in regard to his intention . . . The intent of the defendant in obtaining possession of the letters was material, and, being material, the defendant should have been permitted to testify as to his intent and motive"); United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987) ("a rule barring evidence on the issue of mens rea may be unconstitutional so long as we determine criminal liability in part through subjective states of mind").

The Commonwealth's contention that any error was harmless is similarly flawed. Petitioner's intent was a fundamental issue at trial, yet he was precluded from answering

questions about whether he had the intent to hurt somebody, or the intent to steal that evening. Further questioning was explicitly cut off, the trial court declared that he was "not interested" in Petitioner's intentions, and counsel was not permitted to ask any other questions about his intent. NT at 1261-62.

Contrary to the Commonwealth's argument, CR at 6, the mere fact that Petitioner was able to answer one preliminary question, expressing an intent to "have a good time," does not render any error harmless. Such testimony is not cumulative to testimony about an intent to do harm or an intent to steal. Petitioner was entitled to address the questions that were explicitly before the jury – his alleged intent to kill and intent to rob – and the jury should have been entitled to have the opportunity to judge the credibility of his answers.

Nor is the error harmless because Petitioner told the jury that he blacked out at some point and did not remember killing the deceased. CR at 7-8. He remembered the events of the evening up until the time he was the last customer remaining in the bar and was left alone with the deceased bartender. The Commonwealth argued that Petitioner carried out a premeditated plan and intentionally killed the bartender. Mr. Breakiron was entitled to look the jury in they eye and deny this version of events, to explain what his intent actually was, and have the jury decide what weight to give his testimony.

Indeed, the Commonwealth's harmless error argument is largely grounded in speculation about the weight the jury would have given his testimony. Speculation, however, is not an appropriate basis for finding harmless error. The Third Circuit has cautioned against an application of harmless error review which substitutes the appellate court for the jury "by speculating about what portion of the testimony the jury believed." Laird v. Horn, 414 F.3d 419,

428 (3d Cir. 2005). Yet that is exactly what the Commonwealth asks this Court to do here.[4]

An error is not harmless simply because there is other legally sufficient evidence to support the jury's verdict. The correct inquiry is whether the error could have had a substantial influence on the verdict despite the existence of other, sufficient, evidence. Smith v. Horn, 120 F.3d 400, 417 (3d Cir. 1997) quoting Yohn v. Love, 76 F.3d 508, 523 (3d Cir. 1996).

In this case, the Commonwealth cannot demonstrate that the trial court's instructional error was harmless. The Commonwealth's evidence of Mr. Breakiron's intent was largely circumstantial and hardly overwhelming. See PM at 96-98 (addressing harmless error). The circumstances of the crime, while sufficient to support the jury's verdict, are not necessarily consistent with a premeditated and deliberate intent to kill. The nature of the wounds, and of Petitioner's actions following the assault, are at least equally consistent with a killing committed

---

[4]The Commonwealth sets forth the harmless beyond a reasonable doubt standard of Chapman v. California, 386 U.S. 18 (1967). Although undersigned counsel agree with the Commonwealth that Chapman *should* govern harmless error review when the state court has not previously addressed the question, this is not the law in the Third Circuit. See Hassine v. Zimmerman, 160 F.3d 941, 950 (3d Cir. 1998) (noting a split in the Circuits concerning the appropriate test, and holding that the harmless error test of Brecht v. Abrahamson, 507 U.S. 619 (1993) should be applied on habeas review)

The Brecht standard, however, is not all that different from Chapman. Under Brecht, trial error of the type involved here is not harmless if it had a "substantial and injurious effect or influence" on the jury's verdict. Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). Brecht "places the burden on prosecutors to explain why those errors were harmless," and any doubt concerning the harmlessness of any such error must be resolved in favor of the petitioner. Brecht, 507 U.S. at 640-41 (Stevens, J. concurring) (controlling opinion); O'Neal v. McAnnich, 513 U.S. 432, 437 (1995). The question is not whether the defendant would have been convicted if the error had not occurred, but the impact of the error upon the jury's decision: Indeed, as Justice Stevens explained, the differences between the Brecht and Chapman standards are not so significant and are "far less important than the quality of the judgement [to] which it is applied." Brecht, 507 U.S. at 643.

In this case, as discussed above, the fundamental constitutional error committed here is not harmless under any standard.

during an intoxicated rage and/or alcohol blackout, as it is with the specific intent to kill required under Pennsylvania law. Moreover, Mr. Breakiron's defense focused on his intoxication and lack of intent, as he did not deny his involvement in the killing.[5]

Given the highly disputed facts relating to intent, and the lack of uncontradicted direct evidence of that intent, the error in precluding Mr. Breakiron from testifying about his lack of intent to kill and rob had a substantial and injurious effect on the jury's verdict and was not harmless under Brecht. See Smith v. Horn, 120 F.3d at 418-19 (erroneous instruction on intent was not harmless, despite substantial evidence that defendant had acted with the intent to kill; Court cannot usurp jury function to weight evidence and "cannot assume that the jury, having found Smith guilty, 'believed all properly admitted evidence against him and disbelieved all evidence in his favor.'" (quoting Roger J. Traynor, THE RIDDLE OF HARMLESS ERROR 28 (1970)).

