IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK BREAKIRON, | : | |
|     Petitioner | : | |
| | : | Civil Action No. 00-300 |
| v. | : | |
| | : | Judge William L. Standish |
| MARTIN HORN, et al., | : | |
|     Respondents | : | THIS IS A CAPITAL CASE |

## AMENDED ANSWER TO CLAIM III OF
## PETITION FOR WRIT OF HABEAS CORPUS

Respondents, through their attorneys, submit the following amended answer to claim III contained in the petitioner Mark Breakiron's petition for writ of *habeas corpus*. This amended answer replaces only section 3(a) of the respondents' original answer (pp. 83-85).

Breakiron's claim that he was precluded from introducing evidence during the trial of his intent at the time of the killing should be denied. Although a criminal defendant's right to testify at trial is a constitutional right, it is not without limitation. *Rock v. Arkansas*, 483 U.S. 44, 51-55 (1987). "The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Id.* (citing *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).

Breakiron's claim contradicts the trial court record. On direct examination, Breakiron testified:

    Q.    When you went into Shenanigans', what were your intentions?

    A.    Just to have a good time.

    Q.    What do you mean by a good time?

    A.    Have a few beers, talk with some people, watch a little t.v.

*Resp. App. 10 at 1261.* Breakiron's use of the word "just" suggests that when he went to Shenanigans' Lounge, his only intention was to "have a good time," meaning "[h]ave a few beers, talk

with some people, [and] watch a little t.v." Therefore, relief on his claim is unwarranted because the factual premise of his claim is contradicted by the trial court record of Breakiron's testimony.

Moreover, any trial court error in refusing to allow Breakiron to testify further about his intent was harmless beyond a reasonable doubt. "Under the test set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to determine whether a constitutional error is harmless, a reviewing court must decide whether the record shows 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. McLaughlin*, 386 F.3d 547 (3d. Cir. 2004) (quoting *Chapman*, 386 U.S. at 24). "In other words, an 'otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)).

First, any trial court error in refusing to allow Breakiron to provide further testimony about his intent was harmless beyond a reasonable doubt because such testimony would have been cumulative. As noted above, Breakiron was permitted to answer questions about his intent when he went to Shenanigans' Lounge, which was where the murder took place. *Resp. App. 10 at 1261*. Permitting Breakiron to further testify about his intent would have been cumulative. *See Ortega v. O'Leary*, 843 F.2d 258 (7th Cir. 1988) (holding state trial court's refusal to allow accused to testify was improper, but constitutional error was harmless); *United States v. Edwards*, 458 F.2d 875 (5th Cir. 1972) (holding that although the district court erred in excluding the defendant's testimony about his intent, error was harmless in light of other testimony provided by the defendant).

Second, any trial court error in refusing to allow Breakiron to provide further testimony about his intent was harmless beyond a reasonable doubt because of the dubious nature of such testimony,

and the overwhelming evidence of specific intent to kill demonstrated by Breakiron's actions. Breakiron claimed to be severely intoxicated at the time of the murder, so any testimony from him about what he recalled his intent to be at the time of the murder is immediately suspect for that reason. Moreover, other testimony provided by Breakiron clearly undermined his defense of diminished capacity/voluntary intoxication. Under Pennsylvania law, voluntary intoxication is a limited defense to first-degree murder if the defendant is overwhelmed by the voluntary consumption of alcohol "to the point of losing his faculties and sensibilities." *Commonwealth v. Breakiron*, 571 A.2d 1035, 1041 (Pa. 1990). Moreover, diminished capacity "is an extremely limited defense, which requires extensive psychiatric testimony establishing a defendant suffered from one or more mental disorders which prevented him from formulating the specific intent to kill." *Jacobs*, 395 F.3d at 105. "Evidence of specific intent to kill may disprove the defense of diminished capacity." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 295-296 (3d Cir. 1991). Commenting on Breakiron's testimony, the Pennsylvania Supreme Court noted:

> In this case, although Breakiron testified that he drank a number of sixteen ounce beers and one or more shots of whiskey during the evening of March 23-24, 1987, and that he "had a 'buzz' on," he also testified that he had no trouble driving, that he drove away from the bar, then returned to pick up the body of the victim, that he picked up the money bags and the victim's purse while he was there, that he hauled the victim's body in the bed of his truck to an empty house, took it inside, put it on a tarp, then took the body to a woods where he attempted to conceal it. Because there was evidence of intoxication in the case, the trial court instructed the jury on voluntary intoxication, but it is apparent the jury did not believe that Breakiron's faculties and sensibilities were so overwhelmed with alcohol that he could not form the specific intent to kill. It is equally obvious that such a determination was for the jury to make, that the jury based its determination at least in part on evidence introduced by Breakiron himself, and that, for these reasons, there was no error in sustaining the first degree murder conviction.

*Id.* at 1041-1042.  In light of the above, any trial court error in refusing to allow Breakiron to testify further about his intent was harmless beyond a reasonable doubt.

  WHEREFORE, the respondents respectfully request that claim III in the petition for writ of *habeas corpus* be denied.

                  **THOMAS W. CORBETT, JR.**
                  **Attorney General**

                 *[s] Christopher D. Carusone*
         **BY:** **CHRISTOPHER D. CARUSONE**
                **Senior Deputy Attorney General**
                **Attorney ID# 71160**

**OFFICE OF ATTORNEY GENERAL**
**Criminal Law Division, Capital Litigation Unit**
**Strawberry Square**
**Harrisburg, PA  17120**
**(717) 783-6273**

**Date:  January 20, 2006**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK BREAKIRON,** | : | |
|     Petitioner | : | |
| | : | **Civil Action No. 00-300** |
| v. | : | |
| | : | **Judge William L. Standish** |
| **MARTIN HORN, et al.,** | : | |
|     Respondents | : | **THIS IS A CAPITAL CASE** |

### CERTIFICATE OF SERVICE

AND NOW, this 20th day of January, 2006, I, Christopher D. Carusone, Senior Deputy Attorney General, counsel for respondents in the above-captioned matter, hereby certify that I this day served the foregoing **Amended Answer to Claim III** by causing a copy of the same to be transmitted *via* email, addressed as follows:

> **James Anderson, Esquire**
> **Assistant Federal Public Defender**
> **Capital Habeas Corpus Unit**
> **1450 Liberty Center**
> **1001 Liberty Avenue**
> **Pittsburgh, PA 15222-3714**
> **James Anderson [James_Anderson@fd.org]**
> **(Counsel for Petitioner)**

                          *[s] Christopher D. Carusone*
                          CHRISTOPHER D. CARUSONE
                          Senior Deputy Attorney General