IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BREAKIRON, | : |
| Petitioner, | : |
| | : CIVIL ACTION |
| v. | : |
| | : No. 00 - 300: |
| MARTIN HORN, Commissioner, | : |
| Pennsylvania Department of Corrections; | : Judge Hardiman |
| CONNOR BLAINE, Superintendent of the | : |
| State Correctional Institution at Greene, and | : **THIS IS A CAPITAL CASE**. |
| JOSEPH P. MAZURKIEWICZ, | : |
| Superintendent of the State Correctional | : |
| Institution at Rockview, | : |
| Respondents. | : |

**MOTION FOR
PRODUCTION OF DOCUMENTS OR *IN CAMERA* REVIEW
AND
EVIDENTIARY HEARING ON MISSING DOCUMENTS**

Petitioner, through counsel, hereby requests that this Court order the Respondents ("Commonwealth") to produce certain documents, or for this Court to review the documents *in camera*. In addition, the Commonwealth represents that the Fayette County District Attorney's office has lost all of the critical files relating to Ellis Price. Petitioner asks the Court to conduct an evidentiary hearing to determine the circumstances that led to the loss or destruction of these critical documents. In support of the aforementioned, Petitioner states the following:

1. Petitioner is a death sentenced Pennsylvania prisoner who is currently seeking

federal habeas corpus relief from his conviction and sentence. At trial, Petitioner presented a voluntary intoxication defense and essentially conceded guilt to the charge of third degree murder. Consequently, the critical issue at trial was whether the Commonwealth could establish, beyond a reasonable doubt, that Mr. Breakiron acted with the specific intent to kill. The only direct evidence of this alleged intent to kill was elicited through the testimony of Commonwealth witness, Ellis Price. Price was a jailhouse informant who testified at trial to alleged statements made by Petitioner. Price claimed that Petitioner revealed to him a planned and premeditated act, contradicting Petitioner's defense theory that he was intoxicated and lacked the specific intent to kill. Mr. Price's testimony was therefore critical to the prosecution's case for first-degree murder. Throughout his testimony, Mr. Price insisted that he neither sought, hoped for, nor received any benefits from the Commonwealth as a result of his testimony.

  2. In Claim 4 of his habeas petition, Petitioner alleges, *inter alia*, that contrary to his statements at the time of trial, Mr. Price had substantial reason to curry favor with the Commonwealth. Shortly after he contacted the Commonwealth about testifying against Mark Breakiron, he received a unprecedented arrest of judgment after being found guilty of attempted murder by a jury. At the time of trial, the Commonwealth could have, but did not appeal this judgment. The Commonwealth's failure to disclose this information violated Petitioner's constitutional rights under Brady v. Maryland 373 U.S. 83 (1963) Napue v. Illinois, 360 U.S. 264, 269 (1959), Giglio v. United States, 405 U.S. 150 (1972) and their progeny.

  3. Upon further investigation into the circumstances of Price's testimony, Petitioner uncovered additional evidence that Ellis Price perjured himself when he testified that Mark Breakiron confessed to him and that he neither sought, hoped for, or expected any benefits as a

result of his testimony. This new evidence shows that Ellis Price and James "Silky" Sullivan invented Mr. Breakiron's confession and then wrote a letter to the then District Attorney offering to testify in exchange for benefits in their individual cases.[1] This account is corroborated by Ellis Price's brother, Robert Price, James Sullivan, and Clinton Conrad Blair (another prisoner involved in the scheme). It is also corroborated by the fact that there was a hearing before trial on the fact that Mr. Sullivan had solicited the district attorney for benefits in return for testifying against Breakiron. Sullivan was represented at the time by Mark Morrison, the special prosecutor appointed to prosecute Mark Breakiron. Accordingly, Petitioner moved to amend his habeas petition to expand Claim 4 to include this new information. In support of that motion, Petitioner presented affidavits from Mr. Sullivan, Robert Price, and investigator Pamela Tucker (relating statements made by Conrad Blair, another inmate involved in the scheme) attesting to those facts.

