Q    Um-hum.  So, what you are saying is then that Mr. Ricker
didn't tell the truth here in court when he said that he saw you
with this gun?

MR. CUPP:  Objection.  Mr. Ricker never
said that on the stand.

MR. WARMAN:  Mr. Pletcher, excuse me.

THE COURT:  With that correction, we will
not rule on your objection.

THE WITNESS:  He never seen me with that gun.

BY MR. WARMAN:

Q    You are saying he wasn't telling the truth?

A    That's correct, because if he seen me at all, at all, he had
to see me going to the driver's side.  See, either he -- see,
he couldn't have seen me.

Q    Okay.  Let me ask you a question.  You told us you went
out to the car, you went around to the passenger side of the
car?

A    Unlocked it.

Q    Unlocked the door, then you walked around the car to the
driver's side?

A    I was on my way around.

Q    Is that correct?

A    I wasn't at the driver's door.  I was on my way over to the
driver's door.

Q    Okay.  So, all you did was unlock the door on the passenger

-136-

side and then you started around the car; is that right?

A    No, when I opened the door or unlocked the door and Ellis

opened the door, I said, what about Kelly. He said -- by that

time, the guy was standing in the doorway. He said, I want

to come in and get Kelly. He said, no. I said, forget it.

I started to walk around to the driver's door to get in when

shots were fired, two shots were fired.

Q    Okay. So, you are telling us then that you started to

walk around before any shots were fired at Ricker?

A    That's correct.

Q    He said you were standing both together when the shots

were fired.

A    I don't see how -- see, that night -- at that entrance

door there to where my car was, the only thing he could possibly

see was that car and shadows. He could not see --

Q    Okay.

A    It was dark.

Q    So, now you are saying it was more than twenty feet, is that

what you are saying?

A    I don't know exactly how far it was. That was the first time

I was ever at that bar.

Q    Well, can you judge the distance at all, or were you in any

condition to judge the distance that night?

A    It was at least twenty-five to better, feet.

Q    At least twenty-five feet from the doorway?

-137-

A    From the entrance to my car.

Q    To where you were standing by your car?

A    Yes.

Q    And in a range of twenty-five feet, you are saying he was mistaken that you were not standing with Ellis when the shots were fired, you were walking around the car?

A    I was at least two to three, maybe four steps on my way to the back bumper when the shots were fired.

Q    So then he was wrong too when he said you were standing right together when the shots were fired?

A    Side by side when the gun went off?  No, I was not side by side.

Q    Where did Ellis get this gun?

A    I have no idea.

Q    You hadn't seen the gun at all?

A    No, that was the first time I seen it.  It is not a good thing to have on your possession especially on a New Year's night.

Q    I would say that is true.  You didn't know Raymond Ricker at all before that night?

A    No, sir.

Q    You didn't know Richard Pletcher at all before that night?

A    No.

                    MR. WARMAN:  I have no further questions.

                    THE COURT:  Mr. Izzo?

                    MR. IZZO:  Your Honor, I have no questions

-138-

of this witness.

THE COURT:  Very well.  Do you have anything further, Mr. Cupp?

MR. CUPP:  We have no further questions, Your Honor.

THE COURT: Very well.  That will be all.  You may step down.

(Witness excused)

MR. CUPP:  Your Honor, we would rest.

THE COURT:  May I see counsel at sidebar?

SIDEBAR CONFERENCE HELD OFF THE RECORD

MR. IZZO:  Your Honor, may I approach the bench?

SIDEBAR CONFERENCE HELD OFF THE RECORD

MR. IZZO:  Your Honor, at this time on behalf of Ellis Price, we will close.

THE COURT:  I don't quite understand.

MR. IZZO:  We are not going to present any evidence.

THE COURT:  You have no further testimony?

MR. IZZO:  That's correct, Your Honor.  We rest.

THE COURT:  Mr. Warman?

MR. WARMAN:  We have nothing further.

THE COURT:  Mr. Cupp, do you have any further

testimony?

MR. CUPP:  We have no further testimony.

THE COURT:  May I see counsel at sidebar?

SIDEBAR CONFERENCE HELD ON THE RECORD

THE COURT:  At our previous sidebar, I stated
to you, Mr. Izzo, that we are going to develop
a colloquy as to why your defendant did not
elect -- not as to why, but he is satisfied not
to take the witness stand, he was fully advised
he could, and also to get on the record whether
or not he wants me to make any comment to the
jury in my charge as to the fact that he did
not take the witness stand.

MR. IZZO:  Yes, that's correct, Your Honor,
and we appreciate that opportunity.  I have
discussed this with my client.  He has indicated
to me with no reservation that he did not wish
to take the stand, that the decision is based on
my advice.  He accepts and agrees with that.
He would like you to so charge the jury with the
standard charge or about reserving the right not
to testify.

THE COURT:  All right.  We will develop
that once the jury leaves to go to the jury room,
we will develop a colloquy.

MR. IZZO:  That will be fine, Your Honor.

THE COURT:  I have received a motion for judgment of acquittal on behalf of Ellis Price from Attorney Izzo.

MR. IZZO:  Your Honor, I have an additional citation for that that I would like an opportunity to argue.

THE COURT:  Do you want to argue this?

MR. IZZO:  After we let the jury out.

THE COURT:  All right.

MR. IZZO:  Thank you.

MR. CUPP:  Your Honor, I would like to orally move on the record for the acquittal of Robert Keith Price pursuant to Pennsylvania Rule of Criminal Procedure 1124(a)(2) that the quantity and quality of the evidence has not been sufficient to present to the jury for deliberation and consideration, and that the case against him should be dismissed.

THE COURT:  Do you want to argue this any further once we have the jury leave?

MR. CUPP:  I may want to after I hear Mr. Izzo's argument.

THE COURT:  All right.  What we will do now then, we will ask the jury to leave the courtroom,

and we will develop  the colloquy regarding

Ellis Price's not taking the witness stand.  Then

will counsel be ready after we argue their

motions for acquittal, will counsel be ready to

close to the jury?

      MR. CUPP:  I will be, Your Honor.

      MR. IZZO:  I can use about fifteen or

twenty minutes, I think, to just get

everything laced up.  I know my theory.

      THE COURT:  Mr. Warman, what about you?

      MR. WARMAN:  I'm ready.

      THE COURT:  All right.  What we will

do then is we will give the jury a recess until

such time as counsel is ready, and I also have

to put the finishing touches on my charge and

type the verdict slips.  So, we will tell the

jury that they are to remain in the jury room until

we call them back.

      MR. IZZO:  Thank you, Your Honor.

      MR. CUPP:  Thank you, Your Honor.

      END OF SIDEBAR CONFERENCE

      THE COURT:  Members of the jury, the

testimony is closed as I'm sure you know and what

remains are the arguments of the lawyers to you,

their closing arguments and my charge.  There

are some matters that the lawyers have asked to
present to me, some legal matters that I have
to decide upon. So, we are going to give you
a recess. The recess may be a little longer than
I would like to have it because I have also been
requested by one or two of the lawyers to give them
time to put their closing arguments together.
Also, I have to put my charge together, put
the finishing touches on my charge as well as
prepare the verdict slips. So, this is going to
be a little longer recess than our normal
morning recess. However, I am going to ask the
Tipstaff and the Matron to see whether any of you
would like to have some coffee or juice or whatever
during this recess to help pass the time. While
you are in the jury deliberation room, do not
discuss the case among yourselves. You are still
not ready to talk about the case, and do not
allow anyone to talk to you about the case. As
soon as we are ready for you to come out, I will
send for you promptly. You can be sure of that.
You may now go into the jury room.

(The jury panel was escorted into the jury deliberation room)

          THE COURT: Let the record show that the jury
is now in the jury deliberation room and that there

are no members of this week's jury panel in the
courtroom. At this time, I would like to develop
colloquy on the record with regard to Ellis
Price's not taking the witness stand to make
certain that this is a voluntarily and understanding
decision by him on his part not to take the
witness stand, and also if he continues with
his election not to take the witness stand, I
want to make certain of whether or not he wants
to make any comment in my charge to the jury
regarding the fact that he has elected, as he
has a right to, not to take the witness stand
and to remain silent and that no inference
may be had from the defendant, Ellis Price's,
election not to take the witness stand. You have
discussed this matter with Mr. Price, Mr. Izzo,
is that correct?

MR. IZZO:  I have, Your Honor, on numerous
occasions.

THE COURT:  All right.  What we would like
to do is I would like to have Mr. Ellis Price
placed on the witness stand under oath and
you ask him these questions, and then I may ask
him some questions to supplement the questions
that you ask.  Do you understand, Mr. Price,

-144-

what we are going to do now?

MR. ELLIS PRICE:  Yes, Your Honor.

