IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____
:
MARK BREAKIRON, :
:
            Petitioner, :
:   CIVIL ACTION
        v. :
:   No. 00 - 300:
MARTIN HORN, Commissioner, :
Pennsylvania Department of Corrections; :   Judge Fischer
CONNOR BLAINE, Superintendent of the :
State Correctional Institution at Greene, and :   **THIS IS A CAPITAL CASE**.
JOSEPH P. MAZURKIEWICZ, :
Superintendent of the State Correctional :
Institution at Rockview, :
:
            Respondents. :
_____

_____

**PETITIONER'S POST HEARING
PROPOSED FINDINGS OF FACT**
_____

      Petitioner, Mark Breakiron, through counsel, hereby submits the following proposed findings of fact based upon the evidence adduced at the evidentiary hearing. Petitioner provides citations to the record of the evidentiary hearing in support of these factual finding. In accordance with the Court's request, the legal authority and conclusions of law supporting Petitioner's claim for relief will be discussed in an updated Memorandum of Law to be filed at a future date. For the Court's convenience, Petitioner begins with a summary of the procedural history.

1

A. **Procedural History**

1. *State Post-Conviction Proceedings*

Petitioner was convicted of first degree murder in April, 1988 in the Court of Common Pleas of Fayette County. Following a penalty hearing, the jury sentenced Petitioner to death.

Petitioner's conviction and sentence were affirmed on direct appeal. Commonwealth v. Breakiron, 524 Pa. 282, 571 A.2d 1035 (1990), cert. denied, 498 U.S. 881 (1990) ("Breakiron-1").

Petitioner filed a *pro se* petition for state post-conviction relief under the Post-Conviction Relief Act ("PCRA") on March 11, 1996. Counsel was appointed and filed an amended petition on October 29, 1996. Evidentiary hearings were conducted on July 17-18, 1997, and September 17, and 29, 1997, after which the amended petition was denied on December 22, 1997. An appeal was taken and the Pennsylvania Supreme Court affirmed the denial of PCRA relief. Commonwealth v. Breakiron, 556 Pa. 519, 729 A.2d 1088 (1999) cert. denied, 528 U.S. 1169 (Feb. 22, 2000) ("Breakiron-2").

On March 23, 2000, a second PCRA petition raising additional claims was filed in the Court of Common Pleas, Fayette County. After a hearing on the timeliness of several of the claims, the Court denied the Petition and ruled that it was untimely. The Pennsylvania Supreme Court affirmed the Court of Common Pleas denial of the PCRA petition as untimely. Commonwealth v. Breakiron, 781 A.2d 94 (Pa. 2001) ("Breakiron-3").

B. **Federal Court Proceedings**

On February 7, 2000, Governor Thomas Ridge signed a death warrant for Mr. Breakiron, and set an execution date of April 6, 2000. On February 14, 2000 counsel filed a Notice of

2

Appearance, Request for In Forma Pauperis Status and Motion for a Stay of Execution under McFarland v. Scott, 512 U.S. 849 (1994). On February 15, 2000, United States District Judge William Standish issued an order granting a stay of execution and ordered counsel o file a Petition for Writ of Habeas Corpus within 180 days. At the same time, Judge Standish issued an order referring this matter to Magistrate Judge Ila Jeanne Sensenich.

On August 11, 2000, Petitioner filed a Petition seeking a writ of Habeas Corpus in this Court. On September 7, 2000, Petitioner filed a Petition to Hold Federal Proceedings in Abeyance Pending Completion of State Court Proceedings. After extensive briefing, Magistrate Judge Sensinich recommended that the Court grant Petitioner's Motion and ordered the case held in abeyance on May 8, 2001. The Commonwealth filed its Objections to the Magistrate's Report and Recommendation on May 22, 2001. On June 13, 2001, this Court adopted the Report and Recommendation of Magistrate Judge Sensinich and ordered the proceedings held in abeyance. The Commonwealth appealed this decision to the Third Circuit Court of Appeals. Before briefing could be completed however, the Pennsylvania Supreme Court resolved Petitioner's PCRA petition by affirming the denial of the Petition on September 26, 2001. Since state court proceedings were complete and there was no need for abeyance, Petitioner filed a Suggestion of Mootness on October 4, 2001, which the Commonwealth opposed. The Court of Appeals granted Petitioner's Suggestion of Mootness on November 1, 2001.

