IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK BREAKIRON, | : | |
| Petitioner | : | |
| | : | Civil Action No. 00-300 |
| v. | : | |
| | : | Judge Nora Barry Fischer |
| MARTIN HORN, et al., | : | |
| Respondents | : | THIS IS A CAPITAL CASE |

## RESPONDENTS' PROPOSED FINDINGS OF FACT

Respondents, through their attorneys, file their proposed findings of fact in compliance with this Court's Order of May 14, 2007.

### Procedural

1. On April 13, 1988, after a jury trial held in the Fayette County Court of Common Pleas ("trial court"), the petitioner Mark Breakiron was convicted of the first degree murder of Saundra Martin. Because Breakiron tortured Martin before killing her and committed the killing in the perpetration of a robbery, Breakiron was later sentenced to death.

2. On March 14, 1990, the Pennsylvania Supreme Court affirmed Breakiron's conviction and death sentence. *Commonwealth v. Breakiron*, 571 A.2d 1035 (Pa. 1990).

3. On April 9, 1999, the Pennsylvania Supreme Court affirmed the trial court's order denying Breakiron's petition for post-conviction relief. *Commonwealth v. Breakiron*, 729 A.2d 1088 (Pa. 1999), cert denied *Breakiron v. Pennsylvania*, 528 U.S. 1169 (2000). Breakiron filed a second petition for post-conviction relief, which was rejected as untimely by the Pennsylvania Supreme Court on September 26, 2001. *Commonwealth v. Breakiron*, 781 A.2d 94 (Pa. 2001).

4. On August 14, 2000, Breakiron filed his federal habeas petition. (Doc. 6).

5. On May 16, 2002, Breakiron amended his petition by filing what has come to be known as Amended Claim 4. (Doc. 44).

6. In Amended Claim 4, Breakiron alleges that: (1) Commonwealth witness Ellis Price lied during the trial when he testified that Breakiron confessed to him while they were incarcerated together in Fayette County Jail; and (2) the Fayette County District Attorney's Office rewarded Price for his cooperation by deciding not to appeal the decision of Fayette County Judge William J. Franks granting Price's motion for arrest of judgment following his conviction for the attempted homicide of Raymond Ricker. (Doc. 44).

7. In its Answer, the respondents denied the allegations, and argued that because Breakiron never presented his claim to the Pennsylvania state courts, it was procedurally barred. (Doc. 48 at 86-87).

8. Breakiron admits that Amended Claim 4 was never presented to the state courts. Breakiron argues, however, that this procedural default should be excused on the grounds of "cause" and "prejudice."

9. On February 18, 2005, this Court granted the petitioner's motion for discovery under Rule 6 of the Rules Governing Section 2254 Cases. (Doc. 70).

10. On December 7, 2006, this Court scheduled an evidentiary hearing limited to the issue of whether "cause" and "prejudice" existed to excuse the procedural default. (Doc. 141).

11. An evidentiary hearing was held on February 2, 2007. (Doc. 153).

12. On July 2, 2007, Breakiron filed a motion to further amend his petition to incorporate allegations involving the assault of Vincent Sterbutzel. More specifically, Breakiron argues that the District Attorney's Office decision not to prosecute Ellis Price for the assault of Vincent Sterbutzel was in exchange for his cooperation in the Breakiron prosecution. (Doc. 162). The respondents did not oppose the motion because this claim was addressed during the evidentiary hearing, but denies the

claim on the merits and argues that it is procedurally defaulted because it was never presented to the Pennsylvania state courts. (Doc. 165).

### Murder of Saundra Martin

13.     In 1988, then District Attorney Mark Morrison prosecuted Breakiron for the murder of Saundra Martin. N.T. (2/2/07) at 127. The murder was investigated by Trooper Gary Brownfield of the Pennsylvania State Police. *Id*. at 121.

