**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARK BREAKIRON,

                    Petitioner,

     v.

MARTIN HORN, <u>et al.</u>

                    Respondents.

CIVIL ACTION

No. 00-300

The Honorable Nora Barry Fischer

## <u>FINDINGS OF FACT</u>

Presently pending before this court are proposed findings of fact filed by Petitioner Mark Breakiron ("Breakiron" or "Petitioner") (Docket No. 161) and by Respondents (Docket No. 166), and submitted following the February 2, 2007, evidentiary hearing regarding Amended Claim 4 of Breakiron's petition for writ of habeas corpus. Judge Thomas J. Hardiman presided over that evidentiary hearing and instructed the parties to file post-hearing proposed findings of fact. Before each party's proposed findings of fact were submitted and could be ruled upon, Judge Hardiman was elevated to the United States Court of Appeals for the Third Circuit and this case was reassigned to me.

The parties have expressly stated that they do not object to me making findings of fact based upon the evidence of record. Therefore, herein I make findings of fact regarding Amended Claim 4 of Breakiron's petition for writ of habeas corpus.

Before setting forth my findings, I shall outline the relevant factual and procedural history and summarize the documentary evidence and testimony admitted at the February 2, 2007, evidentiary hearing.

A.    **Basic Factual and Procedural History**

In April 1988, a jury empaneled by the Court of Common Pleas of Fayette County convicted Breakiron of first-degree murder and robbery.  His victim was Saundra Martin, an employee working at Shenanigan's Lounge the night of her murder.  Judge William J. Franks presided over the trial.  Public Defender Richard E. Bower, Esq., represented Breakiron and Mark F. Morrison, Esq., Acting District Attorney, prosecuted the case.

As part of its case-in-chief, the Commonwealth presented the testimony of Ellis Price, who had been incarcerated with Breakiron in the Fayette County Jail in the summer of 1987. (See Trial Tr. at 1110-26).[1]  Ellis Price testified that Breakiron confessed to him that he hid in the bathroom of Shenanigan's Lounge, came out after Martin had closed for the night, and then hit her and stabbed her.  (Id. at 1114-15).  He testified on direct and cross-examination that he did not have any "deals" with the Commonwealth for favorable treatment in exchange for his testimony.  (Id. at 1115-18, 1125).

Breakiron testified in his own defense at the trial and he conceded responsibility for Martin's death.  (Id. at 1232-83).  His defense focused on his denial that he acted with the specific intent to kill and to rob.  (Id.)

The jury convicted Breakiron of first-degree murder and robbery.  Following a separate penalty hearing, the jury sentenced him to death.  His judgment of sentence was affirmed on direct appeal.  Commonwealth v. Breakiron, 571 A.2d 1035 (Pa. 1990) ("Breakiron 1").  The United States Supreme Court denied certiorari on October 1, 1990.  Breakiron v. Pennsylvania,

---

[1]  The Respondents submitted the state court record ("SCR") in hard copy format in seven volumes containing Appendices 1 through 51.  The transcript of the trial is numbered sequentially and spans Appendices 4 through 12.

498 U.S. 881 (1990).

In March 1996, Breakiron filed his first petition for state post-conviction relief under Pennsylvania's Post-Conviction Relief Act ("PCRA").  Judge Franks presided over a series of evidentiary hearings in July and September 1997.  On December 22, 1997, he issued a decision denying PCRA relief.  The Pennsylvania Supreme Court affirmed on April 9, 1999. Commonwealth v. Breakiron, 729 A.2d 1088 (Pa. 1999) ("Breakiron 2"), cert denied, 528 U.S. 1169 (2000).

On February 7, 2000, then Governor Tom Ridge signed a death warrant for Breakiron. On February 14, 2000, the Capital Habeas Corpus Unit, Federal Court Division, Defender Association of Philadelphia, began federal habeas corpus proceedings in this court by filing a motion for stay of execution and a motion for appointment of counsel.  The case was assigned to Judge William L. Standish of this court, who issued a stay of execution and ordered counsel for Breakiron to file a petition for writ of habeas corpus.

At the same time that Breakiron was seeking habeas relief in federal court, he continued to pursue his remedies in the state courts.  On March 23, 2000, he filed another PCRA petition ("second PCRA petition") in the Court of Common Pleas of Fayette County, in which he raised new claims for state post-conviction relief.  Almost five months later, in August 2000, he filed his Petition for Writ of Habeas Corpus with this court.  (Docket No. 6).  In the habeas petition, he argues that the proceedings against him were infected with federal constitutional error and that he is entitled to a new trial or, at a minimum, a new sentencing hearing.  In support, he presents eighteen claims and numerous sub-claims for relief.

