# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| _____ : | |
| MARK BREAKIRON,                : | |
|                                : | |
|         Petitioner,            : | |
|                                : | CIVIL ACTION |
|         v.                     : | |
|                                : | No. 2:00 - cv - 00300: |
| MARTIN HORN, Commissioner,     : | |
| Pennsylvania Department of Corrections; : | Judge Nora Barry Fischer |
| CONNOR BLAINE, Superintendent of the : | |
| State Correctional Institution at Greene, and : | **THIS IS A CAPITAL CASE**. |
| JOSEPH P. MAZURKIEWICZ,        : | |
| Superintendent of the State Correctional : | |
| Institution at Rockview,       : | |
|                                : | |
|         Respondents.           : | |
| _____ : | |

---

## PETITIONER'S UPDATED REPLY MEMORANDUM

**Introduction**

Pursuant to this Court's request, on December 19, 2007, Petitioner filed a comprehensive *Updated Memorandum of Law* (Document 173), which contains of all the arguments in support of Petitioner's request for habeas corpus relief.  In response, with one exception, Respondents ("the Commonwealth) have chosen to rely on the arguments they previously set forth in their answer and consolidated memorandum of law   Those arguments are all fully addressed in

1

Petitioner's *Updated Memorandum*, and no further response is required.[1]

The only subject addressed by the Commonwealth in its Response is that Petitioner seeks to add additional facts developed at the federal evidentiary hearing to the exhausted <u>Brady</u> claim already set forth in Claim 4. This Reply addresses only those arguments.

**Ellis Price's Letters to the Prosecutor.**

Petitioner alleged that Ellis Price, along with other inmates housed at the Fayette County jail including James "Silky" Sullivan, sent a letter to then District Attorney Solomon, offering information and testimony against Mr. Breakiron in exchange for sentencing benefits, or other considerations, to be provided to Ellis and his brother, Robert Price. After the evidentiary hearing, this Court found that Petitioner had proven that allegation.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires a prosecutor to disclose evidence to the accused that is favorable to the defense and that is material. <u>E.g.</u> <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963); <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985). Favorable evidence includes impeachment evidence as well as evidence that exculpates the accused. <u>Bagley</u>, 473 U.S. at 676. Impeachment evidence is that which can be used to challenge the credibility of a prosecution witness or that can be used to

---

[1]Petitioner would, however, correct one error in that *Updated Memorandum*. In Claim 10, Petitioner challenges the constitutionality of the jury instructions provided to the penalty phase jury. At page 150, in explaining the Pennsylvania sentencing process, Petitioner wrote,"If one or more aggravating circumstances are found by any juror(s), each juror must then determine if there are any mitigating circumstances." This is not correct.

Under the Pennsylvania capital sentencing statute, an aggravating circumstance must be found unanimously. <u>See</u> 42 Pa.C.S.A. § 9711; <u>Blystone v. Pennsylvania</u>, 494 U.S. 299 (1990). Thus, the sentence should have read, *If one or more aggravating circumstances are found by all of the jurors unanimously, each juror must then determine if there are any mitigating circumstances.* Petitioner apologizes to this Court for any confusion caused by this error.

challenge the prosecution's trial theory.  Id. at 676 (Brady's disclosure requirements apply to any materials that, whatever their other characteristics, can be used to develop impeachment of a prosecution witness or theory).

Ellis Price's letters to the Fayette County District Attorney seeking benefits in return for his testimony were impeachment evidence, even if no benefits were ever provided.  The letters show Price's self-serving motivation for coming forward, and demonstrate his hope that testimony against Mr. Breakiron might lead to favorable treatment for him and/or his brother. Under Bagley, such evidence could have been used by competent counsel to develop impeachment of Price.  Thus, the Commonwealth had a duty to disclose that evidence.[2]

The Commonwealth relies on United States v. Bin Laden, 397 F.Supp.2d 465, 512 (S.D. NY 2005) and Nixon v. United States, 703 F.Supp 538, 559 (S.D. Mass. 1989) to support its view that Price's letters seeking benefits were not Brady material.  These cases are distinguishable from Mr. Breakiron's.  In both Bin Laden and Nixon, the informant witnesses had testified on the basis of an agreement they had reached with the government.  Both agreements had been reduced to writing and were disclosed to the defense, who used them at trial to impeach their testimonies.  In Bin Laden, the Court noted that "disclosure of the cooperation agreement, money expended on al-Fadl and his family, and other information previously disclosed, provided defense counsel with ample material to cross-examine al-Fadl." Id., 379

_____

[2]The Commonwealth notes that no Fayette County District Attorney remembered receiving those letters.  But the record leaves little doubt that those letters were received by someone at the District Attorney's office or in law enforcement.  A few days after the letters were sent, then Trooper Gary Brownfield was assigned to go to the county prison and interview Ellis Price concerning information Price had about the murder of Saundra Martin. Brownfield's assignment to interview Price was in obvious response to Price's letters to the District Attorney. NT 2/2/07 at 88, 121-22.

F.Supp 2d at 512.  In light of the disclosure of all of this evidence, used by defense counsel in an effort to impeach the witness, the Court concluded that the witness' requests for additional benefits "would have only slightly enhanced potential cross-examination" and, thus, was not "material" under Brady. [3]

By contrast, in Mr. Breakiron's case, the defense did not have any alternative means for establishing Price's motivations in coming forward with his allegations against Breakiron, or his hope that, somewhere along the line, he or his brother might receive some favorable treatment from the authorities.  Thus the jury had no basis upon which to judge Price's motivations and potential bias in determining his credibility.  The absence of other impeachment evidence makes this case far different than Bin Laden or Nixon.  Here, evidence of Price's motivations in coming forward, as reflected in his letters, could have been used by defense counsel to impeach his credibility in a manner that was not available through other evidence.  Thus the letters were "material" and should have been disclosed.