The United States Supreme Court has held that a reviewing court should be wary of finding harmless error where a defendant was prevented from testifying about his intent. In Crawford, the Court declared:

> There may have been testimony some time during the trial, inferences might possibly have been drawn as to the motive or intent with which those letters were

---

[5]The fact that Petitioner raised an intoxication defense did not reduce or shift the Commonwealth's burden to prove an intent to kill beyond a reasonable doubt. Under Pennsylvania law, voluntary intoxication is an affirmative defense which can reduce the degree of murder. In order to make out this defense, the defendant must first present evidence that he was overwhelmed or overpowered by an intoxicant to the point of losing her faculties or sensibilities. At that point, the burden of persuasion shifts to the prosecution to show beyond a reasonable doubt that despite any influence of alcohol or drugs, the defendant was capable of forming the specific intent to kill. Commonwealth v. Reiff, 413 A.2d 672 (Pa. 1980). See Whitney v. Horn, 280 F.3d 240, 253-56 (3d Cir. 2002) (explaining Pennsylvania law and holding that instructions improperly shifted the burden of proof). Regardless of whether the jury accepts the intoxication defense, it remains the Commonwealth's burden to prove the specific intent to kill beyond a reasonable doubt. In re Winship, 397 U.S. 358 (1970).

6

> taken, but, instead of testimony from which such inferences might have been drawn, <u>the defendant was entitled to state directly on oath to the jury what that intention was, and what were the motives which induced him</u> to take the letters.
>
> <u>It is hardly possible to imagine a case where greater care was necessary in regard to the exclusion of proper and admissible evidence than in the case before us</u>.. . . No material and proper evidence upon that issue [of defendant's intent] should have been excluded, and the error committed was not, in our opinion, clearly shown to have been harmless.

<u>Id.</u> 212 U.S. at 205.

The Commonwealth's speculation about what the jury would have believed had Petitioner been allowed to testify about his intent does not render the trial court's error harmless.

### Summary Judgment is Appropriate on Claim One

Petitioner argues that counsel was ineffective for failing to present mental health testimony to support the defense offered at trial and that he is entitled to summary judgment on this claim. Under the familiar <u>Strickland v.Washington</u>, 466 U.S. 668 (1984) standard, Petitioner must prove that counsel was ineffective and that but for counsel's ineffectiveness there was a reasonable probability of a different outcome.

Here, the Pennsylvania Supreme Court found that counsel "mishandled" the mental health aspects of the case, but found that Petitioner was not prejudiced in either the guilt phase presentation of a diminished capacity/voluntary intoxication defense or the penalty phase:

> Although Breakiron presents a persuasive argument that trial counsel had a basic misunderstanding of the MHPA, he is unable to articulate how he was prejudiced. Breakiron postulates that had an evaluation been performed in accordance with Section 7402, counsel may have chosen a different trial strategy. <u>He surmises that trial counsel's failure to follow the MHPA left the attorney without any psychiatric evidence to assist in Breakiron's defense</u> or to present mitigating evidence at trial. We find that Breakiron has not met his burden of establishing that counsel's errors prejudiced him because he cannot establish that had an examination been done according to the MHPA, the defense strategy, or the outcome of either the guilty

> verdict or sentence of death, would have changed. Instead, the PCRA proceedings show that Breakiron was competent at the time of trial, and there was no evidence that trial counsel could have presented an insanity defense. <u>Therefore, the only defense available to trial counsel was of diminished capacity, which was presented and rejected by the jury at trial.</u> Thus, the alleged errors, had they been corrected, would not have led to a different result, and we cannot find that Breakiron was prejudiced in the guilt phase of the trial.

<u>Commonwealth v. Breakiron</u>, 729 A.2d 1088, 1099-1100 (Pa.1999) (emphasis added; footnotes omitted).

The Court properly identifies the claim ("counsel's failure...left the attorney without any psychiatric evidence to assist in Breakiron's defense") but then reasons that since Petitioner presented some form of diminished capacity defense, he was not prejudiced by his failure to have a mental health expert to support it. This is, of course, a non sequitur. Had petitioner claimed that counsel was ineffective for failing to pursue a diminished capacity defense at all, the Court would be appropriate in pointing out that this was, in fact, the defense pursued. But it is no answer to the claim that Petitioner was prejudiced by counsel's failure to get mental health testimony to say simply that since a diminished capacity defense was presented, counsel was not ineffective.

In its response, the Commonwealth argues that summary judgment is not appropriate because Dr. Adamski testified at the PCRA proceedings that Mr. Breakiron was not laboring under a mental illness or defect at the time of the murder, and that under the standards for summary judgment, this Court must accept Dr. Adamski's testimony as true. CR at 3. According to the Commonwealth, the Pennsylvania Supreme Court concluded that Mr. Breakiron was not intoxicated or have diminished capacity based on Dr. Adamski's PCRA testimony.