4. This Court ordered discovery and the Commonwealth has disclosed many documents responsive to Petitioner's requests.[2]

5. However, the Commonwealth identified several categories of items that it refuses to produce.

6. Petitioner respectfully disagrees with the Commonwealth's assertion of privilege

---

[1] Mr. Price sought benefits for his brother, Robert Price, as well.

[2] Among these documents was evidence of yet another criminal incident for which Ellis Price was never prosecuted. Eight days after Ellis Price shot and wounded Raymond Ricker and Richard Pletcher, Ellis was involved in an aggravated assault and robbery on Vincent Keith Sturbutzal. All of the participants in the Sturbutzal assault were charged, convicted and sentenced, except for Ellis Price. The police reports indicate that the police were specifically directed by the District Attorney's Office of Fayette County not to charge or prosecute Ellis Price.

and now requests that this Court order the Commonwealth to provide these items to Petitioner, or, in the alternative, that this Court review these documents in camera and determine which, if any, should be provided to Petitioner.

7. More troublingly, the Commonwealth also failed to provide any of the Fayette County District Attorney files relating to the prosecution and/or investigation of Ellis Price for various criminal activities. These missing files include the file relating to Price's prosecution and conviction for attempted murder, the grant of arrest of judgement, and the decision of the Commonwealth not to appeal. These files go to the heart of the discovery that was ordered, as they are the likely repository of evidence that Ellis Price sought, received, or expected to receive benefits as a result of his testimony against Mr. Breakiron. While the Commonwealth has submitted an affidavit from an employee of the District Attorney's office indicating that these files could not be found, there was no explanation of what happened to those files or when they were lost or destroyed. Because of the central importance of those files, Petitioner requests that this Court conduct an evidentiary hearing concerning the loss of those files.

**The Privilege Log**

8. The Commonwealth's privilege log lists twenty two (22) items which have been withheld on the basis of a claim of attorney work product. Petitioner respectfully disagrees and will address those items for which he seeks disclosure, or, in the alternative, *in camera* review by the court.

9. Item 1 is described as a "disposition sheet." The author, sender, recipient and date of preparation are listed as "unknown." No further information is provided. As there is no explanation of what a "disposition sheet" is, who it concerns, and what "disposition" it relates to,

neither Petitioner nor this Court have any basis upon which to assess its relevancy to the claims at issue here, or the legitimacy of the claim of attorney work product. For those reasons, Petitioner requests that this item be disclosed to him, or, alternatively, that this Court review it *in camera*.

      10.      Item 5 is described as an "autopsy report" prepared April 9, 1987 by forensic pathologist Maunal Palaez. The Commonwealth does not explain its claim of attorney work product. Such reports are routinely provided to defense counsel in homicide cases. There is no basis for the Commonwealth's claim, and the report should be provided to Petitioner or reviewed *in camera*.

      11.      Item 6 is described as a "PSP rap sheet" prepared on May 13, 1987. The author, recipient and sender are listed as "unknown." No further information is provided. The Commonwealth does not identify whose "rap sheet" it is, and provides no explanation for its claim of attorney work product. Neither Petitioner nor this Court have any basis upon which to assess the legitimacy of the claim of attorney work product. For those reasons, Petitioner requests that this item be disclosed to him, or reviewed *in camera*.

      12.      Item 10 is described as a "police report." The author, sender. recipient and date of preparation are listed as "unknown." No further information is provided. As there is no explanation of the subject matter of the police report, who it concerns, and what it relates to, neither Petitioner nor this Court have any basis upon which to assess its relevancy to the claims at issue here, or the legitimacy of the claim of attorney work product. For those reasons, Petitioner requests that this item be disclosed to him or reviewed *in camera* by this Court.

      13.      Item 11 is described as "plea offers." The author, sender, recipient and date of

preparation are listed as "unknown." No further information is provided. There is no explanation of which case(s) and which defendant(s) are the subject of the offers. However, the existence of "plea offers" go to the heart of Petitioner's claims that certain individuals, including Ellis Price sought, hoped for, and/or received benefits for testifying, or offering to testify, against Mr. Breakiron. These "plea offers" should be disclosed to Petitioner. Alternatively, they should, at a minimum, be reviewed by this Court *in camera*.