THE COURT:  All right.

(Witness sworn)

ELLIS EUGENE PRICE, having first been duly sworn, was examined
and testified as follows:

### DIRECT EXAMINATION

BY MR. IZZO:

Q    Mr. Price, can you state your name for purposes of the
record?

A    My name is Ellis Eugene Price.

Q    Mr. Price, do you understand that this is a colloquy
being conducted outside the presence of the jury?

A    Yes, I do.

Q    And we are here to determine questions relative to your not
taking the stand to testify?

A    Yes, I do.

Q    Over the past couple of months, have we had any discussions
relative to whether you would testify on your own behalf in this
case?

A    Yes.

Q    During those discussions, did I give you advice as to my
legal opinion as to whether you should testify?

A    Yes, you did.

Q    What did we decide during each and every one of those

occasions concerning your testifying or not?

A       Not to take the stand.

Q       Speak up.

A       Not to take the stand.

Q       Do you understand that you have a constitutional right to take the stand and to present evidence on your own behalf?

A       Yes, I do.

Q       Do you understand that what you are doing by not taking the stand is waiving the right to present that testimony?

A       Yes, I do.

Q       Do you understand the various reasons, without disclosing them, the various reasons that you and I have discussed on which I based my opinion that you should not testify?

A       Yes.

Q       Are you in agreement with my reasonings and decision on that matter?

A       Yes, I do.

Q       Do you have any statements whatsoever that you feel you should or desire to make on the stand before the jury?

A       No.

Q       You are certain that there is no reason then in your best interests and for your defense why you should take the stand?

A       No.

Q       Would you state then for the record your final decision on whether or not you desire to take the stand in your own defense?

-146-

A    No.

Q    State it completely.  No what?

A    No, I do not want to take the stand.

Q    Okay.  Do you wish then to exercise your Fifth Amendment
right to remain silent?

A    Yes, I do.

Q    Along with exercising your Fifth Amendment right, do you
understand according to constitutional and Pennsylvania law,
that the jury may draw no inferences against you by your failure
to take the stand in your own defense?

A    Yes, I do.

Q    I'll remind you now of another thing we have discussed, and that
is the possibility of Judge Franks delivering an instruction
or charge to the jury specifically stating that the jury may
infer no bad inferences against you because you didn't take the stand
and that you have the absolute right not to take the stand.  Do
you remember discussing that with me?

A    Yes, I do.

Q    Do you recall what my legal advice to you was concerning
whether or not we should ask Judge Franks to make that
instruction?

A    Yeah.

Q    Okay.  What was my legal advice to you about having Judge
Franks make that instruction?

A    To, I guess, bring out my --

Q      Okay.  What I advised you then is that we should in fact ask
Judge Franks to instruct the jury on your remaining silent?

A      Right.

Q      Do you understand that the alternative would be to have
Judge Franks say nothing and let the jury more or less on their
own as to what they will think about your not testifying?

A      Yes.

Q      So, at this time, do you wish me as your counsel to ask
His Honor, Judge Franks, to make the standard jury instruction
which relates to your remaining silent?

A      Yes, I do.

Q      Okay.

                    MR. IZZO:  Anything else, Your Honor.

                    THE COURT:  I'll just ask a few questions.
          How old are you, Mr. Price?

                    THE WITNESS:  Twenty-six.

                    THE COURT:  How much schooling have you had?

                    THE WITNESS:  G.E.D.

                    THE COURT:  You do understand the English
          language?

                    THE WITNESS:  Yes, I do.

                    THE COURT:  Do you understand how to read
          and write?

                    THE WITNESS:  Yes, I do.

                    THE COURT:  Have you understood everything

that has been taking place up to this time
concerning your trial?

THE WITNESS: Yes, I do.

THE COURT: And the case against you?

THE WITNESS: Yes, I do.

THE COURT: Do you have any question or
anything you don't understand about what has been
taking place?

THE WITNESS: No.

THE COURT: Now, you have told us and your
lawyer has told us that you do not want to testify
on your behalf in your trial here today; is that
correct?

THE WITNESS: That's correct, Your Honor.

THE COURT: Now, although your attorney has
rested, has stated that he has no evidence to
present, nothing further to present, I would
be willing if you would want to take the witness
stand to have you take the witness stand and to
tell the jury what happened by way of questioning
from your attorney, but are you telling us today
that you do not want to take the witness stand
and testify at your trial and let the jury hear
your version of what occurred on January 1, 1986,
is that what you are saying?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Now, is this a matter of trial strategy that you and your lawyer has discussed over the several months he has been representing you?

THE WITNESS:  Yes, Your Honor.  It wasn't several months, but like --

THE COURT:  I'm not sure how long he has been representing you.  It has been a couple months, has it not?

MR. IZZO:  Almost a couple months.

THE WITNESS:  Yeah, almost a couple months.

THE COURT:  But this is a matter of trial strategy you have talked over with your lawyer back and forth; is that correct?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Have you understand everything that your lawyer has talked to you about your not taking the witness stand?

THE WITNESS:  Yes, Your Honor.

THE COURT:  And you are still persisting or insisting that you do not want to take the witness stand?

THE WITNESS:  Yes, Your Honor.

THE COURT:  You do understand that you do

have the right if you want to to take the witness stand?

THE WITNESS: Yes, Your Honor.

THE COURT: You also have the right to remain silent and not to take the witness stand.

THE WITNESS: Yes, Your Honor.

THE COURT: Now, you have not produced any witnesses on your behalf. Is that also part of your case or because you didn't have witnesses? Is it one or the other?

THE WITNESS: No.

THE COURT: Well, you have elected not to present any witnesses on your behalf.

THE WITNESS: Right.

THE COURT: You do understand that you have the right if you have witnesses to present those witnesses on your behalf?

THE WITNESS: Yes, Your Honor.

THE COURT: And that would include witnesses to this incident, that would include character witnesses who could testify regarding your character up to the time of this incident, and you have produced no evidence and no witnesses, and you have discussed this also with your lawyer?

THE WITNESS: Yes, Your Honor.

THE COURT: And are you satisfied with this course taken by you and your lawyer?

THE WITNESS: Yes, Your Honor.

THE COURT: Now, also, I might state to you, since you have no witnesses that were you to take the witness stand and should you have a criminal record of prior convictions, I would rule that you could take the witness stand and testify and those prior convictions could not be used against you because you have no other way to defend yourself. Do you understand that?

THE WITNESS: Yes, Your Honor.

THE COURT: Has that also been explained to you?

THE WITNESS: Yes, Your Honor.

THE COURT: So, as I say, I'm not certain, I have not checked your record, I don't know if you have a prior record, but if you do have a prior record, and if that is the reason that you are electing not to take the witness stand, that this record could be used against you, that because you have no witnesses, I would rule that that record could not be used against you, and you could testify and no mention would be made to the jury of your prior record. Do you

-152-

understand that?

THE WITNESS:  Yes, Your Honor.

THE COURT:  And this all has been discussed with you?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Now, have you had any medicines or drugs prior to your coming into the courtroom this morning?

THE WITNESS:  No, Your Honor.

THE COURT:  Have you had any medication in the past twenty-four hours?

THE WITNESS:  Just cold tablets.

THE COURT:  Where did you get those?

THE WITNESS:  At the County Jail.

THE COURT:  You are in the County Jail?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Are those in any way affecting your judgment and what you are telling us this morning?

THE WITNESS:  No, Your Honor.

THE COURT:  Do you clearly understand everything?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Have you had any alcoholic beverages within the past twenty-four hours?

THE WITNESS: No, Your Honor.

THE COURT: Do you have anything you want to ask me up to this point about what I have been telling you or what your lawyer has been telling you?

THE WITNESS: No, Your Honor.

THE COURT: Do you understand clearly everything that we are saying to you this morning?

THE WITNESS: Yes, Your Honor.

THE COURT: Now, also your lawyer asked you whether you wanted me in my charge, that is when I give the jury its instructions whether you wanted me to make a comment on the fact that you elected not to take the witness stand and that every defendant in a criminal trial has the absolute constitutional right not to take the witness stand and to remain silent and to present no evidence on his behalf either by the defendant's testifying and/or bringing in witnesses, and that the jury may not draw any inference of guilt from the fact that the defendant has not elected to testify. Now, do you want me to make such a statement to the jury, or would you want me to say nothing about the fact that you have no witnesses and you have not testified?

THE WITNESS:  Yes, I would like you to do
that.

THE COURT: Do what?

THE WITNESS:  To instruct the jury.

THE COURT:  Instruct the jury.  In other
words, you want me to tell them that you as every
criminal defendant has the absolute right not
to testify and that you have elected not to
do that in this case, elected not to produce
any witnesses, and that they may not infer any
guilt from the fact that you did not testify and
had no witnesses on your behalf.  That is what
you want me to tell the jury?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Is there anything that I have
been saying to you this morning that you want to
question me about?

THE WITNESS:  No, Your Honor.

THE COURT:  Up to this point, are you
satisfied with the representation, the counseling,
and the trial strategy employed by your lawyer
that has been appointed for you, Mr. Izzo?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Do you think that he has
adequately represented you in an effective and

competent manner up to this point?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you want to talk to him any more before we go on to the next business before the Court in this trial?

THE WITNESS: No, Your Honor.

THE COURT: Is there anything you want to ask me?

THE WITNESS: No, Your Honor.

THE COURT: Again, I ask you, it is your voluntary and understanding choice not to testify on your own behalf and put a defense before the jury in your trial?

THE WITNESS: Yes, Your Honor.

THE COURT: Very well. Mr. Warman, do you have anything that you want to ask regarding what we have been developing in this colloquy?

MR. WARMAN: No, Your Honor.

THE COURT: You may go back to the counsel table.

(Witness excused)

THE COURT: The Court is satisfied that the defendant, Ellis Roy Price, has voluntarily and understandably elected not to testify or produce any witnesses on his behalf, and we will advise the

jury that the defendant, Ellis Price, did not
have to testify, and he has a constitutional
right not to offer any testimony through himself
and/or witnesses and that no inference of guilt
may be had from his failure to offer any such
testimony.  We next have before us for consideration
on behalf of Ellis Price a motion for judgment of
acquittal.

    MR. IZZO:  Thank you, Your Honor.
A couple cases. Your Honor, at this time, I
am entering the motion for judgment of acquittal
with respect to my client, Ellis Price, and
the basis of my recent motion, Your Honor, is
looking at the Commonwealth's testimony in this
case, there has been no direct evidence presented
as to the individual inside of the white Chevy Nova
who was responsible or who actually shot a weapon
from inside of that car such as to blow out
the passenger window.  The Commonwealth's
evidence proves -- attempts to prove that my
client, Ellis Price, was in the driver's seat
of that car, that immediately before Robert Price
took his position in the passenger side of that
vehicle, he had in his possession a gun, a small
firearm that he had just discharged, and he

discharged this weapon, immediately moved to the passenger side of the vehicle, got in, sat down, and the Commonwealth's witness, Richard Pletcher, immediately followed Robert Price to the passenger side of the car, and it was at that time that Mr. Pletcher says a shot was fired from inside of the car coming through the passenger window and blowing that window out. The District Attorney based on those facts is going to ask this jury to find beyond a reasonable doubt that Ellis Price fired that shot. We have no conspiracy. We have no accomplice theory involved. There is no evidence that my client helped Robert Price fire that shot or facilitating that particular crime. There is absolutely no evidence of the intent of Ellis Price at the time he was sitting inside the white Chevy Nova. The Commonwealth will ask the jury and will argue, I'm certain when I'm finished, that the jury may infer from other testimony, circumstantial evidence surrounding that particular firing of the weapon, ask them to infer that Ellis was the active party there, and I would cite the Court to the case of Commonwealth versus McFadden found at 448 Pennsylvania page 146 and more particularly

to page 150 and the final page of that
paragraph, the Court states, it is toward the
bottom of the paragraph, such conclusion as to
one particular defendant's guilt depends too
much on conjecture and a criminal conviction based
wholly on inference, suspicion, and conjecture
may not stand. Now, the Court does say that if
it is based solely on inference, it can stand.
We have absolutely no direct evidence, no
real circumstantial evidence putting the gun
in Ellis Price's hand presented by the Commonwealth,
and on that basis, Your Honor, I would suggest
that Mr. Warman isn't even asking the jury to
infer. He is going to ask them to speculate.
They would have to speculate or enter into
some conjecture to put that weapon in Ellis
Price's hand. It would be a fair inference,
Your Honor, that Robert Price, after firing
a gun in the parking lot, went to the passenger
side as we know, got in the passenger side,
as we know from the Commonwealth's evidence,
and it is fair to infer from that that he was
the party that shot out the passenger window.
It is not fair to extend inferences to say that
the gun was transferred to Ellis Price while

he was driving out of the parking lot or even
moving there, preparing to start, that the gun
was transferred to him and that he shot across
the face of this defendant (indicating) and
blew out the window. I think that is a little
more than an inference. That is conjecture.
My position, Your Honor, is further accepted
by our courts in Commonwealth versus Frye,
a copy of which I have provided, which appears
at 264 Pennsylvania Superior Court Reports, page
212, and more particularly on page 215. I believe
I have indicated to the Court where that citation
lies, and it states, however, quote, a conviction
based solely on inference, suspicion, conjecture,
cannot stand, and further, may I remind the Court
it goes on to say, mere presence at or near the
scene of a crime is also insufficient to establish
guilt. I believe both of those theories cover
the situation we have. For those reasons, I ask
that the Court grant my motion for judgment of
acquittal with respect to the remaining charges
filed against Ellis Price.

MR. WARMAN: Your Honor, with all due respect
to the Court, it is the Commonwealth's position
that the Court's initial ruling in this case was

incorrect as far as dismissing the charges of
attempt to commit homicide, aggravated assault,
recklessly endangering and criminal conspiracy
involving this defendant with Raymond Ricker.
We believe, number one, that the proof that
has been presented by the Commonwealth reasonable --
could by a reasonable inference or does by a
reasonable inference indicate proof that this
defendant, Ellis Price, is guilty of being
an accomplice of Robert Price in the commission
of these crimes. I pointed out to the Court on
the record already the position of the Commonwealth
in that regard in that both individuals went out
of the building together, that they went around
to the passenger side of the vehicle, not to the
driver's side of the vehicle to leave, that they were
discussing, making some discussion as Mr. Ricker
came to the door of the building, that they asked to
be readmitted to the building, that at the point
when that was denied, a gun was pulled from inside
of the car which was readily accessible from
that area of the vehicle and as the gun was being
discharged, one person is moving towards the
entrance of the building and the other one moving
around to enter the vehicle, to make a get away,
that one of them gets in the vehicle, the other one

goes to the back -- back to the passenger side
of the vehicle and both of them flee the scene.

MR. IZZO:  Your Honor, if I may, I would
ask the District Attorney to present the facts
in a little more clear manner in that his evidence
showed that not one or the other of the defendants did
anything, but each by name was claimed to have
done certain acts.

MR. WARMAN:  This is argument and that is
all I'm doing is arguing.  I'm not testifying.

THE COURT:  I don't understand what you are
saying.

MR. IZZO:  I would just like the District
Attorney to present his argument in a little more
clear fashion with respect to his evidence on
which individual engaged in which acts rather
than saying one defendant did this, one defendant
did that.  He is apprised of the individual acts
of each defendant by his own witnesses to which
facts he is bound.

MR. WARMAN:  All I'm presenting is argument.
I can argue any way I want to.

THE COURT:  Of course, it ought to be such
that other lawyers can respond to it if he
feels necessary to respond.  So, if you can
and you know which person did which, I think that

is what Mr. Izzo is saying, recite the person.

MR. WARMAN:  In addition at this point,
Your Honor, we have testimony from Kelly Price
that the defendant, Ellis Price had a gun on
his presence inside of the bar, a firearm, and
in addition to that, now we have testimony from
Robert Price that Ellis Price shot out the
window of the vehicle at Mr. Pletcher, and I
would submit to the Court that the Court cannot
grant -- with all due respect, cannot grant the
motion for acquittal.  I would ask the Court to
give an accomplice instruction in this case and
permit us to argue accomplice theory to the jury.

THE COURT:  Who would be the accomplice in
this case, Mr. Warman?

MR. WARMAN:  They are both accomplices of
each other.  From the testimony introduced at this
point, Robert and Ellis are acting in concert
in this, and you don't have to have "x" is an
accomplice of "y".  They are both acting together.
They are both accomplices of each other, and one
is responsible for the other one's actions by
virtue of them being an accomplice.

THE COURT:  The Commonwealth's informations
seem to say at first one person is an accomplice

of the other and so forth.  However, I believe

that the law is that it need not -- even if the

informations state that one is the accomplice

of the other, that if it develops that the other

one may be an accomplice in fact or that both

are accomplices of each other, then the Court

may charge in view of that in that fashion, as

you are saying, even though your informations with

regard to, for example, Ellis Roy Price, the

criminal attempt, you state that he is an

accomplice.  That is, Ellis is an accomplice of

Robert Price, and then with regard to the aggravated

assault, you say that Ellis is an accomplice of

Robert Price, but I believe that we would be

correct in stating that each is the accomplice

of each other in this case, and we do intend

to instruct on an accomplice, and the motion for

judgment of acquital is refused.

    MR. WARMAN: Thank you, Your Honor.

    THE COURT:  Mr. Cupp, you had made an oral

motion at sidebar, and we had granted you leave

if you wanted to supplement your reasons to do

that at this time.

    MR. CUPP:  Yes, Your Honor.  It is my

position and Mr. Robert Price's position that

there has been a similar lack of evidence
introduced against him which would warrant any
consideration by this Court and this jury.  I think
that Mr. Izzo argued the cases quite well.  The
only thing is I think he erred when he said that
an inference could be drawn that Robert Price
was doing any shooting.  I don't think that
inference could intelligently be drawn.

THE COURT:  Even though we have an eyewitness
that said that they saw him shooting?

MR. CUPP:  They saw he had a gun.  They
did not say that he shot --

THE COURT:  Well, I think they said they
saw the fire coming from the gun.

MR. CUPP:  Yes, and the other witness
that the Commonwealth had clearly stated that
the man was inside the block enclosure at the
time the shots were fired and he couldn't have
seen the fire from the gun.  So, the contradiction
of the Commonwealth's two witnesses place in
serious doubt the credibility of Mr. Pletcher
as a witness.

THE COURT:  Isn't it for the jury to determine
credibility?

MR. CUPP:  The credibility of the witness is

indeed a question for the jury to decide.   There
has been -- there has additionally been no
evidence introduced at all which would lead
one to conclude that Mr. Robert Price fired the
gun inside of the car.   Indeed, there has been
direct   evidence to the contrary.

THE COURT:   What about as an accomplice?

MR. CUPP:   I fail to see where he has
aided Mr. Robert Price (sic) in doing anything.
I haven't heard any testimony that says he
assisted him in the commission of that crime
whatsoever.

THE COURT:   He could have gotten out of the
car, disavowed any part of this, but he continued
after the shooting at somebody outside the window
by whoever, he says it was his brother, and he
could have walked out.   He could have stopped,
but he continues to go.   He knows there is a gun.
He goes to the brother-in-law's house, and you know
in a situation like this it would be possible to
commit a perfect crime.   We have got three people
in a room, for example, and one of the three kills
somebody, and assuming they don't have fingerprints
and so forth, then you say that because you have
no items as to which one of the two did it and you

-166-

can't say that they are accomplices, then that
they should both get off. You have something
similar to that here. You have two people in a
car and the third one getting shot, and you
say that somebody from the car did the shooting.
I don't think that has been disputed, but you
can't point to which one, so you say they both
get off scott free because you can't point to which
one. So, you have the perfect killer.

MR. CUPP: Your Honor, we would argue that
the accomplice theory in this situation would
have to result solely on inference, suspicion,
and conjecture which cannot stand.

THE COURT: There is eyewitness testimony.
As to your man, there is somebody that testified
that they saw him with the gun.

MR. CUPP: That may be true as far as the
situation outside of the car, but inside of the car
there is no evidence as to what occurred, and to
assume that one party was the accomplice of
the other would require more than mere inference.

THE COURT: There is somebody that saw him
a few moments before that with a gun outside with
fire -- with light from the fire coming from the
gun he held in his hand. We have a witness that

said that and a few minutes later, we have
another gun going off inside of the car.
So, it is not just wholly inference or
speculation or conjecture with regard to your
client.  Do you have anything further?

    MR. CUPP:  No.

    THE COURT:  Mr. Warman?

    MR. WARMAN:  I have nothing further, Your
Honor.

    THE COURT:  In the case of Commonwealth
of Pennsylvania against Robert Keith Price,
we have an oral motion for judgment of acquittal,
and we will make this order:  And now, this
10th day of October, 1986, defendant, Robert Keith
Price's motion for judgment of acquittal is hereby
refused.  I believe that is all of the matters
that we need to take up in court -- those are all
of the matters that we need to take up in court at
this time, and I believe, Mr. Izzo, you had
requested some time to prepare your closing, and,
Mr. Cupp, I believe you also wanted some time.
Is that correct?

    MR. CUPP:  I don't need much time.

    THE COURT:  All right.  Mr. Warman, you
stated that you did not need any time, but we

are going to give all counsel some time
if not only to prepare your closings, but to
reflect your thoughts.  The Court also needs some
time to prepare the charge and to prepare the
verdict slips in this case.  So, we will take
a recess.

COURT RECESSED AT 10:34 A.M.

COURT RECONVENED AT 11:10 A.M.

THE COURT:  Mr. Izzo, are you prepared to
close to the jury?

MR. IZZO:  Yes, Your Honor, I am.

THE COURT:  You may do so.

MR. IZZO:  Thank you, Your Honor.

(Mr. Izzo made his closing argument to the jury panel)

(Mr. Cupp made his closing argument to the jury panel)

(Mr. Warman made his closing argument to the jury panel)

THE COURT:  Members of the jury, it is time
for our noon recess, and I'm not going to charge
you until after our lunch.  I have made
arrangements for you to be fed at a nearby
restaurant all together.  You will be returned
then at approximately one-thirty or so, and we
will resume the trial at that time, and I will give
you the charge of the Court, which is the law that
you will apply in this case.  Again, I caution

you, during this noon recess, you are not to

discuss the case among yourselves.  You are not

to talk to anyone about the case, nor permit

anyone to come to you to talk about the case.

If somebody tries to talk to you about the case,

you are to avoid talking to them and report it to the

Court.  Likewise, if you run into any news accounts

about the case, whether they be on the radio

or in the newspaper, you are to avoid those news

accounts during the noon recess. We will now recess

and we will be back about one-thirty this afternoon.

COURT RECESSED AT 12:00 P.M.

COURT RECONVENED AT 2:00 P.M.

<u>CHARGE OF THE COURT</u>

BY THE COURT:

MEMBERS OF THE JURY, AT THIS TIME I WILL GIVE YOU THE CHARGE

OF THE COURT WHICH IS THE LAW AND THE INSTRUCTIONS THAT YOU WILL USE

WHEN YOU DETERMINE WHAT THE FACTS ARE IN THIS CASE.  AS YOU KNOW,

THE DEFENDANTS, ROBERT KEITH PRICE AND ELLIS ROY PRICE, HAVE BEEN

CHARGED WITH THE CRIMES OF CRIMINAL ATTEMPT TO COMMIT CRIMINAL

HOMICIDE, AGGRAVATED ASSAULT, AND RECKLESSLY ENDANGERING ANOTHER

PERSON.  AS YOU FURTHER RECALL, THESE CHARGES ABOUT WHICH WE ARE

CONCERNED IN THIS TRIAL ARISE FROM INCIDENTS THAT OCCURRED IN THE

PARKING LOT OF TIGO'S LOUNGE IN NORTH UNION TOWNSHIP IN FAYETTE

COUNTY ON JANUARY 1, 1986.  AS I STATED TO YOU AT THE BEGINNING

OF THE TRIAL, THE CASES INVOLVING THESE TWO MEN HAVE BEEN
CONSOLIDATED FOR TRIAL BECAUSE THEY ARISE OUT OF THE SAME SET OF
FACTS.  ALSO, YOU WILL RECALL THAT I REMOVED FROM THIS CASE CERTAIN
CRIMES AS A MATTER OF LAW.  YOU ARE NOT TO CONCERN YOURSELVES
WITH THE REASONS FOR MY RULINGS ON THOSE MATTERS.  ALSO, YOUR
DECISION IN THIS CASE MUST NOT BE AFFECTED BY MY RULINGS IN
REMOVING FOR YOUR CONSIDERATION CERTAIN OFFENSES IN THESE CASES.
AS JURORS, IT IS GOING TO BE UP TO YOU AND YOU ALONE TO DECIDE
WHAT THE TRUE FACTS ARE.  IN ORDER TO DETERMINE THE FACTS,
YOU WILL WEIGH AND ANALYZE CAREFULLY THE TESTIMONY OF ALL OF THE
WITNESSES WHO TESTIFIED DURING THE COURSE OF THE TRIAL REGARDLESS
OF WHICH SIDE CALLED THE WITNESSES TO THE WITNESS STAND, AND
YOU WILL HAVE TO DETERMINE THE CREDIBILITY AND THE BELIEVABILITY
OF THOSE WITNESSES.  HOWEVER, IT IS YOUR SWORN DUTY TO ACCEPT
WITHOUT QUESTION THE LAW AS I GIVE IT TO YOU AND TO ACCEPT IT AS
THE CORRECT LAW THAT GOVERNS THIS CASE.  YOU HAVE NO RIGHT
WHATSOEVER TO SUBSTITUTE ANY OTHER RULE OR ANY OTHER LAW THAT YOU
THINK MIGHT BE MORE DESIRABLE.  I AM ALSO INSTRUCTING YOU AT THIS
TIME THAT YOU ARE TO PERFORM YOUR DUTIES IN ACCORDANCE WITH THE
LAW AS I GIVE IT TO YOU AND THAT YOU ARE TO PERFORM THOSE DUTIES
WITHOUT BIAS, PREJUDICE, OR SYMPATHY TO ANYONE.  THE LAW DOES
NOT PERMIT JURORS TO BE GOVERNED BY BIAS, PREJUDICE, OR SYMPATHY.
BOTH THE ACCUSED, THAT IS THE DEFENDANTS ON TRIAL, AND THE PUBLIC
EXPECT YOU TO CAREFULLY AND IMPARTIALLY CONSIDER ALL OF THE
EVIDENCE IN THE CASE AND THAT YOU WILL FOLLOW THE LAW AS THE COURT

-171-

GIVES IT TO YOU, AND THAT YOU WILL RENDER VERDICTS IN THESE
CASES REGARDLESS OF THE CONSEQUENCES.

THE EVIDENCE IN THESE CASES CONSISTS OF COURSE OF THE
TESTIMONY OF THE VARIOUS WITNESSES WHO TESTIFIED.  IN ADDITION
TO THAT EVIDENCE, THERE ARE ALSO THE INFERENCES THAT YOU CONCLUDE
ARE JUSTIFIED FROM THE FACTS THAT YOU BELIEVE HAVE BEEN PROVEN IN
THESE CASES.  ALTHOUGH WE SAY TO YOU THAT YOU ARE TO CONSIDER
ONLY THE EVIDENCE, YOUR CONSIDERATION IS NOT LIMITED SOLELY TO
THE BALD STATEMENTS OF THE WITNESSES.  WHAT I AM SAYING TO YOU
IS THAT YOU ARE NOT LIMITED SOLELY TO WHAT YOU HEARD OR WHAT YOU SAW
FROM THE WITNESS STAND.  ON THE CONTRARY, YOU ARE PERMITTED TO
DRAW FROM THE FACTS THAT YOU DETERMINE HAVE BEEN PROVEN IN THESE
CASES SUCH REASONABLE INFERENCES WHICH YOU ARE JUSTIFIED -- WHICH
YOU FIND ARE JUSTIFIED IN LIGHT OF YOUR OWN LIFETIME EXPERIENCES.
WHAT DO WE MEAN BY INFERENCES?  INFERENCES ARE SIMPLY DEDUCTIONS
OR CONCLUSIONS WHICH YOU ARE LED TO DRAW FROM THE PROOF OF FACTS
WHICH YOU BELIEVE HAVE BEEN ESTABLISHED FROM THE EVIDENCE IN
THE CASES.  I ALSO CALL YOUR ATTENTION TO THE FACT THAT THE
SPEECHES OR ARGUMENTS THAT THE LAWYERS HAVE MADE TO YOU,
INCLUDING ANY OPINIONS THAT THEY MAY HAVE EXPRESSED ABOUT THE
EVIDENCE IN THESE CASES, THAT THESE ARGUMENTS OR STATEMENTS
ARE NOT EVIDENCE AND SHOULD NOT BE CONSIDERED BY YOU AS EVIDENCE.
HOWEVER, IN DECIDING THESE CASES, YOU SHOULD CONSIDER THE
ARGUMENTS THAT THE LAWYERS MADE TO YOU AS THEY MAY SHED LIGHT
ON HELPING YOU TO DETERMINE WHAT YOUR VERDICTS SHOULD BE IN THESE

CASES. IT IS A RIGHT, IN FACT, IT IS A DUTY OF EACH LAWYER TO
DISCUSS THE EVIDENCE IN A MANNER WHICH IS MOST FAVORABLE TO HIS
SIDE. THEREFORE, YOU SHOULD BE GUIDED BY EACH LAWYER'S ARGUMENTS
TO THE EXTENT THAT THEY ARE SUPPORTED BY THE EVIDENCE AND
INSOFAR AS THOSE ARGUMENTS MAY HELP YOU IN ARRIVING AT YOUR OWN
REASON AND COMMON SENSE. I TELL YOU THAT YOU ARE NOT REQUIRED TO
ACCEPT THE ARGUMENTS OR THE SPEECHES OF THE LAWYERS BECAUSE IT IS
UP TO YOU AND YOU ALONE TO DECIDE THE CASE BASED ON THE EVIDENCE
AS IT WAS PRESENTED IN THE COURTROOM AND IN ACCORDANCE WITH
THE LAW AS THE COURT GIVES IT TO YOU.

I WOULD ALSO LIKE TO CALL YOUR ATTENTION TO THE FACT THAT
THE QUESTIONS THAT THE LAWYERS ASKED THE WITNESSES ARE NOT EVIDENCE.
IT IS THE ANSWERS TO THOSE QUESTIONS THAT CONSTITUTE THE
EVIDENCE IN THE CASE.

AS I HAVE STATED TO YOU, THE DEFENDANTS IN THIS CASE ARE
BOTH CHARGED WITH CRIMINAL ATTEMPT TO COMMIT CRIMINAL HOMICIDE.
THE DEFENDANT, ROBERT PRICE, IS ON TRIAL ON TWO COUNTS OF CRIMINAL
ATTEMPT TO COMMIT CRIMINAL HOMICIDE. ELLIS PRICE IS CHARGED WITH
ONE COUNT OF CRIMINAL ATTEMPT TO COMMIT CRIMINAL HOMICIDE. AT
THIS TIME, I WILL GIVE YOU THE ELEMENTS AS DEFINED BY OUR LAW
NECESSARY TO CONVICT ANYONE OF THE CRIME OF CRIMINAL ATTEMPT TO
COMMIT CRIMINAL HOMICIDE. THE DEFINITION IN OUR CRIMES CODE OF
CRIMINAL ATTEMPT IS AS FOLLOWS: A PERSON COMMITS AN ATTEMPT
WHEN WITH INTENT TO COMMIT A SPECIFIC CRIME HE DOES ANY ACTS WHICH
CONSTITUTE A SUBSTANTIAL STEP TOWARDS THE COMMISSION OF THAT

-173-

CRIME. OUR CRIMINAL CODE FURTHER STATES THAT IT SHALL NOT BE
A DEFENSE TO A CHARGE OF ATTEMPT THAT BECAUSE OF MISAPPREHENSION
OF THE CIRCUMSTANCES, IT WOULD HAVE BEEN IMPOSSIBLE FOR THE ACCUSED
TO COMMIT THE CRIME ATTEMPTED. NOW, FOR THE PURPOSES OF THIS
CASE OF THESE CASES, THE CRIME OF CRIMINAL HOMICIDE, THE CRIME
FOR WHICH THESE DEFENDANTS IN THIS CASE ARE CHARGED WITH HAVING
ATTEMPTED MAY BE DEFINED AS FOLLOWS: A PERSON IS GUILTY OF CRIMINAL
HOMICIDE IF HE INTENTIONALLY, KNOWINGLY, RECKLESSLY, OR NEGLIGENTLY
CAUSES THE DEATH OF ANOTHER HUMAN BEING. NOW, IN ORDER TO FIND
THE DEFENDANTS IN THESE CASES GUILTY OF CRIMINAL ATTEMPT TO COMMIT
CRIMINAL HOMICIDE, YOU MUST BE SATISFIED THAT THE FOLLOWING THREE
ELEMENTS HAVE BEEN PROVEN TO YOU BY THE COMMONWEALTH BEYOND A REASON-
ABLE DOUBT. FIRST, THAT THE PARTICULAR DEFENDANT DID A CERTAIN
ACT, THAT IS THAT THE DEFENDANT, ROBERT PRICE, DISCHARGED A FIREARM
AT RAYMOND RICKER CAUSING A BULLET TO STRIKE HIM, AND THAT THE
DEFENDANTS, EITHER INDIVIDUALLY OR AS ACCOMPLICES, DISCHARGED A
FIREARM THROUGH AN OPEN WINDOW AT RICHARD PLETCHER. SECONDLY,
THAT THE DEFENDANT OR DEFENDANTS DID THE ACT OR ACTS WITH
INTENT TO COMMIT THE CRIME OF CRIMINAL HOMICIDE. THIRD, THAT
THE ACT OR ACTS CONSTITUTED A SUBSTANTIAL STEP TOWARDS THE
COMMISSION OF THE CRIME OF CRIMINAL HOMICIDE. A PERSON INTENDS
TO COMMIT THE CRIME OF CRIMINAL HOMICIDE BY DISCHARGING A DEADLY
WEAPON UPON A VITAL PART OF A PERSON'S BODY OR IN THE DIRECTION
OF A PERSON'S BODY. A PERSON CANNOT BE GUILTY OF AN ATTEMPT TO
COMMIT A CRIME UNLESS HE HAS A FIRM INTENT TO COMMIT THE CRIME.

IF HE HAS NOT DEFINITELY MADE UP HIS MIND, IF HIS PURPOSE IS
UNCERTAIN OR WAIVERING, THEN HE LACKS THE KIND OF INTENT WHICH
IS REQUIRED FOR AN ATTEMPT.    ALSO, A PERSON CANNOT BE GUILTY OF
AN ATTEMPT TO COMMIT A CRIME UNLESS HE DOES AN ACT WHICH
CONSTITUTES A SUBSTANTIAL STEP TOWARDS THE COMMISSION OF THAT
CRIME.    AN ACT IS A SUBSTANTIAL STEP IF IT IS A MAJOR STEP
TOWARDS THE COMMISSION OF THE CRIME, AND ALSO STRONGLY CORROBORATES
THE JURY'S BELIEF THAT THE PERSON AT THAT TIME THAT HE DID THE
ACT HAD A FIRM INTENT TO COMMIT THE CRIME ATTEMPTED.

NOW, IF YOU ARE SATISFIED THAT THESE THREE ELEMENTS
OF THE ATTEMPTED CRIMES IN THESE CASES HAVE BEEN PROVEN TO YOU
BY THE COMMONWEALTH BEYOND A REASONABLE DOUBT, THEN YOU SHOULD
FIND THE DEFENDANT OR DEFENDANTS GUILTY OF CRIMINAL ATTEMPT TO COMMIT
THE CRIME OF CRIMINAL HOMICIDE.    HOWEVER, IF YOU ARE NOT SATISFIED
THAT THE COMMONWEALTH HAS PROVEN TO YOU ALL THREE OF THESE ELEMENTS
BEYOND A REASONABLE DOUBT, THEN YOU SHOULD FIND THE DEFENDANT OR
DEFENDANTS NOT GUILTY.

AS YOU ALSO KNOW, THE DEFENDANTS IN THIS CASE ARE CHARGED
WITH THE CRIME OF AGGRAVATED ASSAULT.    THE DEFENDANT, ROBERT PRICE,
IS CHARGED WITH THAT OFFENSE IN TWO COUNTS, AND THE DEFENDANT,
ELLIS PRICE, IN ONE COUNT.    TO FIND THE DEFENDANTS GUILTY OF THIS
CRIME, THE COMMONWEALTH, THAT IS THE STATE MUST ESTABLISH
BEYOND A REASONABLE DOUBT ALL OF THE ELEMENTS FOR THIS CRIME.
IN THIS CASE, THE COMMONWEALTH IS RELYING UPON TWO THEORIES
FOR PROVING THE OFFENSE OF AGGRAVATED ASSAULT.    AS TO ONE THEORY

-175-

THERE ARE TWO ELEMENTS WHICH THE COMMONWEALTH MUST PROVE BEYOND

A REASONABLE DOUBT.  FIRST, THE COMMONWEALTH MUST PROVE BEYOND A

REASONABLE DOUBT THAT THE DEFENDANT OR DEFENDANTS CAUSED OR

ATTEMPTED TO CAUSE SERIOUS BODILY INJURY TO A PERSON.  IN THIS

CASE, A MR. RICKER AND A MR. PLETCHER.  THE SECOND ELEMENT THAT

THE COMMONWEALTH MUST PROVE BEYOND A REASONABLE DOUBT IS THAT

THE DEFENDANT OR DEFENDANTS ACTED INTENTIONALLY, KNOWINGLY, OR

RECKLESSLY UNDER CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE

TO THE VALUE OF HUMAN LIFE.  THE OTHER THEORY UPON WHICH THE

COMMONWEALTH RELIES FOR AGGRAVATED ASSAULT IS THAT THE DEFENDANT

OR DEFENDANTS CAUSED OR ATTEMPTED TO CAUSE BODILY INJURY TO A

PERSON.  IN THIS CASE, A MR. RICKER AND MR. PLETCHER.  AND THAT

THIS WAS CAUSED OR ATTEMPTED TO BE CAUSED WITH A DEADLY WEAPON.

I SUBMIT TO YOU, MEMBERS OF THE JURY, THAT UNDER THE LAW,

A REVOLVER OR HANDGUN IS A DEADLY WEAPON.  THE LAW DEFINES

A DEADLY WEAPON IN THIS FASHION:  A DEADLY WEAPON IS ANY

DEVISE DESIGNED AS A WEAPON AND CAPABLE OF PRODUCING DEATH OR

SERIOUS BODILY INJURY.  A PERSON ACTS INTENTIONALLY WITH RESPECT

TO SERIOUS BODILY INJURY WHEN IT IS HIS CONSCIOUS OBJECT OR PURPOSE

TO CAUSE SUCH INJURY.  A PERSON ACTS KNOWINGLY WITH RESPECT TO

SERIOUS BODILY INJURY WHEN HE IS AWARE THAT IT IS PRACTICALLY

CERTAIN THAT HIS CONDUCT WILL CAUSE THAT RESULT. A PERSON ACTS

RECKLESSLY WITH RESPECT TO SERIOUS BODILY INJURY WHEN HE CONSCIEN-

TIOUSLY DISREGARDS A SUBSTANTIAL AND UNJUSTIFIABLE RISK THAT

SERIOUS BODILY INJURY WILL RESULT FROM HIS CONDUCT.  THE RISK,

-176-

HOWEVER, MUST BE OF SUCH A NATURE AND OF SUCH A DEGREE THAT
CONSIDERING THE NATURE AND THE INTENT OF THE DEFENDANT'S CONDUCT
AND THE CIRCUMSTANCES KNOWN TO HIM, THAT ITS DISREGARD INVOLVES A
GROSS DEVIATION FROM THE STANDARD OF CONDUCT THAT A REASONABLE
PERSON WOULD OBSERVE IN THE DEFENDANT'S SITUATION.  NOW, IF AFTER
CONSIDERING ALL OF THE EVIDENCE IN THIS CASE YOU FIND THAT THE
COMMONWEALTH HAS ESTABLISHED THE ELEMENTS FOR EITHER OR BOTH
OF THESE THEORIES FOR AGGRAVATED ASSAULT BEYOND A REASONABLE
DOUBT, THEN YOU SHOULD FIND THE DEFENDANT OR DEFENDANTS GUILTY
OF AGGRAVATED ASSAULT.  ON THE OTHER HAND, IF AFTER YOU CONSIDER
ALL OF THE EVIDENCE IN THE CASE AND THE LAW AS I GIVE IT TO YOU,
IF YOU ARE NOT SATISFIED THAT THE COMMONWEALTH HAS PROVEN BEYOND
A REASONABLE DOUBT THE ELEMENTS FOR THE CRIME OF AGGRAVATED
ASSAULT UNDER EITHER THEORY, THEN YOU MUST FIND THE DEFENDANT
OR DEFENDANTS NOT GUILTY OF AGGRAVATED ASSAULT.

THE OTHER OFFENSE FOR YOUR DETERMINATION IN THIS CASE IS THE
CRIME OF RECKLESSLY ENDANGERING ANOTHER PERSON.  IN THIS CASE,
THE DEFENDANT, ELLIS PRICE, IS ACCUSED OF ONE COUNT OF RECKLESSLY
ENDANGERING ANOTHER PERSON, AND THE DEFENDANT, ROBERT PRICE, IS
CHARGED WITH TWO COUNTS OF RECKLESSLY ENDANGERING ANOTHER PERSON.
IN ORDER TO FIND THE DEFENDANT OR DEFENDANTS GUILTY OF THIS
OFFENSE, THE COMMONWEALTH AGAIN MUST PROVE TO YOU BEYOND A
REASONABLE DOUBT THE ELEMENTS FOR THIS OFFENSE.  THE
COMMONWEALTH MUST PROVE BEYOND A REASONABLE DOUBT THAT THE
DEFENDANT OR DEFENDANTS RECKLESSLY ENGAGED IN CONDUCT WHICH PLACED

OR MAY HAVE PLACED MR. RICKER AND/OR MR. PLETCHER IN DANGER OF
DEATH OR SERIOUS BODILY INJURY.  AS I HAVE PREVIOUSLY STATED,
PERSON ACTS RECKLESSLY WITH REGARD TO SERIOUS BODILY INJURY WHEN
HE CONSCIOUSLY DISREGARDS A SUBSTANTIAL AND UNJUSTIFIABLE RISK
THAT SERIOUS BODILY INJURY WILL RESULT FROM HIS CONDUCT.  THE
RISK, HOWEVER, MUST BE OF SUCH A NATURE AND DEGREE THAT CONSIDERING
THE NATURE AND INTENT OF THE DEFENDANT'S CONDUCT AND THE
CIRCUMSTANCES KNOWN TO HIM, ITS DISREGARD INVOLVES A GROSS
DEVIATION FROM THE STANDARD OF CONDUCT THAT A REASONABLE PERSON WOULD
OBSERVE IN THE DEFENDANT'S SITUATION.  NOW, IF AFTER CONSIDERING
ALL OF THE LAW IN THE CASE AS I GIVE IT TO YOU AND THE EVIDENCE
IF YOU FIND THAT THE COMMONWEALTH HAS PROVEN BEYOND A REASONABLE
DOUBT THESE ELEMENTS FOR THE CRIME OF RECKLESSLY ENDANGERING
ANOTHER PERSON, THEN YOU SHOULD FIND THE DEFENDANT OR DEFENDANTS
GUILTY OF THE CRIME OF RECKLESSLY ENDANGERING ANOTHER PERSON.
HOWEVER, IF YOU FIND THAT THE COMMONWEALTH HAS NOT PROVEN
BEYOND A REASONABLE DOUBT ALL OF THE ELEMENTS FOR THE OFFENSE
OF RECKLESSLY ENDANGERING ANOTHER PERSON, THEN YOU MUST FIND THE
DEFENDANT OR DEFENDANTS NOT GUILTY OF THE CRIME OF RECKLESSLY
ENDANGERING ANOTHER PERSON.

I WOULD LIKE TO PUT BEFORE YOU A COUPLE OF DEFINITIONS WITH
REGARD TO THE TERMS BODILY INJURY AND SERIOUS BODILY INJURY THAT
I HAVE BEEN USING. THE LAW DEFINES BODILY INJURY AS FOLLOWS:
BODILY INJURY MEANS IMPAIRMENT OF PHYSICAL CONDITION OR SUBSTANTIAL
PAIN.  THE LAW DEFINES SERIOUS BODILY INJURY AS FOLLOWS:

THE IMPAIRMENT OF PHYSICAL CONDITION WHICH CREATES A SUBSTANTIAL

RISK OF DEATH OR WHICH CAUSES SERIOUS PERMANENT DISFIGUREMENT

OR PROTRACTED LOSS OF IMPAIRMENT OR IMPAIRMENT OF THE FUNCTION OF

ANY BODILY MEMBER OR PART.

NOW, IN THIS CASE, THE COMMONWEALTH CONTENDS THAT THESE

DEFENDANTS WERE ACCOMPLICES IN THE COMMISSION OF THE CRIMES

CHARGED.  YOU MAY FIND A DEFENDANT GUILTY OF A CRIME WITHOUT

FINDING THAT HE PERSONALLY ENGAGED IN THE CONDUCT REQUIRED FOR

THE COMMISSION OF THAT CRIME.  A DEFENDANT IS GUILTY OF A CRIME

IF HE IS AN ACCOMPLICE OF ANOTHER PERSON WHO COMMITS THE CRIME.

A DEFENDANT DOES NOT BECOME AN ACCOMPLICE MERELY BY BEING PRESENT

AT THE SCENE OR KNOWING ABOUT THE CRIME.  HE IS AN ACCOMPLICE IF WITH

THE INTENT OF PROMOTING OR FACILITATING THE COMMISSION OF THE CRIME,

HE SOLICITS,  COMMANDS, ENCOURAGES OR REQUESTS THE OTHER PERSON

TO COMMIT IT, OR AIDS, AGREES TO AID, OR ATTEMPTS TO AID THE OTHER

PERSON IN PLANNING OR COMMITTING IT.  IT WILL BE UP TO YOU,

MEMBERS OF THE JURY, TO DETERMINE FROM THE FACTS IN THIS CASE --

IN THESE CASES, WHETHER OR NOT THE DEFENDANTS WERE ACCOMPLICES.

THE EVIDENCE IN THIS CASE HAS BEEN OF TWO DIFFERENT TYPES.

ON THE ONE HAND, THERE IS DIRECT EVIDENCE, WHICH IS TESTIMONY BY

A WITNESS FROM HIS OR HER OWN PERSONAL KNOWLEDGE SUCH AS SOMETHING

HE OR SHE SAW OR HEARD.  THE OTHER TYPE IS CIRCUMSTANTIAL EVIDENCE

WHICH IS TESTIMONY ABOUT FACTS WHICH POINT TO THE EXISTENCE OF

OTHER FACTS WHICH ARE IN QUESTION.  AN EXAMPLE OFTEN GIVEN OF

CIRCUMSTANTIAL EVIDENCE IS THIS:  YOU GO TO BED ONE NIGHT, AND

YOU LOOK OUT THE WINDOW AND EVERYTHING IS DRY, EVERYTHING IS
BLACK OUTSIDE.  YOU WAKE UP IN THE MORNING AND YOU LOOK OUT
YOUR WINDOW AND YOU SEE SNOW OVER EVERYTHING, OVER THE SIDEWALK,
OVER THE HOUSES, OVER THE CARS.  THERE IS -- BY CIRCUMSTANTIAL
EVIDENCE, YOU CAN SAY THAT DURING THE NIGHT WHILE YOU SLEPT IT
SNOWED, ALTHOUGH YOU DID NOT SEE IT SNOWING.  ONE FACT LEADS
TO ANOTHER FACT.  THAT IS A SIMPLE EXAMPLE OFTEN USEDFOR WHAT
WE MEAN BY CIRCUMSTANTIAL EVIDENCE.

NOW, WHETHER OR NOT CIRCUMSTANTIAL EVIDENCE IS PROOF OF
OTHER FACTS IN QUESTION DEPENDS IN PART ON THE APPLICATION OF
COMMON SENSE AND HUMAN EXPERIENCE.  YOU SHOULD RECOGNIZE THAT
IT IS SOMETIMES NECESSARY TO RELY UPON CIRCUMSTANTIAL EVIDENCE
IN CRIMINAL CASES, PARTICUALLY WHERE THE CRIME IS COMMITTED IN
SECRET.  IN DECIDING WHETHER OR NOT TO ACCEPT CIRCUMSTANTIAL
EVIDENCE AS PROOF OF THE FACTS IN QUESTION, YOU MUST BE SATISFIED,
FIRST, THAT THE TESTIMONY OF THE WITNESS IS TRUTHFUL AND ACCURATE,
AND, SECOND, THAT THE EXISTENCE OF THE FACTS THE WITNESS TESTIFIES
TO LEADS TO THE CONCLUSION THAT THE FACTS IN QUESTION ALSO HAPPENED.
NOW, CIRCUMSTANTIAL EVIDENCE ALONE MAY BE SUFFICIENT TO PROVE THE
DEFENDANT'S GUILT.  IF THERE ARE SEVERAL SEPARATE PIECES OF
CIRCUMSTANTIAL EVIDENCE, IT IS NOT NECESSARY THAT EACH PIECE STANDING
ALONE SEPARATELY CONVINCE YOU OF THE DEFENDANT'S GUILT BEYOND
A REASONABLE DOUBT.  INSTEAD, BEFORE YOU MAY FIND THE DEFENDANT
GUILTY, ALL OF THE PIECES OF CIRCUMSTANTIAL EVIDENCE WHEN CONSIDERED
TOGETHER MUST REASONABLY AND NATURALLY LEAD YOU TO THE CONCLUSION

THAT THE DEFENDANT IS GUILTY AND MUST CONVINCE YOU OF THE DEFENDANT'S
GUILT BEYOND A REASONABLE DOUBT. IN OTHER WORDS, YOU MAY FIND A
DEFENDANT GUILTY BASED ON CIRCUMSTANTIAL EVIDENCE ALONE, BUT ONLY
IF THE TOTAL AMOUNT AND QUALITY OF THAT EVIDENCE CONVINCES YOU
OF THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT.

IN THIS CASE, THERE WAS EVIDENCE WHICH SHOWED THAT THE
DEFENDANTS LEFT THE SCENE AT THE TIGO LOUNGE'S PARKING LOT.
GENERALLY SPEAKING, WHEN A CRIME HAS BEEN COMMITTED AND A PERSON
THINKS HE IS OR MAY BE ACCUSED OF COMMITTING IT, AND HE FLEES,
SUCH FLIGHT IS A CIRCUMSTANCE TENDING TO PROVE THE PERSON IS
CONSCIOUS OF GUILT. SUCH FLIGHT DOES NOT NECESSARILY SHOW
CONSCIOUSNESS OF GUILT IN EVERY CIRCUMSTANCE. A PERSON MAY
FLEE FOR SOME OTHER REASON AND MAY DO SO EVEN THOUGH INNOCENT.
WHETHER THE EVIDENCE OF FLIGHT IN THIS CASE SHOULD BE LOOKED UPON
AS TENDING TO PROVE GUILT DEPENDS UPON THE FACTS AND THE
CIRCUMSTANCES IN THE CASE AND ESPECIALLY UPON THE REASONS THAT
MAY HAVE PROMPTED THE FLIGHT. YOU MAY NOT FIND THE DEFENDANT
OR DEFENDANTS GUILT SOLELY ON THE BASIS OF FLIGHT.

I WOULD ALSO LIKE TO CALL YOUR ATTENTION TO THE FACT THAT
THE DEFENDANT, ELLIS PRICE, DID NOT TAKE THE WITNESS STAND AND
DID NOT OFFER ANY WITNESSES ON HIS BEHALF. IT IS ENTIRELY UP TO
A DEFENDANT IN EVERY CRIMINAL TRIAL WHETHER OR NOT TO TESTIFY.
HE HAS AN ABSOLUTE RIGHT FOUNDED ON THE CONSTITUTION TO REMAIN
SILENT. YOU MAY NOT DRAW ANY INFERENCE OF GUILT FROM THE FACT
THAT THE DEFENDANT, ELLIS PRICE, DID NOT TESTIFY IN THIS CASE, OR

FROM THE FACT THAT HE OFFERED NO TESTIMONY BY WITNESSES.  A
DEFENDANT IS PRESUMED TO BE INNOCENT, AND THE COMMONWEALTH MUST
PROVE HIS GUILT BY EVIDENCE BEYOND A REASONABLE DOUBT.  A
DEFENDANT IN A TRIAL OF A CRIMINAL CASE NEEDS NOT PROVE ANYTHING.

     WE HAVE HAD IN THIS CASE WHAT IS KNOWN AS EXPERT TESTIMONY.
I AM REFERRING SPECIFICALLY TO THE TESTIMONY OF DR. DAVID BLASS,
A SURGEON.  AS A GENERAL RULE, A WITNESS CAN ONLY TESTIFY ABOUT
WHAT HE SAW OR WHAT HE HEARD.  A WITNESS MAY NOT GIVE AN
OPINION OR DRAW CONCLUSIONS.  AN EXCEPTION TO THIS RULE IS THE
SO-CALLED EXPERT WITNESS.  SUCH A WITNESS IS ONE WHO BY
TRAINING, EDUCATION, OR EXPERIENCE HAS ACQUIRED A SPECIAL LEVEL OF
SKILL OR KNOWLEDGE IN SOME ART, SCIENCE, PROFESSION, OR CALLING,
AND BY VIRTUE OF THAT SPECIAL SKILL OR KNOWLEDGE, AN EXPERT IS
PERMITTED TO GIVE EXPLANATIONS AND DRAW INFERENCES NOT WITHIN
THE RANGE OF ORDINARY KNOWLEDGE, INTELLIGENCE, AND EXPERIENCE, AND TO
GIVE HIS OPINION AND CONCLUSIONS AND TO STATE HIS REASONS FOR HIS
OPINIONS AND CONCLUSIONS.  IN DECIDING WHETHER OR NOT TO ACCEPT
DR. BLASS' OPINIONS AND CONCLUSIONS IN THIS CASE, YOU SHOULD
CONSIDER THE EVIDENCE AS TO HIS TRAINING, EDUCATION, AND
EXPERIENCE AS WELL AS THE REASONS AND THE FACTS UPON WHICH
HIS OPINIONS AND CONCLUSIONS WERE BASED.  ALSO, IN DECIDING
WHETHER OR NOT TO ACCEPT AN EXPERT'S OPINIONS AND CONCLUSIONS,
YOU SHOULD BEAR IN MIND THAT YOU ARE NOT BOUND TO ACCEPT THEM
MERELY BECAUSE IT IS THE TESTIMONY OF SOMEONE HAVING SOME
SPECIAL SKILL OR KNOWLEDGE.

MEMBERS OF THE JURY, IN THIS CASE AS IN EVERY CASE, THE BURDEN OF PROVING THE GUILT OF THE DEFENDANTS RESTS UPON THE COMMONWEALTH, AND THAT IS A BURDEN THAT NEVER SHIFTS TO THE DEFENDANTS. A PERSON ACCUSED OF A CRIME, AS I STATED, IS PRESUMED TO BE INNOCENT. THAT PRESUMPTION REMAINS IN HIS FAVOR THROUGHOUT HIS TRIAL, AND IT REMAINS IN HIS FAVOR UNTIL IT IS OVERCOME BY PROOF OF GUILT BEYOND A REASONABLE DOUBT. THIS MEANS, MEMBERS OF THE JURY, THAT WHEN A TRIAL BEGINS, YOU ASSUME THE DEFENDANT TO BE INNOCENT. YOU HAVE HEARD NOTHING UP TO THAT TIME INDICATING THAT HE HAS COMMITTED ANY CRIME. IT RESTS UPON THE COMMONWEALTH TO PRODUCE SUFFICIENT EVIDENCE WHICH SATISFIES YOU, THE JURY, OF THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT. NOT UNTIL THE COMMONWEALTH HAS DONE SO MAY THE DEFENDANT BE CONVICTED OF ANY OFFENSE.

DURING THIS CHARGE, I HAVE BEEN USING THE PHRASE BEYOND A REASONABLE DOUBT. WHAT DOES THAT PHRASE MEAN? A REASONABLE DOUBT IS ONE THAT WOULD CAUSE YOU TO HESITATE TO ACT IN ANY OF THE IMPORTANT AFFAIRS OF YOUR OWN LIFES. NOW, A DOUBT THAT IS MERELY FANCIFUL, A DOUBT THAT DISREGARDS THE EVIDENCE, OR A DOUBT THAT ARISES FROM SYMPATHY OR A RELUCTANCE TO PERFORM AN UNPLEASANT DUTY, IS NOT A REASONABLE DOUBT. IT MUST BE AN HONEST DOUBT. IN THIS DEFINITION, THE WORD "REASONABLE" IS JUST AS IMPORTANT AS THE WORD "DOUBT". IT MUST BE A DOUBT ARISING FROM THE EVIDENCE AND OF SUCH A NATURE AS WOULD CAUSE YOU TO HESITATE AND PREVENT YOU FROM ACTING IN SOME IMPORTANT AFFAIR

IN YOUR OWN LIFES. WHENEVER A DOUBT ARISES IN A CASE OR IN ANY PART OF A CASE, THAT DOUBT MUST BE RESOLVED IN FAVOR OF THE DEFENDANT, AND IT MUST WORK HIS ACQUITTAL. ON THE OTHER HAND, IF YOU ARE SATISFIED OF THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT, THEN, OF COURSE, YOU SHOULD CONVICT HIM. IF YOU ARE NOT SATISFIED OF THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT, THEN YOU MUST FIND HIM NOT GUILTY.

OUR SYSTEM OF LAW IS SUCH THAT THE VERDICT OF THE JURY IN A CRIMINAL CASE MUST BE UNANIMOUS. WHETHER THE VERDICT BE GUILTY OR NOT GUILTY, THE LAW REQUIRES EVERY MEMBER OF THE JURY TO AGREE UPON THE VERDICT RENDERED. THIS MEANS THAT ALL TWELVE OF YOU MUST AGREE UPON THE VERDICTS THAT YOU WILL BE DECIDING UPON IN THESE CASES. WHEN YOU GO INTO THE JURY DELIBERATION ROOM, YOU WILL HAVE SEVERAL VERDICT SLIPS WITH YOU. AT THIS TIME, I AM GOING TO VERY BRIEFLY GO OVER THOSE VERDICT SLIPS. I BELIEVE THAT ONCE YOU SEE THE VERDICT SLIPS, YOU WILL FIND THEM VERY SIMPLE TO FOLLOW, BUT BECAUSE OF THE VARIOUS COUNTS AND THE FACT THAT WE HAVE TWO CASES THAT ARE CONSOLIDATED IN THIS CASE, THERE WILL BE A NUMBER OF VERDICT SLIPS, AND I FEEL THAT IT WILL BE BENEFICIAL FOR ME TO GO OVER THESE VERDICT SLIPS WITH YOU. TURNING OUR ATTENTION FIRST TO THE VERDICT SLIPS IN THE CASE OF COMMONWEALTH AGAINST ELLIS ROY PRICE, YOU WILL NOTICE ON TOP OF THE VERDICT SLIPS WE HAVE THE CAPTION OR THE NAME OF THE CASE, AND WE HAVE TYPED THE NUMBER OF THE CASE AND THE CHARGE. IN THIS CASE, THE FIRST CHARGE THAT I HAVE BEFORE ME IS CRIMINAL ATTEMPT TO COMMIT CRIMINAL