Petitioner moved for a status conference and this Court set a briefing schedule. The parties subsequently filed detailed memoranda of law addressing both the merits of the substantive claims raised as well as the procedural defenses raised by the Commonwealth.

In addition, on May 15, 2002, Petitioner filed a Motion to Amend Petition for Habeas

Corpus, claiming that he had recently discovered evidence that Commonwealth witness Ellis Price had lied in his testimony to the jury and that the Commonwealth had failed to correct that testimony at trial and failed to disclose the exculpatory impeachment evidence to the defense. Accordingly, Petitioner sought to amend Claim 4 of his habeas petition to include the newly discovered factual allegations.

Respondents opposed the Motion to Amend, arguing, inter alia, that the amended claim was unexhausted and defaulted. Petitioner agreed that the new facts had not been presented to the state court and that there was no mechanism through which to present those facts. Nevertheless, Petitioner alleged that he could show cause and prejudice to overcome any default "since the reason that this claim was not raised earlier was the fact that the information was suppressed by the Commonwealth." *Reply Memorandum* at 47. Petitioner also requested that he be granted discovery relating to these new facts.

On October 1, 2004, Judge Standish issued a Memorandum Opinion addressing some of the procedural issues in this case. Judge Standish found that the claims in the habeas petition that had been ruled untimely by the state court in Breakiron-3 would be decided on their merits. The Court concluded that the state time bar was not an adequate and independent rule, and thus federal review of the merits was not barred.[1] As for amended Claim 4, Judge Standish agreed that the claim was barred, but concluded that Petitioner's assertion of cause and prejudice could not be decided upon the current record. Thus, Judge Standish invited Petitioner to file a formal

---

[1]Subsequently, the Third Circuit has decided a number of cases concerning Pennsylvania state court bars that are consistent with Judge Standish's ruling. E.g. Bronshtein v. Horn, 404 F.3d 700 (3d Cir. 2005) cert. denied Beard v. Bronshtein, 126 S. Ct. 1390 (2006); Laird v. Horn, 414 F.3d 419, 425 (3d Cir. 2005); Jacobs v. Horn, 395 F.3d 92, 117-18 (3d Cir. 2005).

motion for discovery.

On November 15, 2004, Petitioner filed a motion for discovery, which was granted by Judge Standish on February 18, 2005. During the discovery process, this case was transferred from Judge Standish to Judge Thomas Hardiman.

Judge Hardiman supervised the discovery process which included the production of documents and the taking of depositions.[2] On February 2, 2007, he conducted an evidentiary hearing on amended Claim 4.[3] At the conclusion of the hearing, Judge Hardiman requested that the parties file proposed findings of fact, and suggested that any legal argument could be saved for the updated memoranda of law that he also requested be filed. NT at 217-18.[4] Before those could be filed, however, Judge Hardiman was elevated to the Third Circuit, and this case was assigned to Judge Nora Barry Fischer.

B.   **Proposed Findings**

1   In the spring and summer of 1987, James "Silky" Sullivan, Chris Owen Miller, Ellis Price, and Mark Breakiron were all incarcerated in the Fayette County jail and housed in the

---

[2]Petitioner had also filed a Motion for Summary Judgement, seeking summary relief on Claims 1 and 3 of the Habeas Petition. Without ruling on the merits, Judge Hardiman denied that motion without prejudice and indicated that he would decide the merits of the claims at a later date.

[3]Although the hearing was technically focused on whether Petitioner could show cause and prejudice to overcome default, in this instance, the analysis of cause and prejudice equates with the merits of the claim. See Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 1272 (2004) (the nature of a Brady claim – the failure to disclose impeachment evidence -- provides cause for whatever default might exist and thus the merits of a Brady claim encompass the cause and prejudice analysis).

[4]Unless otherwise indicated, all citations are to the notes of testimony of the February 2, 2000 evidentiary hearing before Judge Hardiman, and identify the page number of the notes of testimony "NT") and the last name of the testifying witness).

same area ("range") of the jail.  NT at 20-21 (Sullivan); 55 (Miller).

  2  Sullivan, Ellis Price and another inmate, Clinton Conrad Blair, decided to contact the District Attorney's office and offer to testify against Breakiron in exchange for benefits for themselves.  NT at 22-23 (Sullivan); 97-99 (Ellis Price).

  3  Sullivan obtained information regarding the details of the crime with which Breakiron was charged (the murder of Saundra Martin) by reading discovery materials that were in Breakiron's possession and newspaper accounts of the crime.  NT at 23 (Sullivan).

  4  Using this information, Sullivan and Ellis Price wrote a letter to then Fayette County District Attorney Gerald Solomon offering to testify against Breakiron in exchange for benefits to each of them.  NT at 23 (Sullivan); 55-56 (Miller); 95-97 (Ellis Price).

  5  Chris Owen Miller was invited to join in the plan to testify against Breakiron in exchange for benefits, but he declined to do so.  NT at 55-56 (Miller).

  6  Miller saw Sullivan and the others write the letter.  NT at 55-56 (Miller).

  7  Sullivan wrote the actual letter and Ellis Price and Clinton Blair signed it.  NT at 88 (Ellis Price).

  8  In the letter, Ellis Price asked that his and his brother Robert's convictions for attempt homicide be overturned.  NT at 23-25 (Sullivan).  Ellis Price testified that he tried to get some help for his brother Bobby (who was his co-defendant in the attempt homicide case) in exchange for his cooperation.  NT at 98 (Ellis Price).

  9  After the letter was sent, Sullivan received a visit from his then defense attorney, Mark Morrison (who later served as the prosecutor in the Breakiron case).  Morrison was angry that Sullivan had approached District Attorney Solomon directly, rather than going through him.

NT at 27 (Sullivan); 139-40 (Morrison) (Morrison denies any specific memory of the incident, but admits that "it sounds like something I would do.").

10. During a pre-trial hearing on a motion to recuse Morrison as prosecutor in the Breakiron case, then District Attorney Morrison told the Court that he would not be calling Sullivan as a witness "or using anything that he offered to us." NT at 138 (Morrison).

11. Morrison was aware that Sullivan attempted to make his own deal with the District Attorney's office. NT at 139 (Morrison).

12. Ellis Price wrote two letters to District Attorney Solomon offering to testify against Mark Breakiron. The first was the letter he wrote with Sullivan. The second was a letter he wrote himself. NT at 100 (Ellis Price).[5]

13. At the time he wrote these letters, Price and his brother Robert ("Bobby") had both been convicted, as co-defendants, of attempt homicide as a result of the January 1, 1986 shooting at Tigo's Lounge. NT 68-69 (Robert Price); 88 (Ellis Price).

14. Ellis Price was the actual shooter in the attempt homicide case. NT at 69 (Robert Price); 94 (Ellis Price).

15. Following his conviction for attempt homicide, Ellis Pierce filed a Motion for Arrest of Judgment which was subsequently granted by Fayette County Court of Common Pleas Judge William Franks.

16. At the time Ellis Price wrote the letters to the District Attorney, he did not know

---

[5]Despite the discovery orders issued by Judge Standish and Judge Hardiman in this case, these letters have never been produced by the Commonwealth. Moreover, the Commonwealth reported that, despite a thorough search, it was unable to locate any files relating to the prosecution of Ellis Proce.

that his motion to arrest judgement in the attempt homicide case had been granted. NT at 92 (Ellis Price).

17      A few days after he wrote the letters, then state police Trooper Gary Brownfield interviewed Price about his allegations that Breakiron had made incriminating statements to him. NT at 88 (Ellis Price).

18      Brownfield subsequently wrote a report based on his notes of that conversation. NT at 121-22, 125-26 (Brownfield).

19      Ellis Price talked to several police officers in addition to Brownfield. NT at 87 (Ellis Price).

20      Ellis Price also talked to some member of the District Attorney's office during the summer of 1987. NT at 103 (Ellis Price).

21      After the initial conversation with Brownfield, Ellis Price later provided law police officials with a signed statement. NT at 91 (Ellis Price).[6]

22      Ellis Price wrote to his brother Bobby and told him that he was cooperating with the prosecution in Breakiron in order to try to help get Bobby's sentence on the attempt homicide reduced. NT at 108 (Ellis Price); 113 (Robert Price).

23      Ellis told Bobby that he made up stuff about Breakiron to make the story good, in hopes of getting Bobby's sentence reduced. NT at 117 (Robert Price).

24      The grant of an arrest of judgement, such as that received by Ellis Price for the attempt homicide, was a rare occurrence in Fayette County. NT at at 188 (Lepore).

---

[6]Again, despite the discovery orders, this signed statement has ever been produced. Except for Brownfield's report, the Commonwealth has not produced any notes, statements, or reports based upon Price's conversations with other any police or prosecutorial officials.

25      Then District Attorney (now Judge) Gerald Solomon had the authority to decide whether or not to appeal the decision granting Ellis Price an arrest of judgement in the attempt homicide case. NT at 172. (Solomon).

26      Judge Solomon testified that, as District Attorney, he would vigorously defend a jury based conviction of a defendant as an accomplice or co-conspirator, if that conviction were to be overturned. NT at 175-76 (Solomon).

27      Nevertheless, sometime after Ellis Price began cooperating with police and prosecution officials, then District Attorney Solomon made the decision not to appeal the grant of an arrest of judgement in his attempt homicide case. NT at 172 (Solomon).

28      On January 8, 1986, Vincent Sterbutzal was assaulted, beaten, and robbed by three men. His assailants stole his car, which was later set on fire and abandoned. See Commonwealth Exhibit D (Pennsylvania State Police Report).

29      Robert, Kevin, and Ellis Price were involved in that beating and robbery. NT at 75 (Robert Price).

30      As detailed in a state police report, on July 23, 1986, Mark DiMatteo admitted his limited involvement in the Sterbutzal attack and named Ellis Price as one of the other perpetrators. The investigation remained open and no charges were filed at that time.

31      In 1989, Robert Price pled no lo contendre and was sentenced to 5 to 10 years imprisonment for his role in the Sterbutzal assault. NT at 76 (Robert Price). That sentence was ordered to run concurrent to the 10 to 20 year sentence Robert Price received for the attempt homicide conviction.

32      Ellis Price was never prosecuted for his role in that assault. NT at 184 (Lepore).

33  The police and prosecutorial officials who testified at the evidentiary hearing denied ever seeing the letters that James Sullivan and Ellis Price sent to the District Attorney's Office.  NT at 133 (Morrison); 158 (Warman); 176 (Solomon).

34  Someone in the District Attorney's office received and acted on Price's letters. As a result, a few days after Price had written his letters to District Attorney Solomon, Trooper Brownfield was instructed to interview Ellis Price about Breakiron.  This fact is corroborated by then prosecutor Morrison's statements, during the pre-trial hearing on the motion to recuse, acknowledging that Sullivan had also offered to testify against Breakiron.

35  The police and prosecutorial officials who testified at the evidentiary hearing denied ever making any promises or offering or providing any benefits to Ellis Price in exchange for his cooperation and testimony against Breakiron.  NT at 123 (Brownfield); 157 (Warman); 170 (Solomon); 182 (Roberts); 184 (Lepore).

36  Nevertheless, Ellis Price benefitted from his cooperation with the authorities. After his cooperation, Price's open criminal liabilities were all favorably resolved.  He obtained an arrest of judgement on his attempt homicide conviction, that would otherwise have resulted in a substantial sentence.  Moreover, the Commonwealth chose not to appeal that arrest of judgement.  In addition, he was a named suspect in the Vincent Sterbutzal assault and robbery, a case being investigated by the same state police barracks that was investigating the Martin homicide.  Yet, Ellis Price was never charged and prosecuted for his role in that crime.  It strains credibility to believe that all of these favorable outcomes were just a coincidence and bore no relationship to his cooperation with the authorities in the prosecution of Mark Breakiron.

          Respectfully submitted,


          /s/Stuart Lev
          Stuart Lev, Esq.
          Capital Habeas Corpus Unit
          Federal Court Division
          Defender Association of Philadelphia
          Suite 545W -- The Curtis Center
          Independence Sq. West
          Philadelphia, PA 19106
          (215) 928-0520

          Tricia A. Russell
          Staff Attorney
          Capital Habeas Corpus Unit
          1450 Liberty Center
          1001 Liberty Avenue
          Pittsburgh, PA 15222-3714
          (412) 644-6565

Dated: June 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be served on the following person at the location and in the manner indicated below:

BY FIRST CLASS MAIL

Christopher Carusone, Esq.
Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120


/s/ Stuart Lev
Stuart Lev, Esq.

Dated: June 22, 2007