14.     The Pennsylvania state courts concluded that the following facts had been proven by the Commonwealth during the trial:

> The facts of this case are that during the early morning hours of March 23-24, 1987, Mark Breakiron murdered Saundra Marie Martin, an employee at Shenanigan's Lounge, by inflicting multiple stab wounds and beating her with a blunt instrument. He removed the victim's body along with her purse and cash from the bar. After carrying Martin's body outside and depositing it in the bed of his pickup truck, he drove to his grandparents' vacant house, where he took the body inside. Shortly thereafter, he attempted to hide the body in a nearby woods.
>
> On March 24, 1987, state police were notified by the owners of Shenanigan's that Martin was missing. Investigation revealed that the lounge was covered with bloodstains and that money bags containing business receipts were missing. Further investigation disclosed that Breakiron was seen alone in the bar with the victim late the previous evening after other customers left. Later that day, when police interviewed Breakiron, he voluntarily relinquished samples of what appeared to be blood from his truck and his clothing, although he did not confess to the murder. The blood samples obtained from Breakiron's truck and clothing matched the blood type of the victim, and Breakiron was arrested. On March 25, 1987, state police discovered Martin's body in a woods not far from the vacant house where Breakiron had taken her body prior to disposing of it.
>
> \*              \*              \*
>
> Dr. Manuel Pelaez, the pathologist who performed the autopsy on the victim, testified that she suffered multiple injuries on her head, neck, trunk, and extremities. There were multiple bruises around the eyes. There was a laceration of the right eyebrow and there were several cuts and contusions and lacerations in the left ear and left side of the head. Some of these injuries were caused by a blunt force; others by a sharp instrument. Her skull was fractured. A stab wound penetrated through the left ear

> into the brain. There were several slash wounds on the right side of the neck, several slash wounds on the left side of the neck, and one deep stab wound which severed the jugular vein and carotid artery. In the chest and abdomen of the victim, there were eighteen stab wounds. These wounds penetrated the right lung, the left lung, the liver, the stomach, and the left kidney. Two ribs were fractured by the knife. There were numerous cuts and slashes on both hands which were described as defensive wounds, indicating some attempt by the victim to grab or protect herself with her hands from the knife. There was a large cut in the right elbow. There were multiple bruises of the knees and forearms and chest. The cause of death was internal and external bleeding secondary to the multiple stab wounds, and the blunt force injuries to the head contributed to the death.

*Breakiron*, 571 A.2d at 1036, 1041.[1]

15.  Breakiron has never denied killing Saundra Martin. N.T. (2/2/07) at 6. At trial, Breakiron's sole defense was "diminished capacity." The only witness was Breakiron, who testified that because of his alcohol intoxication on the evening of the murder, he did not remember the incident, but that he recalled portions "like a TV screen inside [his] head and [he] saw someone laying there getting stabbed." *Breakiron*, 729 A.2d at 1090.

16.  On August 4, 1987, prior to the trial, Trooper Brownfield interviewed Ellis Price at the Fayette County Prison. Price told Trooper Brownfield: "I'm aware of the fact that you can't do anything for me as far as my sentence in the State of Michigan, but I think what I know will be of help to you." Price then told Trooper Brownfield that Breakiron had confessed to the killing of Saundra Martin. Com. Ex. A.

17.  Prior to the trial, Morrison met with Price in the District Attorney's Office. N.T. (2/2/07) at 128. The purpose of the meeting was to inform Price that there was nothing he could do for him. *Id*. Price informed Morrison that he was cooperating because Breakiron did a terrible thing to that girl. *Id*. at 129.

---

[1] These facts are presumed to be correct. 28 U.S.C. § 2254(e).

18. During the trial, the Commonwealth called Ellis Price as a witness. Com. Ex. B. Price testified that Breakiron had confessed to him while the two of them were incarcerated in Fayette County Jail. *Id*. Price denied the existence of any deals or offers made by the Commonwealth in exchange for his testimony. *Id*. at 1116-1118, 1125.

19. Ellis Price never asked Morrison or Trooper Brownfield for anything in exchange for his testimony against Breakiron. N.T. (2/2/07) at 122-123, 130.

20. Neither Morrison nor Trooper Brownfield made any express or implied agreements with Price in exchange for his testimony. *Id*. at 123, 130. Had Morrison made such an agreement, he would have recorded it in the Breakiron homicide file. *Id*. at 131.

21. Neither Morrison nor Trooper Brownfield made any promises to Price in exchange for his testimony. *Id*. at 123, 130.

22. Neither Morrison nor Trooper Brownfield did anything to lead Price to believe that he was going to get some benefit in exchange for his testimony. *Id*. at 123, 130.

23. Ellis Price received no benefits in exchange for his testimony against Breakiron. *Id*. at 85-86, 193.

24. Ellis Price did not fabricate Breakiron's confession or steal materials from Breakiron's cell. *Id*. at 89.

25. To the contrary, the hearing before this Court revealed that Breakiron also confessed to James "Silky" Sullivan, a witness called by petitioner during the hearing. *Id*. at 194.

<u>Attempted Homicide of Raymond Ricker</u>

26. In 1986, Robert and Ellis Price were charged with two counts of criminal attempt to commit criminal homicide, aggravated assault, recklessly endangering another person, and criminal

conspiracy for the shooting of Raymond Ricker and the attempted shooting of Richard Pletcher at Tigo's Lounge on January 1, 1986. Com. Ex. E at 12-14. Trooper Earl Roberts of the Pennsylvania State Police investigated the shooting. N.T. (2/2/07) at 182.

27. The District Attorney's Office transported Ellis Price from Michigan where he was incarcerated on other charges in order to prosecute him for these offenses. N.T. (2/2/07) at 154.

28. The District Attorney at the time of this prosecution was Gerald Solomon, who was later elected Judge. *Id*. at 169.

29. The case proceeded to trial on October 8, 1986, and was prosecuted by then Assistant District Attorney Ralph Warman, who was later elected Judge. Com. Ex. E.

30. The trial court summarized the evidence presented during the trial:

In this case the evidence revealed that the defendant and his brother, Robert Keith Price (hereinafter "Robert Price") attended a New Year's Eve party at Tigo's Lounge. Shortly after their arrival, they became involved in an argument with a bartender. They were approached by Raymond Ricker, an employee of Tigo's Lounge, and told to leave. After a further exchange of words, they left. Ricker followed them outside shortly thereafter, was shot at, and wounded by Robert Price. At the same time, a patron of the bar, Richard Pletcher, went outside to assist Ricker. Pletcher observed Robert Price shooting at Ricker and then saw the defendant get into the driver's side of the car. Robert Price then ran around to the passenger side of the vehicle and closed the door. As Pletcher ran towards the car, a single gunshot rang out, shattering the passenger window. Pletcher testified that he was unable to identify which of the two persons inside of the vehicle fired the shot.

Com. Ex. C at 23.[2]

31. At the close of the Commonwealth's evidence, the trial court granted Ellis Price's demurrer in part, dismissing the conspiracy charges and all charges relating to the shooting of Ricker. Com. Ex. E at 102-103. The court granted Robert Price's demurrer on the conspiracy charges. *Id*.

---

[2] These facts are also presumed to be correct. 28 U.S.C. § 2254(e).

32. At the conclusion of the trial, the jury found both Robert Price and Ellis Price guilty of the remaining charges. *Id*. at 194-195.

33. On October 17, 1986, Ellis Price filed a motion in arrest of judgment and for a new trial, challenging the sufficiency of the evidence. Com. Ex. F.

34. On June 8, 1987, the District Attorney's Office filed a responsive brief opposing the motion. Com. Ex. G.

35. On July 24, 1987, the trial court granted Ellis Price's motion in arrest of judgment, concluding that the evidence was insufficient to support his remaining convictions. Com. Ex. C.

36. The District Attorney's Office did not appeal the trial court's decision because the office lacked sufficient manpower to file the appeal, the office rarely filed appeals and was generally satisfied with what their local judges did, and the office believed that the trial court was probably correct in granting Ellis Price's motion in arrest of judgment. N.T. (2/2/07) at 155.

37. The District Attorney's Office's decision not to appeal the trial court's order had nothing to do with Ellis Price's cooperation in the Breakiron case. *Id*. at 169.

38. There were no express or implied agreements of any kind between the Commonwealth (Roberts, Solomon, and Warman) and Ellis Price that the Commonwealth would not appeal the trial court's decision in exchange for Price's cooperation in the Breakiron case. *Id*. at 157, 169-170, 182.

39. The Commonwealth (Roberts, Solomon, and Warman) promised Ellis Price nothing in exchange for his testimony against Breakiron. *Id*. at 157, 170, 183.

40. The Commonwealth (Roberts, Solomon, and Warman) did not do or say anything to lead Ellis Price to believe that he was going to receive some sort of benefit in exchange for his testimony in the Breakiron case. *Id*. at 157, 170, 183

### Aggravated Assault of Vincent Sterbutzel

41. In 1988-1989, Trooper David Nickle of the Pennsylvania State Police charged Mark Dimatteo, Kevin Price, and Robert Price with robbery and related offenses involving victim Vincent Sterbutzel on January 8, 1986. Com. Ex. D.

42. The investigation revealed that the actors beat up the victim and stole his vehicle. *Id*. The investigation also revealed that one of the actors put a gun to the victim's head and told him: "If you go to the police, we'll kill you." *Id*. The only evidence implicating Ellis Price in the assault came from Dimatteo, who later pled guilty to theft in the case. *Id*.

43. On March 10, 1989, then District Attorney Alphonse Lepore decided not to extradite Ellis Price to prosecute him on these charges because Price was in Michigan serving a long sentence for another crime. N.T. (2/2/07) at 185.

44. Mr. Lepore's decision had nothing whatsoever to do with the fact that Ellis Price had previously testified against Breakiron. *Id*. at 186.

45. Because Mr. Lepore was a member of the Public Defender's Office when the Breakiron case was tried, he made it a point not to read anything about the Breakiron case, not to pay attention to it, and not to discuss it with anyone. *Id*.

46. As a result, Mr. Lepore had no knowledge of the Breakiron trial whatsoever when he assumed the position of District Attorney. *Id*.

47. Mr. Lepore has never had any contact with Ellis Price. *Id*.

48. Mr. Lepore never had any express or implied agreements with Ellis Price. *Id*. at 187.

49. Mr. Lepore never promised anything to Ellis Price. *Id*.

50. Mr. Lepore never did or said anything to lead Ellis Price to believe that he was receiving a benefit in exchange for his testimony in the Breakiron case. *Id*.

>Respectfully Submitted,
>
>**THOMAS W. CORBETT, JR.**
>**Attorney General**
>
>BY: <u>*[s] Christopher D. Carusone*</u>
>**CHRISTOPHER D. CARUSONE**
>**Senior Deputy Attorney General**
>**Attorney ID# 71160**

**OFFICE OF ATTORNEY GENERAL**
**Criminal Law Division**
**Capital Litigation Unit**
**Strawberry Square**
**Harrisburg, PA  17120**
**(717) 783-6273**

**Date:  July 20, 2007**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK BREAKIRON,** | : | |
| Petitioner | : | |
| | : | **Civil Action No. 00-300** |
| v. | : | |
| | : | **Judge Nora Barry Fischer** |
| **MARTIN HORN, et al.,** | : | |
| Respondents | : | **THIS IS A CAPITAL CASE** |

## CERTIFICATE OF SERVICE

AND NOW, this 20th day of July, 2007, I, Christopher D. Carusone, Senior Deputy Attorney General, counsel for respondents in the above-captioned matter, hereby certify that I this day served the foregoing **Respondents' Proposed Findings of Fact** by causing a copy of the same to be transmitted *via* email, addressed as follows:

Stuart Lev, Esquire
Stuart_Lev@fd.org
(Counsel for Petitioner)

Tricia Russell, Esquire
Tricia_Russell@fd.org
(Counsel for Petitioner)

    *[s] Christopher D. Carusone*
**CHRISTOPHER D. CARUSONE**
**Senior Deputy Attorney General**