Many of the claims that Breakiron raises in his habeas petition also were being

simultaneously litigated in the second PCRA petition.  Claim 4 of the habeas petition was among the claims that was being litigated both here and in state court.  In Claim 4, Breakiron contends, *inter alia*, that his rights under the Due Process Clause of the Fourteenth Amendment as set forth in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) were violated because the Commonwealth failed to disclose evidence that would have impeached Ellis Price's testimony.  (Docket No. 6, at ¶¶ 105-11; <u>see</u> <u>also</u> Docket No. 39, at 106-08).  Specifically, he contends in Claim 4 that Ellis Price had a substantial motivation to testify in favor of the Commonwealth and that the Commonwealth failed to disclose evidence of his possible bias.  (<u>Id.</u>)  He asserts that Ellis Price (who was serving a sentence imposed by the State of Michigan), was brought to Fayette County in 1986 to face numerous felony charges, including attempted murder, in a case involving victims Raymond Ricker and Richard Pletcher (the "Ricker/Pletcher case").  In October 1986, a jury found Ellis Price guilty of attempted homicide and related crimes in the Ricker/Pletcher case.  However, on or around July 28, 1987, Judge Franks granted him an arrest in judgment and overturned his convictions.  The Commonwealth had thirty days in which to file an appeal of that order.  On August 4, 1987, Ellis Price was interviewed by then Trooper Gary Brownfield, who was investigating Martin's homicide.  During that interview, Ellis Price reported Breakiron's confession.  The Commonwealth did not appeal Judge Franks's order reversing Ellis Price's convictions in the Ricker/Pletcher case.

On June 13, 2001, upon the recommendation of the Magistrate Judge Ila Jeanne Sensenich (Docket No. 22), Judge Standish issued an Order holding this federal proceeding in abeyance pending resolution of the second PCRA petition in state court.  (Docket No. 27).

On July 31, 2000, Judge Franks presided over a PCRA hearing that was limited to the

timeliness of Breakiron's second PCRA petition.  (SCR, Vol. VI, App. 44).  At that hearing,

Breakiron called Ellis Price as a witness and the Commonwealth called former Trooper

Brownfield, who is now the Sheriff of Fayette County.  On cross examination conducted by the

Commonwealth, Ellis Price testified that he was not offered a deal in exchange for his testimony

against Breakiron.  (Id. at 12-13).  Sheriff Brownfield testified that everything that Ellis Price

told him was recorded in his police report.  (Id. at 17).

On December 1, 2000, Judge Franks issued an Opinion and Order holding that the second

PCRA petition was untimely under the 1995 amendments to that statute, 42 Pa.Cons.Stat.

§ 9545(b).  (SCR, Vol. VII, App. 48).  Judge Franks rejected Breakiron's contention that his

claims involving Ellis Price satisfied the timeliness exception based on interference by

government officials:

> Defendant also claims that the Commonwealth failed to appeal this Court's
> granting of Price's motion in arrest of judgment from a conviction of attempted
> murder in 1986, in exchange for his testimony at Defendant's trial.  Again, the
> Court finds no evidence to support this claim.
>
> At no time through these proceedings[ ] has Defendant presented any
> evidence that a deal existed between Price and the Commonwealth.  In fact, strong
> evidence to the contrary existed.  Price specifically testified both at Defendant's
> trial and at Defendant's PCRA hearing that there was no deal between him and the
> Commonwealth; and in the Commonwealth's brief, affidavits of the former
> prosecutors[ ] were presented, who all corroborate that there was no deal.

(Id. at 7-8).

The Pennsylvania Supreme Court affirmed.  Commonwealth v. Breakiron, 781 A.2d 94

(Pa. 2001) ("Breakiron 3").  It held that under the 1995 amendments to the PCRA, "[a]ny PCRA

petition, including a second or subsequent petition, must be filed within one year of the date the

judgment becomes final."  Id. at 97.  It then determined that because Breakiron's judgment of

sentence became final on October 1, 1990, and he did not file his second PCRA petition until March 2000 – "almost ten years later" – the petition was untimely.  Id. at 97-101.  It further held that although a Brady claim may fall within the "governmental interference exception" to the statute of limitations, such a claim must be raised within 60 days of the discovery of the alleged suppressed evidence, and Breakiron had not met that requirement.  Id. at 98-99.

After the Pennsylvania Supreme Court issued its decision in Breakiron 3, these federal proceedings resumed.  Breakiron filed his Memorandum of Law in Support of Petition for Writ of Habeas Corpus.  (Docket No. 39).  Then, on May 15, 2002, he filed an Amendment to Petition For Habeas Corpus (Docket No. 44), which "supplements and expands Claim 4" to include "recently discovered additional evidence" that Ellis Price "lied throughout his testimony in this case" and "lied when he testified that he sought and received nothing from the Commonwealth in return for his testimony."  (Id. at 2).  In Amended Claim 4, Breakiron contends that in March 2002, James "Silky" Sullivan, an inmate that had been incarcerated in the summer of 1987 in the Fayette County Jail with Breakiron and Ellis Price, revealed that he, Ellis Price, and another inmate, Conrad Blair, "invented" Breakiron's confession and wrote a letter to then District Attorney Gerald Solomon (now Judge Solomon of the Court of Common Pleas of Fayette County) offering to testify against Breakiron in exchange for benefits in their respective cases.  (Id. at 4).  He alleges that the letter those inmates wrote was never turned over to the defense.  (Id at 6).  To further support Amended Claim 4, Breakiron asserts that prior to Breakiron's trial, Ellis Price had informed his brother Robert Price that Ellis's cooperation in the Breakiron case would get him (Robert) five years off the sentence he was serving.  (Id. at 7).  (Robert Price was a co-defendant in the Ricker/Pletcher case and was serving a term of imprisonment for his convictions

6

in that case).

In its Answer (Docket No. 48), the Commonwealth contends, inter alia, that: (a) the ruling by the Pennsylvania Supreme Court in Breakiron 3 that the second PCRA petition was untimely mandated a finding by this court that all of the claims raised by him in that proceeding (including but not limited to original Claim 4) may not be reviewed on the merits in this proceeding under the doctrine of procedural default; and, (b) in addition, the "newly-discovered" factual bases upon which Breakiron relies in Amended Claim 4 were never exhausted in state court, and, because it would be "futile" for him to exhaust that claim in state court, Amended Claim 4 is procedurally defaulted.

On October 15, 2004, Judge Standish issued a Memorandum Opinion in which he ruled upon the Commonwealth's procedural default defenses. (Docket No. 62). Judge Standish held that the claims Breakiron raised in his second PCRA petition are not procedurally barred from federal habeas review because the procedural rule applied by the Pennsylvania Supreme Court in Breakiron 3 was not "firmly established and regularly followed" at the time of Breakiron's alleged default. Accordingly, this court must rule on the merits of those claims.

Judge Standish next noted that Breakiron acknowledges that he did not exhaust the factual bases of Amended Claim 4 in the Pennsylvania state courts, and that therefore Amended Claim 4 is procedurally defaulted. Judge Standish then explained that Breakiron argues that he can establish "cause and prejudice" to overcome the default because he can demonstrate that the Commonwealth has consistently and unlawfully withheld the information at issue in Amended Claim 4. (Docket No. 44, at 10-11; Docket No. 58, at 47-50); see also Banks v. Dretke, 540 U.S. 668, 690 (2004) (citing Strickler v. Greene, 527 U.S. 263 (1991) and noting that the "cause

and prejudice" requirements correspond with the components of a <u>Brady</u> claim.  Therefore, if a petitioner succeeds in demonstrating "cause and prejudice," he will at the same time succeed in establishing the elements of a <u>Brady</u> claim).  Judge Standish held that whether Breakiron can establish "cause" and the resulting "prejudice" sufficient to overcome his default of Amended Claim 4 is a question this court could not answer on the record before it at that time.  Therefore, Judge Standish directed that the parties conduct limited discovery on those issues.

In February 2006, this case was reassigned to Judge Hardiman.  The parties continued discovery and Judge Hardiman supervised the discovery process, which included the production of documents and the takings of depositions.  Breakiron ultimately supplemented Amended Claim 4 to incorporate allegations involving the assault of Vincent Sterbutzel ("the "Sterbutzel case").  (Docket No. 162).  He alleges that at the time Ellis Price provided testimony at Breakiron's trial, Ellis Price was a suspect in the Sterbutzel case for assault and robbery  (<u>Id.</u> at ¶ 2).  Ellis Price was never charged with any crimes in the Sterbutzel case, and Breakiron contends that the Fayette County District Attorney's Office's decision not to prosecute him for the crimes committed against Sterbutzel was in exchange for his cooperation in the Breakiron prosecution.  (<u>Id.</u> at ¶¶ 2-4).  He further alleges that the Commonwealth did not disclose to Breakiron's defense counsel that Ellis Price was a suspect in that Sterbutzel case.  (<u>Id.</u>)

On February 2, 2007, Judge Hardiman presided over an evidentiary hearing on Amended Claim 4.  The transcript of that hearing is lodged at Docket No. 168.  At the hearing, Breakiron called James "Silky" Sullivan and Chris Owen Miller (another inmate incarcerated with Breakiron prior to his trial).  He also called Robert Price (Ellis's brother).

The Commonwealth called Ellis Price.  It also presented the testimony of four former

8

Fayette County District Attorneys:  Mark F. Morrison, Esq., who prosecuted Breakiron's case;

Judge Gerald Solomon of the Fayette County Court of Common Pleas, who was the District

Attorney at that time of Ellis Price's trial in the Ricker/Pletcher case; Judge Ralph Warman of the

Fayette County Court of Common Pleas and former Assistant District Attorney, who prosecuted

the Price brothers in the Ricker/Pletcher case; and, Alphonse Lepore, Esq., the District Attorney

in 1988-89 when charges were brought in the Sterbutzal case.  Additionally, the Commonwealth

called Sheriff Brownfield, who in his former employment with the State Police was the primary

investigator of Martin's homicide; Earl Roberts, an investigator in the Ricker/Pletcher case and

the Breakiron case; and Greg Kerpchar, an investigator who interviewed James Sullivan in 2005.


**B.     Summary Of the Evidence Admitted At the February 2, 2007 Evidentiary Hearing**

I shall first summarize the information set forth in the documents admitted at the hearing

in order to provide a timeline of the relevant events and provide context for the hearing

testimony.  In October 1986, Judge Franks presided over a consolidated criminal jury trial in the

Ricker/Pletcher case in which Ellis Price and Robert Price were co-defendants.  (Commw. Ex.

E).  At that time, Judge Solomon was the District Attorney, and Judge Warman was the First

Assistant District Attorney and he prosecuted the Ricker/Pletcher case.

The offenses in the Ricker/Pletcher case arose out of shooting that occurred outside a bar

during the early morning hours of January 1, 1986.  (See e.g., Commw. Ex. C at 2).  Ricker was

an employee at the bar and had asked the Price brothers to leave.  (Id.)  He followed the Price

brothers outside and was shot by Robert Price.  (Id.)  At the same time, Pletcher, a bar patron,

went outside to assist Ricker, and he too was shot.  (Id. at 2-3).  At the conclusion of the

Ricker/Pletcher trial, the jury found Robert Price guilty of the attempted homicide of both Ricker

and Pletcher, and related crimes.  (Commw. Ex. E at 194-96).  The jury found Ellis Price guilty

of crimes against Pletcher only, and those convictions were for attempted homicide, reckless

endangerment, aggravated assault, and attempt to cause serious bodily injury.  (Id.)

On October 17, 1986, Ellis Price filed a motion in arrest of judgment in which he

contended that his convictions were against the weight of evidence.  (Commw. Ex. F).  The

Commonwealth opposed the motion in a brief filed on June 8, 1987.  (Commw. Ex. G).  On or

around July 28, 1987, Judge Franks issued an Opinion and Order granting the motion in arrest of

judgment and reversing the verdicts of guilt against Ellis Price.  (Commw. Ex. C).  Judge Franks

noted that under Pennsylvania law: "When two equally reasonable and mutually inconsistent

inferences can be drawn from the same set of circumstances, a jury must not be permitted to

guess which inference it will adopt, especially when one of the two guesses may result in

depriving a defendant of his life or his liberty."  (Id. at 3 (quoting Commonwealth v. Tribble, 467

A.2d 1130, 1131 (Pa. 1983)).  After observing that: "When a party on whom rests the burden of

proof in either a criminal or civil case offers evidence consistent with two opposing propositions,

he proves neither[,]" (id. (quoting Commonwealth v. Woong Knee New, 47 A.2d 450, 468 (Pa.

1946)), Judge Franks held:

> [T]his Court is of the opinion that the Commonwealth has presented
> evidence of two mutually exclusive inferences.  Either Robert Price fired the shot
> from within the car at Pletcher, or [Ellis Price] did.  Pletcher specifically stated
> when asked, which of the two had shot at him, that he did not know.  The
> Commonwealth failed to produce any other witnesses to this shooting.
>
> Accordingly, this Court finds that it should have granted [Ellis Price's]
> demurrer[.]"

(Id.)

The Commonwealth had thirty days to appeal Judge Franks's order.  It did not appeal, and the decision reversing Ellis Price's conviction in the Ricker/Pletcher case stood.  Robert Price was sentenced to ten to twenty years for his convictions in the Ricker/Pletcher case, and ultimately was released from imprisonment after serving twelve years.  (Docket No. 168 at 69).

On August 4, 1987, less than two weeks after Judge Franks issued his decision, then Trooper Brownfield interviewed Ellis Price at the Fayette County Jail.  In his police report, he noted that he was interviewing Ellis Price because "this officer had learned that subject had possible information concerning [the Martin homicide]."  (Commw. Ex. A).

Around the time that the Ricker/Pletcher case was being investigated and prosecuted, Ellis Price was also named as a suspect in the Sterbutzel case, which involved the January 8, 1986 beating and robbing of Vincent Sterbutzel.  Police reports related to the Sterbutzel case were admitted at the hearing as Commonwealth's Exhibit D.  Those documents demonstrate that by July 25, 1986, Ellis Price, his brothers Robert Price and Kevin Price, and another individual named Mark DiMatteo, were all named suspects in the Sterbutzel case.  (Commw. Ex. D at 1-3, 12-13).

In February 1988,  DiMatteo was arrested for crimes against Sterbutzel, and in December 1988 he pleaded guilty to theft by unlawful taking and was sentenced to two years probation and a fine.  (Id. at 14-15, 17).  Kevin Price and Robert Price were arrested for crimes against Sterbutzel in February and March of 1989, respectively.  (Id. at 16, 18-20).  In September 1989, Robert Price pleaded *nolo contendere* and was sentenced to serve five to ten years concurrent with the sentence he was serving in the Ricker/Pletcher case.  (Id. at 21).  In February 1990,

Kevin Price was found guilty of robbery, theft by unlawful taking, and criminal conspiracy and was sentenced to serve six to twenty years imprisonment. (Id. at 23).

Ellis Price was never arrested for any crime related to the Sterbutzel case. A police report by Trooper David D. Nickle, dated March 10, 1989, contains the following notation:

> On this date 03/10/89 this investigating officer contacted the Fayette County District Attorney Alphonse Lapore [sic] and advised him of the circumstances of this investigation. He was also asked if the District Attorney['s] office would [e]xtradite Ellis Price [from] the State Prison System in Michigan. He advised that Ellis Price is currently serving a long sentence in the State of Michigan [and] it would serve no useful purpose to charge and try him in this state. He therefore advised this Investigating officer not to file charges against Ellis Price.

(Id. at 20).

Ellis Price testified at Breakiron's trial in April 1988 and he was returned to the State of Michigan to complete service of the sentence that had been imposed by it. (Docket No. 168 at 87).

With the background of the Ricker/Pletcher case and the Sterbutzel case complete, I shall now summarize the testimony admitted at the February 2, 2007 evidentiary hearing.

On direct examination by Breakiron's counsel, James "Silky" Sullivan testified that he and Ellis Price had been incarcerated on the same range of the Fayette County Jail as Breakiron. (Id. at 20-21). He learned about Breakiron's case through reading the newspaper and reading discovery materials in the case. (Id. at 21-24). Sullivan testified that in the summer of 1987, he and Ellis Price, along with another inmate, Conrad Blair, wrote a letter to then District Attorney Solomon in which they claimed that Breakiron "had confessed the crime to us." (Id. at 23, 36). He stated that they wrote the letter "[t]o see what kind of deals they would offer." (Id. at 23). According to him, Ellis Price "asked for the moon[,]" including a request that his and Robert

12

Price's convictions in the Ricker/Pletcher case be "overturned."  (Id. at 24, 36-37).

At the time he wrote and sent the letter, Sullivan was represented by Mark F. Morrison, Esq., who was then in private practice and who would later become Acting District Attorney upon Solomon's election to the Court of Common Pleas.  In his role as Acting District Attorney, Morrison prosecuted Breakiron's case.  Sullivan explained that Morrison learned that he had sent the letter and was very upset that Sullivan had not spoken with him before he sent it.  (Id. at 26-27).  Sullivan was never interviewed by the police in regards to the letter.  (Id. at 35).  Sullivan did not testify at Breakiron's trial.

On cross-examination by the Commonwealth, Sullivan admitted that in March 2005 he was interviewed by Agent Gregory Kerpchar of the Office of Attorney General and that he told Kerpchar that neither he nor Ellis Price received any benefit as a result of the letter that they sent to then District Attorney Solomon.  (Id. at 28-32).  However, he went on to explain that it was his belief that Ellis Price received a favorable outcome regarding his conviction in the Ricker/Pletcher case because of his cooperation with the Commonwealth in Breakiron's case. (Id. at 37-38, 44-45).

Next, Breakiron called Chris Owen Miller.  In the summer of 1987, Miller was incarcerated in the Fayette County Jail on the same range as Breakiron, Sullivan, and Ellis Price. (Id. at 54-55).  He testified that he was playing cards one day with Sullivan and Ellis Price and they discussed writing a letter to the District Attorney "to try to get deals in their own cases."  (Id. at 55, 65).  They asked Miller to participate, but he declined.  (Id. at 55-56).  He observed them writing the letter, but he did not know what, if any, "deals" they got.  (Id. at 56-57).

As his final witness, Breakiron called Robert Price.  He testified about the

13

Ricker/Pletcher case and stated that Ellis "was the real shooter in the case." (Id. at 68-69). When asked why Ellis's conviction was overturned, Robert responded: "I have no idea." (Id. at 69; see also id. at 80). He further testified that while he was serving his sentence in the Ricker/Pletcher case, Ellis had written to him and told him that he (Ellis) "was trying to cut a deal with the District Attorney's Office to cut five years off my [Robert's] sentence." (Id. at 113; see also id. at 72). Robert Price testified that he did not receive any reduction in the sentence that he served in the Ricker/Pletcher case. (Id. at 69, 73). Finally, he said that Ellis Price was a participant in the crimes against Vincent Sterbutzel. (Id. at 75).

At the conclusion of Robert Price's testimony, the Commonwealth presented its witnesses. First, it called Ellis Price. He stated that he joined Sullivan in writing a letter to the District Attorney, and that he also wrote and sent his own letter. (Id. at 97-100). He explained that a few days after he sent his own letter, Trooper Brownfield interviewed him. (Id. at 87-88, 92-93, 100).

Consistent with his trial testimony and his PCRA testimony, Ellis Price stated that he did not receive any benefits in exchange for his testimony against Breakiron. (Id. at 84). Further, he stated that the Commonwealth did not promise him anything in exchange for his testimony. (Id. at 85). He testified that there was no express or implied agreement made, and that no representative from the Commonwealth did anything to lead him to believe that he would receive any future benefit if he testified as a witness at Breakiron's trial. (Id. at 85-86). He stated that he never spoke with then District Attorney Solomon. (Id. at 103). He recalled speaking to someone from the District Attorney's Office in the summer of 1987, but said that no one from that office ever told him that the Commonwealth would not appeal Judge Franks's decision to grant the

motion in arrest of judgment in exchange for testimony against Breakiron.  (Id.)  He also stated

that he recalled speaking with Morrison in his capacity as Acting District Attorney, and that

Morrison told him that he could not make any deals with him.  (Id.)

Ellis Price further testified that at that time he provided information to the

Commonwealth regarding Breakiron's case, he did not believe that the District Attorney could do

anything to assist him with regard to the sentence he was serving in the State of Michigan.  (Id. at

86).  He said that he was not aware at that time that he was a suspect in Sterbutzel case.  (Id. at

87, 105).

Ellis Price testified that he never wrote a letter to his brother Robert Price telling him that

he was going to testify against Breakiron to try and get Robert's sentence reduced, but he did

admit that he wanted to help his brother if he could.  (Id. at 90, 96-98).  On cross-examination,

Breakiron's counsel presented him with his November 2006 deposition testimony.  (Id. at 107).

After reviewing that testimony, he acknowledged that during his deposition he had stated that he

wrote a letter to his brother Robert telling him that he was "trying to cut a deal with the District

Attorney[.]"  (Id. at 108).

Gary D. Brownfield is the Sheriff of Fayette County.  As noted previously, in his former

employment as a Trooper with the Pennsylvania State Police, he was the primary investigator in

Martin's homicide and he interviewed Ellis Price in the Fayette County Jail on August 4, 1987.

(Id. at 120-21; see also Commw. Ex. A).  Sheriff Brownfield does not recall how he came to

learn that Ellis Price had information regarding the Breakiron case.  (Id. at 124).  He testified that

Ellis Price did not ask him for anything during the interview, that he (Brownfield) did not

promise Ellis anything, and that there were no express or implied agreements with Ellis Price in

exchange for his testimony in the Breakiron case.  (<u>Id.</u> at 123, 126).

Mark F. Morrison, Esq. testified next.  He explained that he became Acting District Attorney around December of 1987 or January of 1988 and that he prosecuted Breakiron's case. (<u>Id.</u> at 127, 131).  Morrison stated that he reviewed the Breakiron case file that he inherited from former District Attorney Solomon and that it did not contain any letters from Ellis Price and/or Sullivan.  (<u>Id.</u> at 133).  He explained that if he had seen such letters, he would have "absolutely" disclosed them to the defense, noting: "Having been a defense attorney, I knew how important discovery was.  I made it a point during my overseeship of the office, if you will, that discovery was complete and to the fullest extent."  (<u>Id.</u>)  He also noted that he was not aware that at the time Ellis Price testified in the Breakiron case he was a suspect in the Sterbutzel case.  (<u>Id.</u> at 140-47).  If he had known that information, Morrison explained, he would have disclosed it to the defense.  (<u>Id.</u> at 147).  He also stated that he had absolutely no involvement regarding any purported delay in the filing of charges in the Sterbutzel case.  (<u>Id.</u> at 149).

Morrison testified that, prior to the Breakiron trial, he had then Trooper Brownfield bring Ellis Price to his office at the Fayette County Courthouse.  (<u>Id.</u> at 128).  He stated that the "[p]urpose of the meeting was for me to tell Ellis that there was nothing that I could do for him.… I wanted him to know that there was nothing that I could do for him.  I could make him no offer."  (<u>Id.</u>; <u>see</u> <u>also</u> <u>id.</u> at 130).  He also testified that Ellis did not ask for anything in exchange for his testimony and that there was no express or implied agreement made.  (<u>Id.</u> at 128-30).

Morrison did not immediately recall that he had represented Sullivan prior to becoming Acting District Attorney.  (<u>Id.</u> at 134-35).  However, he did not dispute that a transcript from a

16

hearing conducted in the Breakiron case in March 1988 indicated that he was aware that Sullivan

had sought a deal with the Commonwealth in exchange for testimony against Breakiron.[2]  (Id. at

135-40).

Judge Ralph C. Warman of the Court of Common Pleas of Fayette County was employed

as an Assistant District Attorney from October 1977 to December 31, 1988.  (Id. at 150).  In

October 1986, he prosecuted Ellis and Robert Price in the Ricker/Pletcher case.  (Id. at 151).

Judge Warman noted that although he "wasn't happy" about it, he was not surprised that Judge

Franks granted Ellis Price's post-trial motion in arrest of judgment.  (Id. at 153-54, 159).  Judge

Warman explained why the District Attorney's Office did not appeal Judge Franks's decision:

> [W]e had a small office to begin with.  We – I think we had five assistants back
> then.  Everybody was part-time.  The District Attorney was part-time.  And we
> just – we didn't have the manpower.  We didn't file any appeals.  There might
> have been one appeal we filed in the ten years or so there.  We were, generally,
> satisfied with what our judges did.  They always gave us a decent shake.
>        And, in this case, the fact was that [Judge Franks] was probably right.  He
> probably should, [ ] have granted an arrest of judgment because he probably
> should have granted the demurrer [Ellis Price's made at the conclusion of the
> Commonwealth's case against him] in the first place.  I mean, I argued against it,
> but then I was on the opposite side.

(Id. at 155; see also id. at 159-67).

Judge Warman testified that there was no agreement between the District Attorney's

Office and Ellis Price that it would refrain from appealing Judge Franks's decision in exchange

---

[2]  After Morrison assumed his new position as prosecutor, Breakiron's defense counsel filed a
motion seeking Morrison's disqualification on the basis that the Commonwealth might call
Sullivan to testify at Breakiron's trial.  (Id. at 138).  Judge Conrad B. Capuzzi conducted a
hearing on that motion on March 29, 1988, and the relevant portion of the transcript of that
proceeding was admitted as Plaintiff's Ex. 3.  At the March 1988 hearing, Morrison stated the
prosecution was not going to call Sullivan "or us[e] anything that he offered to us."  (Id.; see also
Plaintiff's Ex. 3 at 5).  Morrison was not disqualified from the case.

17

for testimony against Breakiron.  (Id. at 156-57).  He did not recall the existence of any letter that Ellis Price sent to the District Attorney's Office regarding the Breakiron case.  (Id. at 158).

Judge Gerald R. Solomon was the District Attorney of Fayette County from October 1977 until December 31, 1987.  (Id. at 169).  He testified that the decision not to appeal Judge Franks's order granting Ellis Price an arrest of judgment had nothing to do with Ellis Price's involvement in the Breakiron case.  (Id.)  He said he made no agreement, express or implied, with Ellis Price and did not do or say anything that would have led Ellis Price to believe that he would receive a benefit in the future in exchange for his testimony.  (Id. at 169-70).  He did not recall meeting Ellis Price or receiving any letters from either Ellis Price or Sullivan.  (Id. at 169-70, 176).  According to his recollection, he learned in the fall of 1987 that Ellis Price was offering information about Breakiron.  (Id. at 171).  He also does not recall what information prompted then Trooper Brownfield to interview Ellis Price in August of 1987.  (Id. at 177).

With regard to the decision not to appeal Judge Franks's order granting Ellis Price's motion in arrest of judgment, Judge Solomon explained that he relied upon then First Assistant District Attorney Warman's recommendation on the matter.  (Id. at 172-73).  He also did not recall the investigation of the crimes against Vincent Sterbutzel, and he had no recollection of Ellis Price being a suspect in that matter.  (Id. at 177-79).

Earl F. Roberts formerly was employed with the Pennsylvania State Police and was involved in the investigation of both the Ricker/Pletcher case and the Breakiron case.  (Id. at 182-83).  He testified that he never made any express or implied agreement with Ellis Price in exchange for his testimony against Breakiron.  (Id.)

Alphonse P. Lepore, Esq., is currently the Deputy Chief Counsel for the Pennsylvania

18

Turnpike Commission.  (Id. at 184-85).  He was the District Attorney of Fayette County beginning in or around May of 1988 through late 1990 or early 1991, and therefore held that position when charges were filed in the Sterbutzel case in 1988 and 1989.  (Id. at 185).  Lepore explained that on March 10, 1989, he was contacted by Trooper Nickle of the Pennsylvania State Police about extraditing Ellis Price from the State of Michigan to prosecute him in the Sterbutzel case.  (Id.)  Lepore stated that he decided not extradite Ellis Price because he "was in Michigan serving a long sentence for another crime[.]" (Id.; see also Commw. Ex. D at 20).  He testified that his decision was in no way related to the fact that Ellis Price had testified for the Commonwealth almost a year earlier at Breakiron's trial.  (Id. at 186).  He said he never spoke to Ellis Price, and that there were no promises ever made to Ellis Price in exchange for his testimony against Breakiron.  (Id. at 186-87).

As its final witness, the Commonwealth called Gregory Kerpchar, who formerly had been employed as a special agent with the Bureau of Criminal Investigation, Office of the Attorney General of Pennsylvania.  (Id. at 192).  In that position, he interviewed Sullivan in March 2005.  (Id.)  During that interview, Sullivan told him that neither he nor Ellis Price received any consideration in exchange for information they offered against Breakiron.  (Id. at 193-94).

At the conclusion of the February 2, 2007 evidentiary hearing, Judge Hardiman expressed his preliminary observations.  He noted that it appears that "there were two letters written[,]" one drafted and sent by Ellis Price himself, and one that Ellis Price and James Sullivan drafted and sent together.  (Id. at 198; see also 203 (Judge Hardiman: "You've said or posed the question, were letters written[?] It seems to me the answer to that is yes.  It seems to me two letters were written.")).  Judge Hardiman then stated:

The next question seems to me is, did Ellis Price actually receive consideration. And the answer seems to me to be, no. Fairly overwhelmingly, from what we heard today.…

- - - -

So, the reason I said earlier that it seems to me clear that Ellis Price did not, in fact, receive consideration in exchange for his testimony in the Breakiron case is that I would have to find that a whole series of witnesses I heard today, including two sitting judges, former District Attorneys, are all in some grand conspiracy in lying on that issue.

So, I don't deny the fact that you have some temporal circumstantial evidence that raises a question mark regarding the issue, but in weighing the scales of that circumstantial evidence I have a mountain of direct testimonial evidence to the contrary.

(Id. at 203-05).

Judge Hardiman instructed the parties to file post-hearing proposed findings of fact. Before the proposed findings of fact were submitted and could be ruled upon, Judge Hardiman was elevated to the United States Court of Appeals for the Third Circuit.

On April 12, 2007, this case was reassigned to me. On May 11, 2007, I conducted a telephonic status conference with the parties. (Docket No. 158). Both parties expressly stated that they did not object to me making findings of fact based upon the evidence of record. (Id.) I advised the parties that if, after I reviewed each party's proposed findings of fact and the relevant record, I determined that I needed to have witnesses recalled to assist in making credibility determinations, I would schedule another evidentiary hearing.

Breakiron submitted his Proposed Findings of Fact on June 22, 2007. (Docket No. 161). On July 20, 2007, the Commonwealth filed its Proposed Findings of Fact. (Docket No. 166). On August 3, 2007, the parties submitted their Proposed Joint Findings of Fact. (Docket No. 170).

I have reviewed the parties' submissions and the relevant record in this case, and I have determined that I can make the necessary factual findings without conducting an additional evidentiary hearing. Many of the findings that I shall make provide background and timeline framework, are established by the documentary evidence admitted at the hearing, and/or are uncontested. As Judge Hardiman recognized at the end of the evidentiary hearing, there are essentially two contested issues at the present time. The first issue is – Did Ellis Price send a letter or letters to the District Attorney's Office seeking benefits in exchange for information against Breakiron? The second issue is – Did there exist any agreement, express or implied, between Ellis Price and the Commonwealth that he would receive benefits in exchange for his testimony in the Breakiron case. Consistent with Judge Hardiman's preliminary observations, I find that the answer is "Yes" to the first inquiry, and "No" to the second inquiry, and I make the following FINDINGS OF FACT in accordance with those determinations and pertinent to Amended Claim 4.

## C.    Findings of Fact

1.    In or around the summer of 1987, Sullivan, Ellis Price and Breakiron were incarcerated in the Fayette County Jail and housed in the same range. (Docket No. 168 at 20-21, 55).

2.    In or around the summer of 1987, Sullivan and Ellis Price wrote a letter to then District Attorney Solomon in which they offered information in the Breakiron case in exchange for benefits in their respective criminal cases. (Id. at 22-24, 55-56, 95-99). Around that same time, Ellis Price also sent his own letter to then District Attorney Solomon. (Id. at 100). In

addition to seeking benefits for himself, Ellis Price also sought a reduction in the sentence that

his brother Robert Price was serving for his convictions in the Ricker/Pletcher case.  (Id. at 36-

37, 72, 107-08, 113).

3.    Morrison was Sullivan's defense attorney during this time period and at some

point prior to Breakiron's trial he learned that Sullivan had attempted to make a deal with the

District Attorney's Office in exchange for benefits in his case.  (Id. at 27, 133-40; Plaintiff's Ex.

3).

4.    Judge Solomon, Judge Warman, and Morrison do not recall seeing the letters that

Sullivan and Ellis Price sent to the District Attorney's Office.  (Id. at 133, 158, 176).

5.    Representatives of the Commonwealth were aware that Ellis Price had offered

information in the Breakiron case.  Trooper Brownfield interviewed Ellis Price on August 4,

1987 in the Fayette County Jail "after [he] had learned that [Ellis Price] had possible information

concerning [the Martin's homicide]."  (Commw. Ex. A).  And, by the fall of 1987, then District

Attorney Solomon had become aware that that Ellis Price was offering information in the

Breakiron case.  (Id. at 171).

6.    Around the same time that Ellis Price sent the letters to then District Attorney

Solomon, he was seeking post-trial relief from his October 1986 convictions in the

Ricker/Pletcher case.  (Commw. Ex. F).  He was also a suspect in the Sterbutzel case, along with

his brothers Kevin and Robert, and Mark DiMatteo.  (Commw. Ex. D).

7.    On or around July 28, 1987, Judge Franks issued an order granting Ellis Price's

motion in arrest of judgment and reversing his convictions in the Ricker/Pletcher case.

(Commw. Ex. C).

8.      On August 4, 1987, then Trooper Brownfield interviewed Ellis Price in the Fayette County Jail in order to investigate information Ellis Price possessed regarding the Breakiron case.  (Commw. Ex. A).  Trooper Brownfield did not make any agreement with Ellis Price, express or implied, that he would receive benefits in exchange for information and testimony against Breakiron.  (Docket No. 168 at 123, 126).

9.      The Commonwealth did not appeal Judge Franks's order reversing Ellis Price's convictions in the Ricker/Pletcher case and therefore that decision became final on or around thirty days after the July 28, 1987 date of issuance.  Judge Warman's explanation as to why the Commonwealth decided not to appeal Judge Franks's decision is credible.  (Id. at 155, 159-67). The Commonwealth's decision not to appeal Judge Franks's decision was based upon considerations that were not related to Ellis Price's involvement in the Breakiron case.  (Id.)

10.     Robert Price was sentenced to ten to twenty years for his convictions in the Ricker/Pletcher case.  (Id. at 69).  He was released from imprisonment after serving twelve years of that sentence.  (Id.)

11.     No representative of the Commonwealth promised Ellis Price any relief for either him or his brother, Robert Price, in the Ricker/Pletcher case in exchange for information against Breakiron or for his testimony in the Breakiron trial.  (Id. at 84-86, 103, 123, 126, 130, 156-57, 169-70, 182-83, 185-87).  There was no express or implied agreement between Ellis Price and the Commonwealth that he would obtain any benefit in the Ricker/Pletcher case, or that his brother Robert Price would obtain any benefit in that case, in exchange for his participation in the Breakiron case.  (Id.)  Neither Ellis Price nor Robert Price received any benefit in the Ricker/Pletcher case as a result of his participation in the Breakiron case.  (Id.)

23

12.    The Commonwealth did not charge Ellis Price with any crime in the Sterbutzel case.  (<u>Id.</u> at 185; Commw. Ex. D at 20).  In March 1989, then District Attorney Alphonse Lepore decided not to prosecute Ellis Price in the Sterbutzel case because he was "serving a long sentence in the State of Michigan."  (<u>Id.</u> at 185-87; Commw. Ex. D at 20).  Lepore's decision was based upon considerations that were not related to Ellis Price's involvement in the Breakiron case.  (<u>Id.</u>)

13.    In February 1988, DiMatteo was arrested for crimes against Sterbutzel, and in December 1988 he pleaded guilty to theft by unlawful taking and was sentenced to two years probation and a fine.  (Commw. Ex. D at 14-15, 17).  Kevin Price and Robert Price were arrested for crimes against Sterbutzel in February and March of 1989, respectively.  (<u>Id.</u> at 16, 18-19).  In September 1989, Robert Price pleaded *nolo contendere* and was sentenced to serve five to ten years concurrent with the sentence he was serving in the Ricker/Pletcher case.  (<u>Id.</u> at 21).  In February 1990, Kevin Price was found guilty of robbery, theft by unlawful taking, and criminal conspiracy and was sentenced to serve six to twenty years imprisonment.  (<u>Id.</u> at 23).

14.    No representative from the Commonwealth promised Ellis Price any benefit with regard to the Sterbutzel case in exchange for information against Breakiron or for his testimony in the Breakiron case.  (<u>Id.</u> at 84-86, 103, 123, 126, 130, 156-57, 169-70, 182-83, 185-87).  There was no express or implied agreement between Ellis Price and the Commonwealth that he would obtain any benefit in the Sterbutzel case in exchange for his participation in the Breakiron case.  (<u>Id.</u>)  Ellis Price did not receive any benefit in the Sterbutzel case as a result of his participation in the Breakiron case.  (<u>Id.</u>)

15.    Morrison, in his position as Acting District Attorney, met with Ellis Price prior to

24

Breakiron's trial and expressly told him that he could provide him with no benefit in exchange for his testimony against Breakiron.  (Id. at 103, 128-30).

Dated: September 19, 2007

<div style="margin-left: 40%;">
s/Nora Barry Fischer<br>
Nora Barry Fischer<br>
United States District Judge
</div>

cc/ecf:  All counsel of record