**The Sterbutzal Investigation**

The Commonwealth failed to disclose to the defense that, at the time Price came forward with his allegations, and at the time he testified at trial, Price had been named as a perpetrator in a pending investigation of a brutal robbery and assault against victim Vincent Sterbutzal.  The Commonwealth asserts that the fact of this pending investigation was not impeachment, and,

---

[3] Nixon concerned defendant's allegation that the FBI should have disclosed an internal FBI teletype, summarizing available investigative information.  The Court found that the teletype was not reliable, as it was based on second hand knowledge, and that, in any event, the witness entered into a plea agreement that was disclosed to counsel. Id., 703 F.Supp at 559.  Neither of these factors are present here.  The letters in this case are first hand information from the witnesses themselves.  Moreover, there was no plea agreement, or any other impeaching information provided to the defense by the Commonwealth.

therefore, did not need to be disclosed, because Price claimed not to have known that he was a suspect in that crime.

The Commonwealth's "explanation" for its failure to disclose this information rings hollow. It is inconceivable that Price was not aware of the Sterbutzal assault, because he was an active participant in that crime. Moreover, according to the police reports, on January 29, 1986, police questioned Price's brother Robert about the crime.[4] Price had every reason to curry favor with the prosecution in order to avoid, or minimize, his prosecution for those offenses.

"It is well established that when a prosecution witness is . . . under an investigation which could result in criminal charges being filed against the witness, the defense is entitled to bring this fact to the jury's attention to show bias, motive, or self interest." Jean-Mary v. Florida, 678 So.2d 928 (Fla. App. 1996). See United States v. Davies, 1990 WL 171074, *3 (D.Kan.1990) (unpublished) ("Evidence that a government witness is the subject of a pending IRS audit or investigation tends to show the possible bias or prejudice of that witness"). This rule applies "no specific evidence of any agreement between the witness and the state." Jean-Mary at 929.

In this case, the pending investigation of the Sterbutzal assault was impeachment evidence which defense counsel could have used to challenge Price's motivation and bias. It should have been for a jury to assess the impact of the pending investigation against Price, as well as the credibility of Price's denial of knowledge of any pending investigation.

**Materiality Must Be Viewed Cumulatively**

Moreover, the Commonwealth's analysis of this claim is flawed because it examines the

---

[4]The police reports were submitted into evidence at the federal evidentiary hearing.

materiality of each piece of undisclosed evidence individually, rather than cumulatively.  The

materiality of suppressed evidence must be "considered collectively, not item-by-item." <u>Kyles v.

Whitley</u>, 514 U.S. 419, 436 (1995).  Materiality must also be measured by the usefulness the

undisclosed evidence would have in the hands of <u>effective</u> counsel.  <u>Kyles</u>, 514 U.S. at 44; <u>id.</u> at

441-49 (reviewing ways in which competent counsel could have used and developed withheld

information to impeach prosecution witnesses and undercut police investigation); <u>Bagley</u>, 473

U.S. at 676  (materiality analysis considers whether suppressed information, "if disclosed and

*used effectively*" *by the defense*, may have made a difference); <u>See</u> *Updated Memorandum* at 88-

89.

Petitioner has already addressed the cumulative prejudice of the prosecutor's many non-

disclosures *Updated Memorandum* at 109-112.  It suffices to say that, without this evidence, trial

counsel lacked the means to effectively challenge Price's credibility or demonstrate his

motivation and bias.  Imagine how different, and how much more effective, counsel's cross

examination of Price would have been had counsel been able to show the jury that Price was

motivated to make his allegations by the hope of receiving favorable treatment for himself and

his brother, that Price had reason to curry favor because of the existence of a pending

investigation that could have led to his arrest, conviction, and imprisonment, that Price had a

non-final conviction for attempt homicide, to accurately portray Price's prior criminal record, and

show the jury that Price had been previously convicted of a crimen falsi offense, Had there been

such cross examination, there is a reasonable probability that the jury would have viewed Price's

credibility in a different light.  Even in the absence of any promises or agreement, the non-

disclosed evidence was material. Petitioner's due process rights were violated.[5]

**Conclusion**

WHEREFORE, based upon the foregoing, as well as all prior proceedings and all submissions, Petitioner respectfully prays that the Court grant him a new trial, a new sentencing hearing, an evidentiary hearing on any claims involving disputed issues of facts, and/or any other relief which this Court deems just.

Respectfully submitted,

/s/Stuart Lev
Stuart Lev, Esq.
Capital Habeas Corpus Unit
Federal Court Division
Defender Association of Philadelphia
Suite 545W -- The Curtis Center
Independence Sq. West
Philadelphia, PA 19106
(215) 928-0520

Tricia A. Russell
Carol Wright
Capital Habeas Corpus Unit
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222-3714
(412) 644-6565

Dated: May 16, 2008

---

[5]The Commonwealth also asserts that Petitioner has "seriously exaggerated" the importance of Price's testimony. and that there was overwhelming evidence of his intent to kill even without Price's testimony. There is no basis for this assertion. Price provided the only direct evidence of premeditation and planning. The other evidence of intent was largely circumstantial, arising from the manner of killing and Petitioner's efforts to cover up the homicide. But as Petitioner has already pointed out, both the nature of the wounds, and Petitioner's efforts at concealment, were at least equally consistent with a killing committed during an intoxicated rage and/or alcohol blackout, as it is with an intent to kill. *UM* at 89-91

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be served on the following person at the location and in the manner indicated below:

BY FIRST CLASS MAIL

Christopher Carusone, Esq.
Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

/s/ Stuart Lev
Stuart Lev, Esq.

Dated: May 16, 2008