The Commonwealth's argument is unpersuasive. First, as explained above in the

standard of review section, the Commonwealth attempts to import pre-trial summary judgment standards that require a court to accept all of the non-movant's version of facts as true. While that makes perfect sense before the fact-finding has occurred, it has little applicability after the relevant courts have conducted hearings and found facts.

So we must look to what the state courts actually found. And here, the state courts only credited Dr. Adamski's testimony with respect to Mr. Breakiron's competency and sanity:

> Dr. Adamski determined in his August 1987 report that based on his observations of Breakiron, as well as his conversations with friends and family, Breakiron was competent. Additionally, in preparation for the PCRA proceeding, Dr. Adamski reviewed the trial transcript of Breakiron's description of the crime, and opined that it did not change his opinion. He testified that had he been called to testify at the time of Breakiron's trial, that he would opine that Breakiron was competent and sane at the time. Appellant produced no contrary evidence.

Commonwealth v. Breakiron, 729 A.2d 1088, 1099 n.10 (1999). The Court simply did not address the issue of how Dr. Adamski's testimony could or would be relevant to the intoxication defense actually raised at trial. The Commonwealth's claim that the Court credited Dr. Adamski's testimony in this respect is simply not supported by the Court's opinion.

Similarly, the PCRA court's discussion of Dr. Adamski's testimony was limited to the conclusion that Mr. Breakiron was competent to stand trial. See Commonwealth v. Breakiron, No. 331 of 1987, (Court of Common Pleas of Fayette County, filed January 27, 1998) (Franks, P.J.) (noting that Dr. Martone and Dr. Adamski agreed that Mr. Breakiron was competent to stand trial; not addressing or resolving any factual disputes). In short, neither the PCRA court nor the Pennsylvania Supreme Court found that Mr. Breakiron did not have diminished capacity

based on his voluntary intoxication.[6]

Finally, the Commonwealth seeks to distinguish Jacobs v. Horn, 395 F.3d 92 (3d Cir. 2005) on the grounds that in Jacobs, the state court found that counsel's performance was not deficient, and, here, the state court found that Petitioner had not been prejudiced by counsel's error. CR at 4-5. This difference is insignificant. In both cases, the state court found that no error had occurred by focusing on a single fact -- that trial counsel, even without an expert, nevertheless presented a diminished capacity defense. The Court of Appeals found such a narrow, singularly focused standard unreasonable in Jacobs, and it is equally unreasonable here. In both Jacobs and here, defendants with viable diminished capacity defenses were denied the

---

[6]Even if the Pennsylvania Supreme Court had somehow made a finding that Mr. Breakiron was not intoxicated and did not have diminished capacity, such a ruling would be unreasonable for several reasons. First, Dr. Adamski evaluated Mr. Breakiron only for competency to stand trial and sanity and not for purposes of determining whether or not he had a viable voluntary intoxication/diminished capacity defense. There is a critical difference between a competency evaluation and determining whether or not a defendant has a viable diminished capacity/voluntary intoxication defense. Moreover, because Dr. Adamski warned Mr. Breakiron that anything that he said could be used against him at trial, Mr. Breakiron did not discuss his alcohol and drug use on the evening in question. Since Mr. Breakiron's intent and recollection of the evening in question were central to the determination of whether or not he had a viable voluntary intoxication defense, Dr. Adamski's evaluation was critically impaired. See Legal Memorandum at 45-49 (explaining why Dr. Adamski's evaluation was unreliable because it was not confidential and not directed at relevant issues). It would have been unreasonable to credit such a flawed evaluation.

Second, the existence of diminished capacity and voluntary intoxication was ultimately a jury question. The testimony of a mental health expert would have immeasurably helped explain Mr. Breakiron's limited recollection of events in the context of his history of blackouts. It also could have explained Breakiron's spotty recollection as a well-recognized phenomenon instead of merely as incredible and bizarre as it probably seemed to lay jurors without the benefit of mental health testimony. Given these uncontested truths, and the uncontested history of Mr. Breakiron's blackouts (which Dr. Adamski himself noted), it would have been grossly unreasonable for the Pennsylvania Supreme Court to simply declare that Mr. Breakiron was not intoxicated and did not suffer from diminished capacity on the night of the offense as a matter of law. This is probably why neither of the Pennsylvania state courts to consider the evidence made the finding upon which the Commonwealth now tries to rely.

benefit of expert testimony. Here, Dr. Martone could have testified that Petitioner suffered an alcoholic blackout at the time of the killing. Such testimony would have corroborated Petitioner's own testimony of blackout, and supplied badly needed medical support for the defense counsel lamely tried to present. Just as in Jacobs, Petitioner is entitled to relief.

## Conclusion

This Court should grant Petitioner's Motion for Summary Judgment on Claims Three and One.

Respectfully submitted,

S/(James Anderson)
_____
James Anderson, Esq.
Assistant Federal Public Defender
Capital Habeas Corpus Unit
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222-3714
(412) 644-6565

Stuart Lev, Esq.
Capital Habeas Corpus Unit
Federal Court Division
Defender Association of Philadelphia
Suite 545W -- The Curtis Center
Independence Sq. West
Philadelphia, PA 19106
(215) 928-0520

Dated:          December 30, 2005