14. Item 21 is described as "exhibits." The author, sender. recipient and date of preparation are listed as "unknown." No further information is provided. As there is no explanation of the nature of these exhibits, or the subject matter or prosecution they pertain to, neither Petitioner nor this Court have any basis upon which to assess the legitimacy of the claim of attorney work product. For those reasons, Petitioner requests that this item be disclosed to him, or, alternatively, that this Court review it *in camera*.

15. Finally, in prior correspondence with counsel, counsel for Respondents indicated that he was asserting a work product privilege as to other classes of documents that contained specific references to Ellis Price:

1) Proposed questions for the witnesses, and notes of the main purpose of each witness (Item 16 of the Privilege Log);

2) Outline of points the prosecutor wanted to make during his opening statement, closing argument, and for argument on motions (Item No. 12);

3) To do lists (Item 13);

4) Various witness lists, some of which contain personal information such as the home address and telephone number of the witnesses (Item 15);

16. Petitioner requests that, solely to the extent the above items relate to, or directly

refer to, Ellis Price, that they be disclosed to Petitioner, or, alternatively, that this Court review those items *in camera*.

### The Disappearance of the Fayette County District Attorney's Files Relating to Ellis Price

17. The Commonwealth has claimed that all of the Fayette County District Attorney's files relating to the prosecution of Ellis Price are missing. These files contain all of the files relating to the prosecutions and investigations of Ellis Price, including the files relating to the attempted homicide conviction, the arrest of judgement, and the Commonwealth's decision not to appeal that arrest of judgement. Similarly missing was any documentation of the conversations between Mark Morrison (who prosecuted the case against Breakiron) and Ellis Price and James Sullivan. Since these files are the most likely locations of any documentation of any explicit *quid pro quo* that Ellis Price received in exchange for his testimony against Mr. Breakiron, it is problematic that they are missing.

18. The only explanation provided for the failure to produce these documents came in the form of an affidavit from Alexis Bisch, the office manager of the Fayette County District Attorney's Office, who states that she made a diligent search for the requested files and documents, but could not locate them. Undersigned counsel James Anderson inquired further of Mr. Carusone who had no additional explanation.

19. This explanation raises many questions. What happened to the Ellis Price files? Why are there files from Robert Price's prosecution for attempt murder, but no documents relating to his co-defendant, Ellis? Who last had possession and control of Ellis' files? Were Ellis' files deliberately destroyed in order to eliminate any documentation of his offers to testify

against Mr. Breakiron?

20. The inability of the Commonwealth to produce any files and documents relating to Ellis Price is, at best, suspicious. Undersigned counsel respectfully believes that further inquiry into the Fayette County District Attorney's Office loss of these files would be appropriate. Accordingly, Petitioner requests that this Court conduct a hearing on these issues. In the alternative, this Court should allow Petitioner to depose Ms. Bisch, Mr. Morrison, former District Attorney (now Judge) Gerald Solomon, and any other person who may be able to shed light on this issue.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court order the Commonwealth to provide Petitioner with the documents contained in Items No 1, 5, 6, 10, 11, 12, 13, 15, 16 & 21 of the Commonwealth's privilege log, or, alternatively, that this Court review those documents *in camera* and disclose to Petitioner such documents as this Court deems appropriate.

In addition, Petitioner requests this Court to inquire into the disappearance of the Fayette County District Attorney's files on Ellis Price either by a hearing or by permitting depositions.

Respectfully submitted,

*/s/ James Anderson*

_____
James Anderson, Esq.
Assistant Federal Public Defender
Capital Habeas Corpus Unit
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222-3714
(412) 644-6565

Stuart Lev, Esq.
Capital Habeas Corpus Unit
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545W -- The Curtis Center
Independence Sq. West
Philadelphia, PA 19106
(215) 928-0520

Dated: